**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| FLORIDA IMMIGRANT COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JAMES UTHMEIER, in his official capacity as the Attorney General of the State of Florida, *et al.*, <br><br> *Defendants*. | Case No. _____ |

**EXPEDITED MOTION**

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Florida's new law, S.B. 4C, attempts to wrest control of immigration from the federal government.  Under S.B. 4C, Florida may unilaterally arrest, prosecute, and detain large categories of noncitizens for illegal entry and reentry with no federal supervision or involvement. S.B. 4C flies in the face of well-established precedent from the Supreme Court, the Eleventh Circuit, this Court, and every other court to have considered a law like this one.  For 150 years, the Supreme Court has repeatedly reaffirmed that immigration is an exclusively federal power and that states may not engage in unilateral enforcement.  *See, e.g., Arizona v. United States*, 567 U.S. 387, 410 (2012).  The Eleventh Circuit has repeatedly rejected similar attempts by states to set up their own versions of federal immigration crimes.  *See Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1264 (11th Cir. 2012) ("*GLAHR*"); *United States v. Alabama*, 691 F.3d 1269, 1285-87 (11th Cir. 2012).  And just last year, this Court enjoined another attempt by Florida to create its own immigration offense.  *Farmworker Association of Florida v. Moody*, 734 F. Supp. 3d 1311, 1332 (S.D. Fla. 2024) ("*FWAF*").  Additionally, in the last year, courts across the country have unanimously rejected state entry laws like S.B. 4C.  *See, e.g., United States v. Texas*, 97 F.4th 268 (5th Cir. 2024); *United States v. Iowa*, 126 F.4th 1334 (8th Cir. 2025); *United States v. Oklahoma*, 739 F. Supp. 3d 985 (W.D. Okla. 2024); *Idaho Org. of Res. Councils Inc. v. Labrador*, No. 25-cv-00178 (D. Idaho Mar. 27, 2025) (ECF No. 16).

Like those laws, S.B. 4C violates the Supremacy Clause and Commerce Clause and should be enjoined.  Because it went into effect immediately upon enactment, Plaintiffs respectfully ask the Court to issue a temporary restraining order immediately to prevent S.B. 4C's enforcement while the Court considers this motion for a preliminary injunction.

## BACKGROUND

### A. Congress's Pervasive Regulation of Immigration

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of [noncitizens]." *Arizona*, 567 U.S. at 394.  In the Immigration and Nationality Act ("INA"), Congress created a pervasive system to regulate entry into and continued presence in the United States. *See generally* 8 U.S.C. §§ 1101, 1151–1382. As the Fifth Circuit observed, "[t]his system is comprehensive, complex, and national in scope." *Texas*, 97 F.4th at 285.

On the criminal side, unlawful entry and reentry into the country are federal offenses, along with various other provisions related to irregular entries.  8 U.S.C. §§ 1325, 1326; *see also, e.g., id.* §§ 1321, 1323, 1324 (criminalizing the "unauthorized landing of [noncitizens]," "unlawful bringing of [noncitizens]," and the "[b]ringing in and harboring [noncitizens]"). Unlawful entry and reentry are prosecuted in federal court, with charges brought at the discretion of federal prosecutors, subject to rules and exceptions specified by Congress. *Id.* § 1329.

On the civil side, Congress has specified categories of noncitizens who may be denied admission to the United States, 8 U.S.C. § 1182, including those who enter between ports of entry, *see id.* § 1182(a)(6).  Congress has also specified which noncitizens may be detained pending a decision on whether they are to be removed.  *See id.* §§ 1225, 1226.  Congress has established several alternative procedures to decide whether a person who entered without inspection will be removed, including full removal proceedings with trial-like processes subject to administrative and judicial appeals, *id.* § 1229a, and expedited removal proceedings, which are a shortened process applicable to recent border crossers, *id.* § 1225(b)(1).  Congress also enacted numerous protections that are available despite unlawful entry, including asylum, visas

for victims of crime and trafficking, cancellation of removal, and classification as a Special Immigrant Juvenile for noncitizens under 21 years of age, all of which may lead to permanent residency and citizenship. *Id.* §§ 1101(a)(15)(U), 1101(a)(15)(T), 1101(a)(27)(J), 1158(a)(1), 1229b(b), 1231(b)(3). Given the complexities of the immigration system, federal discretion and control are vital. *See Arizona*, 567 U.S. at 396 ("A principal feature of the removal system is the broad discretion exercised by immigration officials.").

### B. Florida S.B. 4C

S.B. 4C severely intrudes on this complex and exclusively federal system by establishing two new state crimes that criminalize entry into the state. *See* S.B. 4C (codified at Fla. Stat. §§ 811.102-103)

Specifically, S.B. 4C creates a new state crime for "[i]llegal entry," which is committed where "an unauthorized alien . . . knowingly enters or attempts to enter this state after entering the United States by eluding or avoiding examination or inspection by immigration officers." Fla. Stat. § 811.102(1). Affirmative defenses are available if the federal government has granted the noncitizen "lawful presence" or "discretionary relief that authorizes the unauthorized alien to remain in the United States temporarily or permanently"; the noncitizen is "subject to relief under the Cuban Adjustment Act of 1966"; or the noncitizen's entry into the United States was not a violation of 8 U.S.C. § 1325. *Id.* § 811.102(4). A person convicted of this crime must be sentenced to a mandatory minimum of nine months in prison. *Id.* § 811.102(1). If the person has one prior conviction for this crime, the mandatory minimum is one year and one day, and if the person has two prior convictions for this crime, the mandatory minimum is two years. *Id.* § 811.102(2).

S.B. 4C also creates a new state crime for "[i]llegal reentry," which is committed where

"an unauthorized alien . . . . after having been denied admission, excluded, deported, or removed or having departed the United States during the time an order of exclusion, deportation, or removal is outstanding, thereafter enters, attempts to enter, or is at any time found in [Florida]." *Id.* § 811.103(1). There is no criminal liability if the Attorney General consented to an individual's reapplying for admission, or if such consent was not required. *Id.* A person convicted of this crime must be sentenced to a mandatory minimum of one year and one day in prison. *Id.* § 811.103(2). If the person has three or more prior convictions for a misdemeanor or a felony, the mandatory minimum is two years, and if the person has a prior conviction for a forcible felony, the mandatory minimum is five years. *Id.* § 811.103(3).

With respect to both crimes, S.B. 4C provides that, "unless release is otherwise required," the court "shall presume that no conditions of release can reasonably assure the presence of an unauthorized alien arrested for a violation of this section," and the court "must order the unauthorized alien to be detained pending the disposition of the case." *Id.* §§ 811.102(5), 811.103(4). S.B. 4C additionally provides that, upon making an arrest for illegal entry or illegal reentry, the arresting law enforcement agency shall notify Immigration and Customs Enforcement of the noncitizen's arrest and "provide any known information relating to" the noncitizen. *Id.* §§ 811.102(7)(a), 811.102(6)(a).

## STANDARD OF REVIEW

A preliminary injunction is warranted if the moving party establishes: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

The four criteria for obtaining a preliminary injunction are identical to those for a temporary restraining order.  *See Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010).

## ARGUMENT

### I.   Plaintiffs Are Likely to Succeed on the Merits Because S.B. 4C Is Preempted.

S.B. 4C sets out to establish a Florida-specific immigration system.  Specifically, it creates a state crime of "Illegal Entry" tied to the federal offense of unlawful entry into the United States, and a state crime of "Illegal Reentry" tied to the federal offense of unlawful reentry.  Under this new system, state police, prosecutors, and judges—who are not trained to make these complex immigration determinations—will punish entry and reentry without federal control or input.  But entry and continued presence are quintessentially federal fields that Florida may not regulate because they are central to the federal government's exclusive immigration authority and Congress's comprehensive immigration scheme.  Moreover, S.B. 4C conflicts with federal law in numerous ways, including by usurping federal discretion and control over sensitive immigration decisions and instead giving state officials unilateral control.

### A.   S.B. 4C Is Preempted Because It Intrudes on the Exclusively Federal Field of Entry.

Courts may infer field preemption from either a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it.'"  *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  When it comes to regulating entry into the United States, both alternatives are satisfied.

"Policies pertaining to the *entry* of aliens and their right to remain here are entrusted exclusively to Congress."  *Arizona*, 567 U.S. at 409 (quoting *Galvan v. Press,* 347 U.S. 522, 531

(1954)) (emphasis added) (cleaned up).  Ever since Congress began systematically regulating immigration, the Supreme Court has been crystal clear: Regulation of entry into the United States is an exclusively federal matter from which the States are excluded.  *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875) ("The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States."); *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government."); *Hines v. Davidowitz*, 312 U.S. 52, 62 & n.10 (1941) (noting the "continuous recognition by this Court" of "the supremacy of the national power . . . over immigration"); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) ("The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States [and] the period they may remain," and "the states are granted no such powers"); *De Canas v. Bica*, 424 U.S. 351, 354 (1976) ("Power to regulate immigration is unquestionably exclusively a federal power."); *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982) (recognizing that "the State has no direct interest in controlling entry into this country, that interest being one reserved by the Constitution to the Federal Government" and noting "the exclusive federal control of this Nation's borders").

That unbroken line of precedent is grounded in the principle that immigration powers are "inherent in [the] sovereignty" of the United States as a nation.  *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892).  The federal government's sovereign authority includes the power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe."  *Id.*; *see also Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893); *Arizona*, 567 U.S. at 394-95.  States, by contrast, are not endowed with such "powers of external sovereignty."  *United States v. Curtiss-Wright Exp. Corp.*, 299

U.S. 304, 316-18 (1936).[1]

The Eleventh Circuit has thus recognized "an overwhelmingly dominant federal interest" in the field of "entry, movement, and residence of aliens within the United States." *GLAHR*, 691 F.3d at 1264. And the Fifth Circuit, which found a similar Texas law preempted, explained that: "the entry, admission, and removal of noncitizens . . . is *exclusively* a federal power." *Texas*, 97 F.4th at 278-79.

Consistent with this dominant federal interest, Congress, through the INA, has enacted a "pervasive" framework to regulate individuals' entry and presence in the United States, and particularly "unauthorized alien[s]"—the same people Florida is attempting to regulate through S.B. 4C. *Arizona*, 567 U.S. at 399. The Eleventh Circuit has accordingly recognized "[t]he comprehensive nature" of "federal statutes criminalizing the acts undertaken by aliens and those who assist them in coming to, or remaining within, the United States." *GLAHR*, 691 F.3d at 1250; *see Texas*, 97 F.4th at 286 (holding similar Texas law field preempted based on "detailed statutory scheme" governing the "unlawful entry and reentry of noncitizens," which indicates that Congress "occupies the entire field"); *Lozano v. City of Hazleton*, 724 F.3d 297, 315 (3d Cir. 2013) (explaining that the INA contains a "comprehensive scheme" concerning "the terms and conditions of admission to the country").

"The [INA's] 'central concern' is the 'entry and stay of aliens' in the United States." *Texas*, 97 F.4th at 280 (citing *DeCanas v. Bica*, 424 U.S. 351, 359 (1976)). It contains detailed rules about who can enter the country. *See, e.g.*, 8 U.S.C. §§ 1153, 1184. For people who enter the country without authorization, the federal scheme contains a variety of enforcement

---

[1] The federal government's exclusive authority derives from multiple constitutional sources, including its "power to establish a uniform Rule of Naturalization, its power to regulate Commerce with foreign Nations, and its broad authority over foreign affairs." *Toll v. Moreno*, 458 U.S. 1, 10 (1982) (cleaned up, citations omitted); *see also Hines*, 312 U.S. at 62.

mechanisms: Congress has criminalized entry and re-entry between ports of entry, 8 U.S.C. §§ 1325, 1326, as well as efforts to assist or facilitate entry between ports, 8 U.S.C. §§ 1323, 1324, 1327, 1328, 1329.  Congress has provided a detailed set of standards and procedures to determine when people who enter without inspection may be arrested and detained by federal officials.  *See, e.g.*, 8 U.S.C. §§ 1225(b), 1226(a)-(c), 1182(d)(5)(A).  And Congress has frequently amended this scheme, including multiple significant amendments to the provisions most relevant here.  *See United States v. Texas*, 719 F. Supp. 3d 640, 665, 665 n.12 (W.D. Tex. 2024) (noting history of "countless statutes and treaties" to support field preemption).  The federal entry scheme is as complex and "pervasive" as it gets, and therefore leaves "no room for the States to supplement it."  *Arizona*, 567 U.S. at 399.

The Supreme Court and the Eleventh Circuit have held similar state attempts to regulate basic immigration matters to be field preempted.  In *Arizona*, the Court invalidated Section 3 of Arizona's law, which criminalized failure to carry a federal noncitizen registration form, because Congress had already occupied that field, which implicated the federal government's external sovereign authority.  *Id.* at 400-03.  Everything *Arizona* said about noncitizen registration applies with even greater force to the "sensitive topic of noncitizens entering the country."  *Texas*, 97 F.4th at 283.  The federal entry scheme squarely addresses an aspect of the federal government's external sovereignty and is at least as pervasive as the alien registration laws—if not significantly more so.  And, as with registration, if a state entry law "were valid, every State could give itself independent authority to prosecute federal [entry] violations, diminishing the Federal Government's control over enforcement[,] . . . detracting from the integrated scheme of regulation created by Congress," and allowing prosecution "even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate

federal policies." *Arizona*, 567 U.S. at 402 (cleaned up); *see also Texas*, 97 F.4th at 292 (describing *Arizona*'s concern that a state could imprison noncitizens "who federal officials determine should not be" prosecuted).

The Eleventh Circuit and courts within this district have likewise held multiple state laws to be field preempted based on the "overwhelmingly dominant interest" in the "entry, movement, and residence of aliens within the United States" and the "comprehensive nature" of federal regulation in this area." *GLAHR*, 691 F.3d at 1264 (holding that a Georgia law that prohibited, *inter alia*, transporting or moving an undocumented person was field preempted); *Alabama*, 691 F.3d at 1285-87 (similar); *FWAF*, 734 F.Supp.3d at 1332 (similar). Because S.B. 4C also attempts to regulate within the field of the "entry, movement, and residence of aliens within the United States," it is likewise preempted.

In a preempted field like this, even state laws that have "the same aim as federal law and adopt[] its substantive standards" are invalid, because the "basic premise of field preemption" is clear: "States may not enter, *in any respect*, an area the Federal Government has reserved for itself." *Arizona*, 567 U.S. at 402 (emphasis added); *see also Alabama*, 691 F.3d at 1287 (concluding that the state was "prohibited from enacting concurrent state legislation in this field of federal concern"). And here, there is a "further intrusion upon the federal scheme," *Arizona*, 567 U.S. at 402-03, because S.B. 4C's state entry crime imposes penalties that are more severe than those permitted under federal law. *Compare* Fla. Stat. §§ 811.102(1) (mandatory minimum of nine months), *with* 8 U.S.C. § 1325(a) (maximum sentence of six months). These mismatches with "federal law simply underscore the reasons for field preemption." *Arizona*, 567 U.S. at 403.

In sum, when it comes to regulating noncitizens' entry into the United States, the case for field preemption is straightforward. "Congress established a comprehensive framework to

identify *who* may enter, *how* they may enter, *where* they may enter, and *what* penalties apply for those who enter unlawfully." *Texas*, 97 F.4th at 283; *GLAHR*, 691 F.3d at 1250 (citing "comprehensive" framework of "federal statutes criminalizing the acts undertaken by aliens and those who assist them in coming to, or remaining within, the United States"). As a result of this pervasive scheme—and because for 150 years the Supreme Court has reiterated that states lack authority over such matters—no state has successfully seized the federal government's prerogatives and set up its own state-law alternative immigration system. S.B. 4C is field preempted and should be immediately enjoined.

**B. S.B. 4C Is Preempted Because It Conflicts with the Federal Immigration System.**

In addition to field preemption, S.B. 4C is conflict preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (cleaned up). This is true for several related reasons.

*First*, S.B. 4C violates *Arizona*'s core teaching that states cannot act unilaterally to regulate immigration "without any input from the Federal Government." *Arizona*, 567 U.S. at 408. Letting Florida unilaterally arrest, detain, and prosecute noncitizens for entry and reentry crimes would allow it to "achieve its own immigration policy," *id.*—a result that *Arizona* repeatedly rejects.

Section 6 of the challenged Arizona law allowed state officers to make warrantless arrests of noncitizens who were possibly removable. The Court held that the provision was preempted because it allowed "unilateral state action" that disregarded the "significant complexities involved in enforcing federal immigration law" and usurped the federal government's ability to exercise discretion and weigh competing humanitarian, foreign policy, and other considerations. *Id.* at 407-10. Section 3—the registration scheme discussed above—was similarly preempted

because (among other things) it allowed unilateral state prosecutions for what were effectively

violations of federal law.  Such "independent authority to prosecute" would upend the "careful

framework Congress adopted," "diminish the Federal Government's control over enforcement,"

and "frustrate federal policies."  *Id.* at 401-02 (cleaned up).  Thus, the through line of the entire

*Arizona* decision is that federal law does not allow "unilateral state action" in the field of

immigration enforcement.  *Id.* at 410; *see also Texas*, 97 F.4th at 289-90; *United States v. Texas*,

586 F. Supp. 3d 574, 583-84 (W.D. Tex. 2022) (enjoining state executive order for this reason).

And if unilateral *arrests* alone were enough for preemption in *Arizona*, then unilateral arrests,

prosecutions, and detention under S.B. 4C must be preempted as well.

     *Second,* S.B. 4C frustrates Congress's statutory scheme by preventing federal authorities

from balancing a range of interests in deciding how to process noncitizens who enter the United

States.  A "principal feature" of the immigration system is the "broad discretion" Congress gave

to federal officials.  *Arizona*, 567 U.S. at 396.  Specifically, Congress has provided federal

Executive Branch officials a range of tools to address noncitizens who enter without legal

authorization, including criminal charges under 8 U.S.C. §§ 1325 or 1326.  *See id.* at 395-96,

409.  "By confining the prosecution of federal immigration crimes to federal court, Congress

limited the power to pursue those cases to the appropriate United States Attorney."  *GLAHR*, 691

F.3d at 1265.  Such federal discretion is critical because it "implicates not only 'normal domestic

law enforcement priorities' but also 'foreign-policy objectives,'" and "immediate human

concerns."  *United States v. Texas*, 599 U.S. 670, 679 (2023) (quoting *Reno v. Am.-Arab Anti-

Discrimination Comm.*, 525 U.S. 471, 490-91 (1999)); *see also Arizona*, 567 U.S. at 395-96.

     S.B. 4C takes away this critical federal discretion. Indeed, under S.B. 4C, Florida has

"the power to bring criminal charges against individuals for violating a federal law even in

circumstances where federal officials in charge of the comprehensive scheme determine that the prosecution would frustrate federal policies," *id.* at 402, harm relations with a foreign country, undermine humanitarian protections, jeopardize a criminal investigation, or conflict with our international obligations. *Id.* at 396-97, 408 (citing these as reasons why unilateral state action is preempted); *see also GLAHR*, 691 F.3d at 1265 (similar). S.B. 4C thus casts aside the "federal concerns [and] the priorities that Congress has explicitly granted executive agencies the authority to establish" with respect to enforcement of the Nation's immigration laws. *Id.* at 1265. Indeed, as the Eleventh Circuit has observed, "[e]ach time a state enacts its own [law] parallel to the INA, the federal government loses 'control over enforcement of the INA, thereby 'further detract[ing] from the integrated scheme of regulation created by Congress.'" *Id.* at 1266 (warning of "fifty individual attempts to regulate immigration-related matters"). For these reasons, the Eleventh Circuit has concluded that similar laws allowing states to unilaterally enforce immigration law were conflict preempted. *Id.* at 1266-67. The same reasoning applies to S.B. 4C.

*Third,* there are multiple "inconsistenc[ies] between" S.B. 4C's entry and reentry crimes "and federal law," *Arizona*, 567 U.S. at 402-03. Indeed, S.B. 4C "creates a new crime unparalleled in the federal scheme." *GLAHR*, 691 F.3d at 1266. Although federal law prohibits a noncitizen from entering the United States between ports of entry, 8 U.S.C. § 1325, "[o]nce inside the territory . . . it is not (and has never been) a federal crime . . . to migrate into another state," *GLAHR*, 691 F.3d at 1266. However, S.B. 4C makes it a crime to knowingly enter or attempt to enter Florida. Fla. Sta. § 811.102(1). As the Eleventh Circuit held with respect to Georgia and Alabama's attempts to regulate the transportation of noncitizens, "such additional regulation conflicts with federal law" even where state officials may "argue that the objectives of

federal law and [state law] are the same." *GLAHR*, 691 F.3d at 1266; *see also Alabama*, 691

F.3d at 1287 (quoting *Hines*, 312 U.S. at 66-67) (holding Alabama law to be conflict preempted

because it "mandates enforcement of 'additional or auxiliary regulations' that the INA does not

contemplate").  The inconsistencies between S.B. 4C and federal law are underscored by S.B.

4C's sentencing scheme, which requires a mandatory minimum sentence of nine months

imprisonment'—three months longer than the maximum sentence for the equivalent federal

crime.  Fla. Sta. § 811.102(1).  As a result of these inconsistencies, S.B. 4C is conflict

preempted.  *See Arizona*, 567 U.S. at 402-03 (holding Section 3 of Arizona law to be preempted

based on "inconsistency between § 3 and federal law with respect to penalties"); *GLAHR*, 691

F.3d at 1266; *Alabama*, 691 F.3d at 1287.

 *Fourth*, S.B. 4C overrides Congress's intent by granting state officials authority to make

decisions regarding a noncitizen's immigration status.  "The federal government alone . . . has

the power to classify non-citizens."  *Villas at Parkside Partners v. City of Farmers Branch, Tex.*,

726 F.3d 524, 536 (5th Cir. 2013) (en banc) (citing *Arizona*, 567 U.S. at 407-09).  Given the

"significant complexities involved in enforcing federal immigration law," Congress has entrusted

the process to "federal officers who have received training."  *Id.* at 408-09.  Yet, S.B. 4C places

state officials in the "impermissible position" of enforcing state law "based on their immigration

status determinations without federal direction and supervision."  *Farmers Branch*, 726 F.3d at

532 (citing *Arizona*, 567 U.S. at 413).

 Under S.B. 4C, state officials untrained in immigration law are tasked with deciding

whether "[t]he Federal Government has granted . . . lawful presence in the United States."  Fla.

Sta. § 811.103(4).  That term has no general meaning in immigration law that applies to the

question of whether a noncitizen should be permitted to enter or remain in the United States;

rather, those questions are answered through federal removal proceedings as well as Executive discretion.  And with no federal "definition that would be applicable" in this context, S.B. 4C "open[s] the door to conflicting state and federal rulings."  *Farmers Branch*, 726 F.3d at 533, 536.  S.B. 4C similarly requires state officials to make other determinations about federal immigration law that may conflict with federal determinations.  *See, e.g.,* Fla. Sta. § 811.103(4)(c) (whether exceptions to 8 U.S.C. § 1326(a) apply); *id.* § 811.103(1) (whether someone was "denied admission" or departed while "an order of exclusion, deportation, or removal is outstanding").

## II.    Plaintiffs Are Likely to Succeed on the Merits Because S.B. 4C Violates the Commerce Clause.

The Constitution provides that Congress may "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.  The Commerce Clause also has a dormant component that prevents a State "from retreating into economic isolation" by passing laws that discriminate against interstate commerce.  *Dep't of Revenue v. Davis*, 553 U.S. 328, 338 (2008) (citation omitted); *see Ore. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994).  "The clearest example of [such] legislation is a law that overtly blocks the flow of interstate commerce at a State's borders."  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see also Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935) (holding that states cannot "set a barrier to traffic between one state and another").  The Supreme Court has thus repeatedly invalidated laws that constitute an "attempt by one State to isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade."  *Philadelphia*, 437 U.S. at 628; *see id.* at 627-28 (collecting cases).

"[P]recedents firmly establish[] that the federal commerce power surely encompasses the movement in interstate commerce of *persons* as well as commodities."  *United States v. Guest*,

383 U.S. 745, 758-59 (1966) (emphasis added).  Thus, it is interstate commerce for a person to

travel from one state to another.  *Covington & C. Bridge Co. v. Kentucky*, 154 U.S. 204, 218

(1894) (explaining that "to travel in person from Cincinnati to Covington" constitutes interstate

commerce); *Hoke v. United States*, 227 U.S. 308, 320 (1913) (similar).

      Recognizing that the movement of persons into and out of a state is interstate commerce,

the Supreme Court held in *Edwards v. California*, 314 U.S. 160 (1941) that the Commerce

Clause was violated where California attempted to "fenc[e] out indigent immigrants"—that is,

people seeking to move there from out of state.  *Philadelphia*, 437 U.S. at 627 (citing *Edwards*,

314 U.S. at 173-74 (1941)).  There, California "assert[ed] that the huge influx of migrants into

California in recent years has resulted in problems of health, morals, and especially finance."  *Id.*

at 173.  California thus contended "that a State may close its borders to the interstate movement

of paupers."  Brief for Respondent at 2, *Edwards v. California*, 314 U.S. 160 (1941) (No. 588),

1941 WL 52964, at *2.  But the Supreme Court concluded that California's statute violated the

Commerce Clause's "prohibition against attempts on the part of any single State to isolate itself

from difficulties common to all of them by restraining the transportation of persons and property

across its borders."  *Edwards*, 314 U.S. at 173.

      So too here.  S.B. 4C "overtly blocks the flow of interstate commerce at a State's

borders," *Philadelphia*, 437 U.S. at 624, by banning certain noncitizens—namely those who

irregularly entered the United States—from the State of Florida.  Because S.B. 4C discriminates

against interstate commerce by banning certain categories of immigrants from entering Florida,

S.B. 4C "is virtually per se invalid" under the Commerce Clause.  *Ore. Waste Sys., Inc.*, 511 U.S.

at 99.  S.B. 4C thus violates the Commerce Clause.  *See United States v. Texas*, 719 F. Supp. 3d

at 678 (concluding that Texas's illegal entry and reentry law violated the Dormant Commerce

Clause "because it regulates the movement of noncitizens across [a] . . . border").

### III.    Plaintiffs Will Suffer Irreparable Injury Absent an Injunction.

Absent an injunction, Plaintiffs will suffer irreparable harm by being placed at risk of arrest, prosecution, and detention under a state statute preempted by federal law.

The Eleventh Circuit has held that irreparable harm exists where, as here, "[p]laintiffs are under the threat of state prosecution for crimes that conflict with federal law." *GLAHR*, 691 F.3d at 1269. This Court has come to the same conclusion, recognizing that "the threat of criminal prosecution" under a preempted state law "constitutes irreparable harm for purposes of a preliminary injunction. *FWAF*, 734 F. Supp. 3d at 1338 (internal quotation marks omitted); *see also, e.g., Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (similar); *Ga. Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317, 1339 (N.D. Ga. 2011), *aff'd in part, rev'd in part sub. nom. Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012) (similar); *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008), aff'd 675 F.3d 802 (5th Cir. 2012), *aff'd en banc* 726 F.3d 524, 536 (5th Cir. 2013) (similar).

Since enacting S.B. 4C, law enforcement agencies in Florida have already made several arrests pursuant to these laws.[2] Plaintiffs are at risk of being next. Because Plaintiffs and their members are under the threat of state prosecution for these crimes, Plaintiffs will suffer irreparable injury absent an injunction.

### IV.   The Balance of Equities and Public Interest Support an Injunction.

The balance of equities tips decisively in favor of the Plaintiffs, and an injunction is strongly in the public interest. In contrast to the real and severe harms faced by Plaintiffs, the

---

[2] *See, e.g.*, @FLSBIE X (Mar. 19, 2025, 3:45 PM), https://perma.cc/T47H-42GZ (stating that noncitizens had been arrested under S.B. 4C).

State has no legitimate interest in enforcing an unconstitutional law or regulating in an exclusively federal arena. *Alabama*, 691 F.3d at 1301 ("[W]e discern no harm from the state's nonenforcement of invalid legislation"); *see also Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990) (states faced no injury from injunction of preempted regulation).

The public interest also clearly favors an injunction. States' "[f]rustration of federal statutes and prerogatives [is] not in the public interest." *Alabama*, 691 F.3d at 1301; *GLAHR*, 691 F.3d at 1269 (concluding that "enforcement of a state law at odds with the federal immigration scheme is neither benign nor equitable"); *Texas*, 719 F.Supp.3d at 698-99 (same). That is particularly so where state action invades federal domains and interferes with federal foreign relations. *See, e.g., Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013).

Additionally, S.B. 4C will erode the public trust that law enforcement has worked to create with migrant communities that is integral to public safety. *See Texas*, 719 F.Supp.3d at 698 ("Because SB 4 authorizes state police officers to arrest many unauthorized noncitizens, victims of abuse or human trafficking will risk arrest and removal if they report their crimes," making "noncitizen crime victims less likely to report violent crimes."); *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 270 (S.D.N.Y. 2020) (enjoining public charge rule due to its chilling effect on immigrants seeking services).

## V.   This Court Should Grant an Injunction That Extends to All Members of the Provisional Class.

Plaintiffs have concurrently filed a motion for class certification establishing their compliance with the requirements of Rule 23. Plaintiffs reincorporate those arguments here and request this Court issue provisional class certification. This Court should grant provisional class certification and issue a temporary restraining order and preliminary injunction that protects all

members of the provisional class, as courts regularly do in these circumstances. *See Tefel v. Reno*, 972 F. Supp. 608, 618 (S.D. Fla. 1997) (granting temporary restraining order and provisional class certification); *Whitaker v. Perdue*, No. 4:06-cv-0140-CC, 2006 WL 8553737, at *1 (N.D. Ga. June 29, 2006) (similar); *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (courts "routinely grant provisional class certification for purposes of entering injunctive relief"), *aff'd*, 501 F. App'x 713 (9th Cir. 2012); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) (approving class certification for purposes of entering injunctive relief); *see also Georgia v President of the U.S.*, 46 F.4th 1283, 1306 (11th Cir. 2022) (citing "class certification under Rule 23" as a mechanism by which "nonparties with similar interests" may "seek the protection of injunctive relief").

Even without a class, a statewide injunction would still be necessary to protect the Plaintiffs. The Eleventh Circuit has explained that enjoining a policy in full is warranted "where it is necessary to provide complete relief to the plaintiffs [or] to protect similarly situated nonparties, . . . where the plaintiffs are dispersed throughout the United States, when immigration law is implicated, or when certain types of unconstitutionality are found." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1282 (11th Cir. 2021). All those factors are present in this case. A statewide injunction is necessary to provide complete relief to the plaintiffs in this case. Indeed, one Plaintiff, FLIC, not only has dozens of individual members but also has 85 member organizations located across the state that will be affected by S.B. 4C; another Plaintiff, FWAF, has thousands of members statewide. Additionally, as the Eleventh Circuit has recognized, the need for a universal injunction is strong where, as here, "immigration law is implicated, or when certain types of unconstitutionality are found." *Florida*, 19 F.4th at 1282; *see also GLAHR*, 691 F.3d at 1269 (affirming statewide injunction in preemption case).

Thus, the Court should issue statewide relief.

## VI. Bond Should Be Waived.

The Court should dispense with any bond requirement in granting Plaintiffs classwide interim relief. "[I]t is well-established that the amount of security required by [Rule 65(c)] is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.*, LLC, 425 F.3d 964, 971 (11th Cir. 2005) (internal citation omitted); *see also Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997) ("The amount of an injunction bond is within the sound discretion of the district court."). This is especially true where, as in this case, "demanding a bond from the party seeking the injunction would injure the constitutional rights of the party or the public[.]" *Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999) (internal citation omitted). Plaintiffs have concurrently filed a motion for class certification establishing their compliance with the requirements

## CONCLUSION

For the foregoing reasons, the Court should issue a temporary restraining order to a provisionally certified class and set a hearing to consider the motion for a preliminary injunction.

Date: April 2, 2025

Respectfully submitted,

*/s/ Amy Godshall*

| | |
|---|---|
| Cody Wofsy* | Amy Godshall (FL Bar No. 1049803) |
| Spencer Amdur* | Daniel B. Tilley (FL Bar No. 102882) |
| Hannah Steinberg* | Amien Kacou (FL Bar No. 44302) |
| Oscar Sarabia Roman* | ACLU Foundation of Florida, Inc. |
| AMERICAN CIVIL LIBERTIES | 4343 West Flagler Street, Suite 400 |
| UNION FOUNDATION | Miami, FL 33134 |
| IMMIGRANTS' RIGHTS PROJECT | (786) 363-2700 |
| 425 California Street, Suite 700 | agodshall@aclufl.org |
| San Francisco, CA 94104 | dtilley@aclufl.org |
| T: (415) 343-0770 | akacou@aclufl.org |

cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

Paul R. Chavez (FL Bar No. 1021395)
Anne Janet Hernandez Anderson
(FL Bar No. 0018092)
Evelyn Wiese (CA Bar No. 338419)*
Christina Isabel LaRocca (FL Bar No.
1025528)
AMERICANS FOR IMMIGRANT
JUSTICE
6355 NW 36 Street, Suite 309
Miami, FL 33166
(305) 576-6273
pchavez@aijustice.org
ajhernandez@aijustice.org
ewiese@aijustice.org
clarocca@aijustice.org

*Motion pro hac vice forthcoming*

*Attorneys for Plaintiffs*