## <u>DECLARATION OF RENE GOMEZ</u>

I, Rene Gomez, hereby declare under the penalty of perjury under the laws of the United States of America:

1. I make this declaration based on my personal knowledge, except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am the Civic Engagement Coordinator of the Farmworkers Association of Florida ("FWAF").

3. FWAF is a non-profit organization with headquarters in Apopka, Florida and offices throughout the state, including in Homestead, Fellsmere, Immokalee, and Pierson.

4. FWAF is a grassroots and community-based farmworker membership organization with nearly 12,000 members. Members pay a $20 annual fee for becoming members and receiving a membership card.

5. FWAF's mission is to support and build power among farmworker and rural low-income communities. FWAF's programs focus primarily on encouraging farmworkers' civic participation, building farmworker coalitions, supporting workers' rights, improving working conditions, advocating for immigrants' rights, and safeguarding farmworkers' health and safety.

6. I joined FWAF in 2024 and have served as the Civic Engagement Coordinator since then.  In this role, I coordinate voter engagement efforts, lead initiatives on immigration policy, work with youth programs, and engage in legislative advocacy. I also organize community events, oversee food distribution efforts, and coordinate rapid response related to immigration enforcement.

7. FWAF has a staff of twenty-two. Our programmatic staff are divided among agroecology, climate justice, food and farmworker relief, health and safety, immigrants' right, and organizers. Our remaining staff include administrators, a grant manager, a communications professional, facilities managers, and a clerical staff member.

8. FWAF has robust programming for its members, including noncitizens who may be subject to arrest under SB 4C. These programs encompass agroecology; climate justice; worker health, safety, justice; civic engagement; immigration advocacy; and research.

9. FWAF's agroecology work is based on traditional agricultural practices carried out by our ancestors across the globe before our food production became industrialized and extractive. FWAF's agroecology program is part of our work on food sovereignty and environmental justice. We view the necessary change to the inequities inherent in the current food system in which we live to be rooted at the community level.

10. Much of FWAF's worker justice advocacy focuses on worker safety issues that we explore through our research. For the past ten years, FWAF has partnered with researchers at Emory University to study heat stress and conduct focus groups on its impact. FWAF uses this data to advocate through the media and directly with policymakers. We also use this data to train our members on how to identify the early signs of heat stress. Since 2019, FWAF has traveled to Tallahassee with this data to advocate for heat stress protections for workers. FWAF has also gone to Washington, DC to meet with lawmakers to discuss the need for heat stress protections for outdoor workers. This work includes FWAF's participation in the OSHA rulemaking process to make recommendations to protect outdoor workers from heat stress.

11. FWAF's food justice program advocates with local municipalities to adopt the Good Food Purchasing Program, in which municipalities commit to obtaining food that is produced and distributed consistent with the values of the program, including a valued workforce. A valued workforce is one where the workers receive OSHA and international labor protections and have the right to organize and bargain collectively.

12. FWAF works on access to healthcare and outreach to health clinics to make sure farmworkers receive the medical care they need. As part of this work, FWAF coordinates free clinics for members throughout the state. For some of our members, this is their only doctor's visit during the year.

13. In addition to FWAF's own advocacy on worker safety, FWAF works to enhance the civic engagement of its members. FWAF hosts local candidate forums, where we invite candidates to come talk to our membership and answer their questions. For larger municipalities, like Miami-Dade County, we take members to candidate forums. We also organize meetings with our members and legislators in Tallahassee, school board members, and county commissions.

14. Research has always been a core FWAF program. Our research has focused on uncovering health risks to farmworkers – in particular the risks of heat stress and pesticides – and learning how to better educate our members and farmworkers nationwide.

15. FWAF serves seasonal workers, most of whom are immigrants who travel to Florida with the seasons to plant and harvest crops. To do so, FWAF's members travel back and forth between Florida, Georgia, and Alabama, and more northern states. This means that FWAF members often cross state lines to return to Florida multiple times per year.

FWAF advocates for immigrants' rights and their ability to travel safely between states during harvesting season.

16. FWAF's members include immigrants who are both documented and undocumented, including many who live permanently in Florida or live elsewhere but frequently travel to the state for work or vacation.

17. FWAF's members have a wide range of immigration statuses and histories. For example, FWAF members include: naturalized citizens, asylees, lawful permanent residents ("LPR"), humanitarian parole recipients, holders of a visa for temporary agricultural workers ("H-2A visa"), recipients of Deferred Action for Childhood Arrivals ("DACA"), holders of Temporary Protected Status ("TPS"), recipients of Special Immigrant Juvenile Status ("SIJS"), former unaccompanied minors who were released to relatives or sponsors and were permitted to stay in the U.S. under the custody of the Office of Refugee Resettlement ("ORR"), federal protection beneficiaries, such as persons covered under the Violence Against Women Act ("VAWA"), holders of a visa for Victims of Human Trafficking ("T visa"), holders of a visa for Victims of Criminal Activity ("U visa"), and persons possessing orders to withhold and/or defer their removal. FWAF members also include people who have submitted applications for a wide range of immigration benefits that have yet to be resolved, people who are currently in removal proceedings, people who have been released from federal custody with and without federal notices to appear, and people who entered unlawfully and have not subsequently had contact with federal immigration authorities.

18. Many of FWAF's members entered the United States without inspection, and many other members reentered the United States following a previous deportation.

19. Many of FWAF's members will be directly harmed by S.B. 4C, as they entered the United States without inspection. Thus, they would be subject to S.B. 4C's Illegal Entry or Illegal Reentry provisions any time they enter Florida, such as when they are traveling back into Florida following seasonal work or vacation elsewhere.

20. For example, one FWAF member, W.A., entered the United States without inspection in 2003. She generally travels outside of Florida on occasion for holidays, including Christmas and spring break, and then returns to Florida. She fears being arrested under SB 4C's Illegal Entry provision and fears having to be separated from her children, which would be tragic.

21. Another FWAF member, V.V., was previously deported and her last reentered the United States without inspection in 2014. V.V. fears being arrested under SB 4C's Illegal Reentry provision and is deeply concerned about being separated from her husband and U.S.-citizen children.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Apopka, Florida on April 1, 2025.

RENE GOMEZ