**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| FLORIDA IMMIGRANT COALITION, *et al.*,<br><br>        *Plaintiffs*,<br><br>        v.<br><br>JAMES UTHMEIER, in his official capacity as the Attorney General of the State of Florida, *et al.*,<br><br>        *Defendants*. | Case No. 1:25-cv-21524 |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**AND MEMORANDUM OF LAW IN SUPPORT**

**INTRODUCTION**

A class action lawsuit is appropriate in this challenge to Florida's statute, S.B. 4C, which creates new state immigration crimes for entry and reentry.  S.B. 4C violates the Supremacy Clause and the Commerce Clause of the Constitution.  *See* Pls.' Mot. TRO & Prelim. Inj. ("Mot.").

Plaintiffs request that this Court certify two classes under Federal Rules of Civil Procedure 23(a) and 23(b)(2) for purposes of enjoining the enforcement of S.B. 4C as to all members of those classes.  As noted in their motion for a temporary restraining order and preliminary injunction, Plaintiffs ask that, given that the law is in effect, and the emergency nature of this requested relief, the Court begin by provisionally certifying the class for the purpose of issuing a temporary restraining order or preliminary injunction.  *See* Mot. at 19-21. Plaintiffs ask that the Court then consider any outstanding questions before proceeding to full class certification.

The first class ("The Entry Class") would include all individuals potentially subject to the "illegal entry" provision in the law: any person not a citizen or national of the United States who may now or in the future enter or attempt to enter the state of Florida after entering the United States by eluding or avoiding examination or inspection by immigration officers.  *See* S.B. 4C § 3.

The second class ("The Reentry Class") would include all individuals potentially subject to the "illegal reentry" provision in the law: any person not a citizen or national of the United States who may enter, attempt to enter, or be found in the state of Florida after the person has been denied admission to or excluded, deported, or removed from the United States; or has departed from the United States while an order of exclusion, deportation, or removal was

1

outstanding.  *See* S.B. 4C § 4.

These classes satisfy the requirements of Rule 23(a) and fall within the scope of Rule 23(b)(2).  The proposed classes include thousands of individuals, which is sufficient to satisfy numerosity.  The classes raise common legal questions that will generate common answers, including whether the statute violates the Supremacy Clause and the Commerce Clause.  The classes also raise common factual issues because Plaintiffs and class members are subject to the same criminal statute.  Plaintiffs' claims are typical of those whom they seek to represent—that is, other individuals subject to arrest and prosecution under S.B. 4C.  Plaintiffs are also adequately represented by a team of attorneys with significant experience in immigrants' rights issues and class action cases from the ACLU Immigrants' Rights Project, the ACLU of Florida, and Americans for Immigrant Justice.

Plaintiffs' proposed classes likewise satisfy Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Because Defendants seek to enforce an unlawful state criminal statute, they are operating in a manner that is common to all Plaintiffs.  The classes as a whole are therefore entitled to an injunction enjoining Defendants from enforcing S.B. 4C.

## BACKGROUND

### A.  Florida S.B. 4C

The bill establishes two new state crimes relevant here. A person commits "illegal entry" when "an unauthorized alien who is 18 years of age or older . . . knowingly enters or attempts to enter this state after entering the United States by eluding or avoiding examination or inspection by immigration officers."  S.B. 4C § 3.  Affirmative defenses are available if the federal

government has granted the noncitizen "lawful presence . . . or discretionary relief that authorizes the unauthorized alien to remain in the United States temporarily or permanently"; the noncitizen is "subject to relief under the Cuban Adjustment Act of 1966"; or the noncitizen's entry into the United States was not a violation of 8 U.S.C. § 1325.  *Id.*  A person convicted of this crime must be sentenced to a mandatory minimum of nine months in prison.  If the person has one prior conviction for this crime, the mandatory minimum is 1 year and 1 day, and if the person has two prior convictions for this crime, the mandatory minimum is two years.  *Id.*

A person commits "illegal reentry" when "an unauthorized alien who is 18 years of age or older . . . after having been denied admission, excluded, deported, or removed or having departed the United States during the time an order of exclusion, deportation, or removal is outstanding, thereafter enters, attempts to enter, or is at any time found in [Florida]."  S.B. 4C § 4.  There is no criminal liability if the Attorney General consented to an individual's reapplying for admission, or if such consent was not required.  *Id.*  A person convicted of this crime must be sentenced to a mandatory minimum of 1 year and 1 day in prison.  *Id.*  If the person has three or more prior convictions for a misdemeanor or a felony, the mandatory minimum is two years, and if the person has a prior conviction for a forcible felony, the mandatory minimum is five years.  *Id.*

With respect to both crimes, S.B. 4C provides that, "unless release is otherwise required," the court "shall presume that no conditions of release can reasonably assure the presence of an unauthorized alien arrested for a violation of this [statute]," and the court "must order the unauthorized alien to be detained pending the disposition of the case."  *Id.*  S.B. 4C additionally provides that, upon making an arrest for illegal entry or illegal reentry, the arresting law enforcement agency shall notify Immigration and Customs Enforcement of the noncitizen's

3

arrest and "provide any known information relating to" the noncitizen. *Id.*

### B. Class Representatives

*Y.M.* is a 40-year-old citizen of Honduras. *See* Decl. of Y.M. ("YM Decl.") ¶ 2. She lives in Gainesville, Florida with her U.S.-citizen son, who is a minor with a disability. *Id.* ¶¶ 2–3. She entered the United States without inspection more than twenty years ago, and has not left the United States since that time. *Id.* ¶ 5. She submitted a U visa application in 2022, which is still pending. *Id.* ¶ 6. She leaves Florida about twice per year on family vacations; her family recently traveled to Georgia. *Id.* ¶ 7. She is worried about the risk of arrest or detention under S.B. 4C's entry provision. *Id.* ¶ 8. If detained under S.B. 4C, she fears that she will be separated from her U.S.-citizen child, who has a disability, for whom she is the primary caretaker and provider. *Id.* ¶¶ 4, 8.

*V.V.* is a 35-year-old citizen of Guatemala. *See* Decl. of V.V. ("VV Decl.") ¶ 2. She lives in Immokalee, Florida with her husband and four, minor U.S.-citizen children. *Id.* ¶¶ 2–3. She entered the United States without inspection for the first time in 2005, and was soon thereafter detained and deported. *Id.* ¶ 4. She last entered the United States without inspection in 2014, and has lived in the country continuously since then. *Id.* ¶ 5. She frequently travels outside of Florida for her work. *Id.* ¶ 7. She is worried about the risk of arrest or detention under S.B. 4C. *Id.* ¶ 8.

*Florida Immigrant Coalition* ("FLIC") is a nonprofit, membership-based grassroots organization whose members include noncitizens at substantial risk of being arrested, detained, and prosecuted under S.B. 4C. *See* Decl. of Tessa Petit ("FLIC Decl.") ¶¶ 4, 14. FLIC currently has over 100 individual members, including immigrants who are both documented and undocumented. *See id.* Members travel back and forth between Florida and other states for myriad reasons. *See id.* ¶ 15. FLIC is made up of immigrants with diverse immigration

histories—many of whom would be subject to arrest under S.B. 4C. *See id.* ¶ 14. FLIC's members also include organizations whose members include noncitizens at substantial risk of being arrested, detained, and prosecuted under S.B. 4C, as well as organizations whose core business activities in furtherance of their missions would be severely undercut by S.B. 4C. *See id.* ¶¶ 17-20. FLIC currently has 85 organizational members. *See id.* ¶ 16. Y.M. and V.V. are members of FLIC. *See id.* ¶¶ 15, 19.

*Farmworkers Association of Florida* ("FWAF") is a nonprofit, membership-based grassroots organization whose members include noncitizens at substantial risk of being arrested, detained, and prosecuted under S.B. 4C. *See* Decl. of Rene Gomez ("FWAF Decl.") ¶¶ 4, 16-19. FWAF currently has nearly 12,000 members, including immigrants who are both documented and undocumented. *See id.* ¶¶ 4, 16. Members travel back and forth between Florida, Georgia, Alabama, and more northern states with the seasons to plant and harvest crops. *See id.* ¶ 15. The organization is made up of immigrants with diverse immigration histories—many of whom would be subject to arrest under S.B. 4C. *See id.* ¶¶ 16-21.

## ARGUMENT

Rule 23 was enacted to "facilitate the bringing of class actions in the civil-rights area." 7A Wright & Miller, *Federal Practice & Procedure* § 1775 (3d ed. 2018). Civil rights cases like this one—where plaintiffs challenge a uniform policy or statute that applies broadly to a defined group—are particularly amenable to class treatment. As courts in this Circuit have recognized, the purpose behind class actions is to provide individuals the means of obtaining redress for claims that would be difficult to bring in individual litigation and to deter wrongdoing. *See Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1307 (S.D. Fla. 2015). "Thus, doubts regarding the propriety of class certification should be resolved in favor of certification." *Id.* (cleaned up).

5

To obtain class certification, plaintiffs must meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and satisfy at least one provision of Rule 23(b). *See* Fed. R. Civ. P. 23(a), (b); *Braggs v. Dunn*, 317 F.R.D. 634, 652 (M.D. Ala. 2016). "The court's role at the class-certification stage is not to decide the underlying claims, but rather to determine whether the requirements for certification are met." *Braggs*, 321 F.R.D. at 652; *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). Class certification is particularly appropriate here, and all requisite elements of Rule 23 have been met.

Should the Court have any outstanding questions about class certification, Plaintiffs ask that, given that the law is in effect, and the emergency nature of Plaintiffs' requested relief, the Court begin by provisionally certifying the classes for the purpose of issuing a temporary restraining order or preliminary injunction. Provisional class certification depends on and is in service of the associated preliminary relief; the provisional class is tailored to the relief sought and its certification expires alongside the relief. The Court should grant provisional class certification and extend preliminary relief in this case to all members of the provisional classes, as is common in these circumstances. *See, e.g.*, *Whitaker v. Perdue*, No. 4:06-CV-0140-CC, 2006 WL 8553737, at *4 (N.D. Ga. June 29, 2006).

## I.    The Proposed Class Satisfies the Numerosity Requirement of Rule 23(a)(1).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, generally a class size less than twenty-one is typically considered inadequate, while a class size of more than forty is generally adequate. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489–90 (S.D. Fla. 2003)

(citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, the proposed classes include thousands of individuals across Florida who are at risk of enforcement under S.B. 4C's entry and reentry provisions. The Entry Class includes noncitizens who live in or travel to Florida and who may be subject to prosecution for entering or attempting to enter the state after entering the United States by eluding or avoiding examination or inspection by immigration officers. The Reentry Class includes noncitizens who live in or travel to Florida who have a prior removal or deportation order and are similarly at risk under the statute. Florida is home to an estimated 772,000 undocumented immigrants, many of whom live in mixed-status households or are pursuing immigration relief.[1] These individuals move for work, attend schools, visit family across state lines, or return to the state after travel. The United States reinstates more than 100,000 removal orders each year,[2] indicating there are thousands of individuals in Florida whose removal orders could be reinstated. Even a small subset of this population would far exceed the class sizes that courts in this Circuit have found sufficient to satisfy Rule 23(a)(1). *See, e.g.*, *Shutler v. Citizens Disability LLC*, 347 F.R.D. 663, 672 (S.D. Fla. 2024) (certifying much smaller class of about 100 members).

In addition to the large number of proposed class members, other relevant factors, such as "the geographic diversity of the class members, the nature of the action, . . . judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" all render joinder infeasible and weigh in favor of class certification in this case. *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1197 (S.D. Fla. 2020).

---

[1] *See* Migration Policy Institute, *Profile of the Unauthorized Population: Florida* (2024), https://www.migrationpolicy.org/data/unauthorized-immigrant-population/state/FL.
[2] *See* Office of Homeland Security Statistics, *Immigration Enforcement Actions: 2022*, at 16 (2024), https://ohss.dhs.gov/sites/default/files/2024-03/2023_0818_plcy_enforcement_actions_fy2022.pdf.

Moreover, "an influx of future members will continue to populate the class at indeterminate points in the future . . . ." *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, 561 F. Supp. 3d 93, 99 (D.N.H. 2021) (internal citation omitted). As such, the numerosity requirement is easily satisfied.

## II.    The Proposed Classes Share Common Questions of Law and Fact.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "relatively light burden" does not require that all questions of law and fact be common to the putative class members. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). Rule 23(a)(2) commonality can be met where, notwithstanding some factual differences between the class members claims, controlling questions of law and fact are common to the entire class. *See Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (stating that "factual differences among the claims of the putative class members do not defeat certification"), *overruled on other grounds by Ash v. Tyson Foods, Inc*. 546 U.S. 454, 457 (2006).

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). The common contention of injury "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is . . . the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation omitted).

This case presents shared legal and factual questions across the proposed classes. Plaintiffs challenge S.B. 4C on uniform legal grounds: that the statute is preempted by federal

8

immigration law under the Supremacy Clause and unlawfully restricts the free movement of people in violation of the Commerce Clause. Plaintiffs do not seek individualized adjudication; rather, the classes raise facial challenges to a uniform statutory scheme that subjects all class members to the risk of arrest, prosecution, and removal based on their immigration history and movement across state lines.

Proposed class members also share a common base of facts. All class members are subject to the same statutory provisions and face the same consequences based solely on their immigration status, presence, and movement within the state. Their shared risk of prosecution under S.B. 4C's uniform provisions is sufficient to satisfy commonality. *See Gayle*, 614 F. Supp. 3d at 1197 (finding commonality where plaintiffs were subject to the "same substantial risk of serious harm" (internal quotations omitted)). Individual variations in background, travel history, or immigration status do not defeat commonality where Plaintiffs "have suffered the same injury" from the same conduct by Defendants. *Dukes*, 564 U.S. at 350. Nor must Plaintiffs show that every question can be resolved classwide—just that the statute at issue presents "common [questions] apt to drive the resolution of the litigation." *Id.* (citation omitted). Because Plaintiffs challenge a single statute that applies broadly and uniformly, Rule 23(a)(2)'s commonality requirement is easily satisfied.

## III.  The Class Representatives' Claims Are Typical of the Classes.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "center[s] on the relationship between the proposed class representatives and the other members of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 700 (S.D. Fla. 2018) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)).  This analysis turns on "whether other members

have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *In re checking Account Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012) (citation omitted). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004) (citation omitted).

Commonality and typicality tend to overlap, as each looks to the nature of the claims presented in the case, and whether the class members and the named plaintiffs are similarly situated as to those claims. *Dukes*, 564 U.S. at 349 n.5 ("Both [commonality and typicality] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."). Thus, in *Ibrahim*, having already discussed the questions of law and fact common to the class, the court had no trouble concluding that the typicality requirement was met for the same reasons—with virtually no additional discussion. *See* 326 F.R.D. at 700–01 (citing *Id.*).

Here, the Proposed Class Representatives challenge the statutory provisions of S.B. 4C applicable to all proposed class members on the same legal grounds. They seek the same declaratory and injunctive relief as the proposed classes, and they face the same imminent threat of prosecution based on movement across state lines and immigration history. *See Gayle*, 614 F. Supp. 3d at 1198 ("The named plaintiffs' claims are typical if they stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the

10

same legal or remedial theory."). Their claims are not only representative of, but inextricable from, those of the class they seek to represent.

That class members may have different backgrounds or individual circumstances does not defeat typicality. "The commonality and typicality requirements of Rule 23(a) tend to merge," as both serve to ensure the claims of the class representatives align with those of absent class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Because all class members are subject to the same statute and raise the same legal challenges, the typicality requirement is satisfied.

## IV. The Representatives Are Adequate.

Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy depends on the resolution of two questions: (1) "whether plaintiffs have interests antagonistic to those of the rest of the class" and (2) "whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation[.]" *See Cheney*, 213 F.R.D. at 496 (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)).

### A. *Proposed Class Representatives Are Adequate Class Representatives*

Each individual representative also has interests that mirror those of the classes and has expressed willingness to pursue this case on behalf of all who may be affected by S.B. 4C. All of these individuals are noncitizens with plans to leave and re-enter Florida in the future, or are present in Florida notwithstanding having re-entered the United States after being ordered removed. For all of them, the law presents risks of arrest, detention, fines, jail time, and transfer to the custody of federal immigration enforcement officers, all with severe consequences.

Plaintiff *Y.M.* is a 40-year-old who currently resides in Florida and regularly leaves the

11

state for family trips. YM Decl. ¶¶ 2, 7. She has lived in the United States for more than twenty years, has a pending immigration application, and has a U.S.-citizen child. *See id.* ¶¶ 2, 5-6. She fears separation from her U.S.-citizen child under S.B. 4C because she is his primary caregiver and because he has a disability. *See id.* ¶¶ 3, 8.

*V.V.* is a 35-year-old citizen of Guatemala. *See* VV Decl. ¶ 2. She entered the United States without inspection for the first time in 2005, and was soon thereafter detained and deported. *See id.* ¶ 4. She last entered the United States without inspection in 2014, and has lived in the country continuously since then. *See id.* ¶ 5. She frequently travels outside of Florida for her work. *See id.* ¶ 7. She is worried about the risk of arrest or detention under S.B. 4C. *See id.* ¶ 8.

Each plaintiff stands in the same position as the proposed classes, each has declared a willingness to serve as a class representative, and each remains committed to vigorously pursuing this action on behalf of the thousands of class members who fear similar enforcement under S.B. 4C. They are adequate under Rule 23(a)(4).

B. *Plaintiffs' Counsel Are Adequate Class Counsel*

Under Federal Rule of Civil Procedure 23(g), any order certifying a class must appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In deciding whether counsel meet that standard, courts consider "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *see, e.g.*, *Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1308368, at *2 (N.D. Ga. Mar. 23, 2015).

Here, Plaintiffs' counsel satisfy these criteria. They have invested considerable time meeting with affected individuals, gathering facts, and researching how S.B. 4C conflicts with both federal immigration statutes and preemption doctrines. Indeed, counsel have litigated against laws similar to S.B. 4C in other states. Counsel have extensive familiarity with complex federal litigation, including civil-rights actions, preemption cases, and class-based requests for equitable relief. They likewise have concrete knowledge of the relevant legal frameworks as well as the injunctive remedies required to stop a statute that exceeds state authority. They also possess adequate resources to manage a statewide class action and to ensure that any relief secured will be monitored and enforced as necessary. No conflicts of interest appear in the record, and the proposed counsel's litigation history demonstrates a proven capacity to undertake representation that demands significant briefing, motion practice, and ongoing oversight. *See* Decl. of Cody Wofsy, Ex. A; Decl. of Amy Godshall, Ex. B; Decl. of Paul R. Chavez, Ex. C. Under these circumstances, appointment of Plaintiffs' counsel as class counsel is warranted. They have satisfied Rule 23(g)(1)(A) by investigating and pleading the claims, demonstrating the requisite knowledge and experience, and pledging to devote the resources required for this litigation. They will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court should therefore appoint them as class counsel concurrent with granting class certification.

## V.   The Classes Satisfy Rule 23(b)(2).

Class certification under Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) has been liberally applied in the area of civil rights . . . ." *Braggs*, 321

13

F.R.D. at 667 (internal quotations omitted).  Indeed, "some courts have gone so far as to say that the rule's requirements are almost automatically satisfied in actions primarily seeking injunctive relief." *Id.* (quoting *Baby Neal v. Casey,* 43 F.3d 48, 59 (3d Cir. 1994) (internal quotations omitted)).  "The critical inquiry is whether the class members have suffered a common injury that may properly be addressed by class-wide injunctive or equitable relief." *Ibrahim*, 326 F.R.D. at 701 (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983)); *see also Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'").

This is exactly such a case. S.B. 4C is a state statute that purports to create two new immigration-related crimes—one for allegedly entering or attempting to enter Florida after entering the United States without federal authorization, and another for reentering or being found in the state after a prior removal. These provisions apply broadly to noncitizens regardless of individual circumstances, and their enforcement by Defendants presents a common legal threat to all members of the Entry and Reentry Classes. The uniform nature of the statute—and the indiscriminate risk it poses—makes this case especially suitable for certification under Rule 23(b)(2). Moreover, the classes present the same legal theory: Florida's attempt to regulate immigration is preempted by federal law and violates the Commerce Clause. In summary, each class seeks a single injunction that would prohibit enforcement of the challenged provisions, and no individualized determinations are necessary to grant that relief. Because the same state law threatens all class members in the same way, and because the requested injunction would provide uniform relief, Rule 23(b)(2) is satisfied.

**CONCLUSION**

The Entry Class and the Reentry Class satisfy the requirements of Rule 23. Plaintiffs request that this Court grant class certification to allow the provision of relief for the classes. Given the emergency nature of this relief, Plaintiffs request that, should the court require additional time to consider the class certification, it grant provisional class certification in connection with a temporary restraining order or preliminary injunction.

Date: April 2, 2025

Respectfully submitted,

*/s/ Amy Godshall*

| | |
|---|---|
| Cody Wofsy* | Amy Godshall (FL Bar No. 1049803) |
| Spencer Amdur* | Daniel B. Tilley (FL Bar No. 102882) |
| Hannah Steinberg* | Amien Kacou (FL Bar No. 44302) |
| Oscar Sarabia Roman* | ACLU FOUNDATION OF FLORIDA, |
| AMERICAN CIVIL LIBERTIES | INC. |
| UNION FOUNDATION | 4343 West Flagler Street, Suite 400 |
| IMMIGRANTS' RIGHTS PROJECT | Miami, FL 33134 |
| 425 California Street, Suite 700 | (786) 363-2700 |
| San Francisco, CA 94104 | agodshall@aclufl.org |
| T: (415) 343-0770 | dtilley@aclufl.org |
| cwofsy@aclu.org | akacou@aclufl.org |
| samdur@aclu.org | |
| hsteinberg@aclu.org | Paul R. Chavez (FL Bar No. 1021395) |
| osarabia@aclu.org | Anne Janet Hernandez Anderson |
| | (FL Bar No. 0018092) |
| Omar Jadwat* | Evelyn Wiese (CA Bar No. 338419)* |
| Grace Choi* | Christina Isabel LaRocca (FL Bar No. |
| AMERICAN CIVIL LIBERTIES | 1025528) |
| UNION FOUNDATION | AMERICANS FOR IMMIGRANT |
| IMMIGRANTS' RIGHTS PROJECT | JUSTICE |
| 125 Broad St., 18th Floor | 6355 NW 36 Street, Suite 309 |
| New York, NY 10004 | Miami, FL 33166 |
| T: (212) 549-2660 | (305) 576-6273 |
| ojadwat@aclu.org | pchavez@aijustice.org |
| gchoi@aclu.org | ajhernandez@aijustice.org |
| | ewiese@aijustice.org |
| | clarocca@aijustice.org |

*\* Motion pro hac vice forthcoming*

*Attorneys for Plaintiffs*

15