**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-21524-CV-WILLIAMS**

FLORIDA IMMIGRANT COALITION, *et al.*,

    Plaintiffs,

v.

JAMES UTHMEIER, *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion for a Temporary Restraining Order ("***TRO***") and Preliminary Injunction (DE 4) ("***Motion***").[1] For the reasons set forth below, the Motion (DE 4) is **GRANTED**.

### I. BACKGROUND

On February 13, 2025, Florida Senate Bill 4-C ("***S.B. 4-C***") went into effect. S.B. 4-C creates two new state law offenses: 'Illegal Entry by Adult Unauthorized Alien into This State' and 'Illegal Reentry of an Adult Unauthorized Alien.' Fla. Stat. §§ 811.102–.103. Section 811.102(1) prohibits any "unauthorized alien who is 18 years of age or older"[2] from "knowingly enter[ing] or attempt[ing] to enter" Florida "after entering the United

---

[1] Plaintiffs have personally served Defendants James Uthmeier, Nicholas B. Cox, and Jack Campbell. (DE 23 at 1.) Plaintiffs have conferred with Arthur I. Jacobs, who purports to represent all state attorney Defendants, and sent him copies of the Complaint, Motion for TRO, and all other filings thus far via email. (*Id.*) This, along with the facts contained within the declarations attached to Plaintiffs' Class Action Complaint (DE 1), fulfills the procedural requirements for issuance of a TRO. Fed. R. Civ. P. 65(b)(1).

[2] An "unauthorized alien" is defined as anyone unlawfully present in the United States under the Immigration and Nationality Act and any other applicable federal law. Fla. Stat. § 811.101(2) (referring to section 908.111).

States by eluding or avoiding examination or inspection by immigration officers" ("*illegal entry*"). A first conviction for illegal entry is a first-degree misdemeanor, requiring a mandatory minimum sentence of nine months' imprisonment, while subsequent convictions are felonies with escalating mandatory minimum sentences. Fla. Stat. § 811.102(1)–(3). Under subsection 811.103(1), an adult "unauthorized alien" commits a third-degree felony, if they "enter[], attempt[] to enter, or [are] at any time found in" Florida after "having been denied admission, excluded, deported, or removed or having departed the United States during the time an order of exclusion, deportation, or removal is outstanding" ("*illegal reentry*"). Importantly, the scheme requires courts to presume that "no conditions of release can reasonably assure the presence" of any individual arrested under either provision and to order their detention without bond pending disposition of the case. Fla. Stat. §§ 811.102(5), 811.103(4).

On April 2, 2025, Plaintiffs filed a Class Action Complaint (DE 1) ("*Complaint*"), seeking injunctive relief barring enforcement of S.B. 4-C by state and local officials and a declaration that the law violates the United States Constitution's Supremacy and Commerce Clauses. (DE 1 at 17.) Plaintiffs include individuals V.V. and Y.M. (collectively ("*Individual Plaintiffs*"), who allege they are at risk of arrest and prosecution under the statute, and two grassroots membership organizations, Farmworker Association of Florida, Inc. ("*FWAF*") and Florida Immigrant Coalition ("*FLIC*") (collectively "*Organizational Plaintiffs*"), which support members who are similarly at risk.[3] (*Id.* ¶¶ 8,

---

[3] Plaintiffs filed a Motion for Class Certification (DE 5), seeking certification of two classes with individuals potentially subject to the "illegal entry" and "illegal reentry" provisions of S.B. 4-C. (DE 5 at 1.) That motion is pending before the Court.

11–24, 26–28.)  On the same day, Plaintiffs sought a TRO pausing enforcement of S.B. 4-C pending the Court's consideration of their request for a preliminary injunction. (DE 4.)

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure authorizes courts to grant a preliminary injunction or temporary restraining order before final judgment in limited circumstances. The purpose of this injunctive relief is to "preserve the status quo until the [Court] renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). The primary difference between a preliminary injunction and TRO is that a TRO "may be entered before the defendant has an adequate opportunity to respond." *Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*, No. 20-cv-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020). As such, the duration of a TRO is limited to fourteen days, absent an extension for good cause. Fed. R. Civ. P. 65(b)(2).

To merit a TRO, as with a preliminary injunction, Plaintiffs must show:

> (1) a substantial likelihood of success on the merits; (2) that the [TRO] is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the [TRO] would cause the other litigant; and (4) that the [TRO] would not be averse to the public interest.

*Gissendaner v. Comm'r, Ga. Dept. of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (quoting *Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014)); *see also Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010) (explaining that "the four criteria for obtaining a preliminary injunction are identical to those for issuance of a temporary restraining order"). Plaintiffs bear "the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

## III. DISCUSSION

As a preliminary matter, the Court must address Plaintiffs' standing to seek their requested relief. *See Farmworker Ass'n of Fla. v. Moody*, 734 F. Supp. 3d 1311, 1321 (S.D. Fla. 2024) (deciding the "threshold matter" of the plaintiffs' standing before reaching the merits of their preliminary injunction request). Next, the Court will discuss why the four factors relevant to injunctive relief favor granting a TRO in this case.

### A. Plaintiffs have standing to bring this action.

Plaintiffs who invoke "the jurisdiction of a federal court bear[] the burden to show '(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003)).

"Injury in fact reflects the statutory requirement that a person be adversely affected or aggrieved, and it serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014) (quoting *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973)). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

1. *Individual Plaintiffs*

V.V. is a FWAF member who was previously deported and last reentered the United States without inspection in 2014. (DE 1 ¶ 16.) She now lives in Florida with her husband and her four U.S.-citizen children. (*Id.*) Y.M. is a FLIC member living in Florida, who entered the United States without inspection more than twenty years ago. (*Id.* ¶¶ 26–27.) Y.M. leaves Florida twice a year with her minor U.S.-citizen son who has a disability. (*Id.* ¶¶ 26–27.) Individual Plaintiffs argue that they are at imminent risk of arrest and detention as they are subject to prosecution and imprisonment under the language of S.B. 4-C. (*Id.* ¶ 59.) "When the harm alleged is prospective, as it was here, a plaintiff can satisfy the injury-in-fact requirement by showing imminent harm. While the threatened future injury cannot be merely hypothetical or conjectural, probabilistic harm is enough." *Arcia*, 772 F.3d at 1341 (citations omitted). As law enforcement agencies in Florida have already made several arrests pursuant to S.B. 4-C, the Court finds that there is a realistic probability that Individual Plaintiffs could be subject to arrest and prosecution under S.B. 4-C. It is irrelevant that they have not yet been arrested or prosecuted: "When an individual is subject to [the threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Consequently, Individual Plaintiffs have sufficiently established an injury-in-fact for standing purposes.

2. *Organizational Plaintiffs*

For the reasons discussed, *infra,* the Court finds that Individual Plaintiffs have standing. Therefore, it is unnecessary for the Court to engage in a full standing analysis of the claims made by Organizational Plaintiffs. *See Greater Birmingham Ministries v.*

*Sec'y of State for State of Alabama*, 992 F.3d 1299, 1317 (11th Cir. 2021); *see also Glassroth v. Moore*, 335 F.3d 1282, 1293 (11th Cir. 2003) ("Having concluded that those two plaintiffs have standing, we are not required to decide whether the other plaintiff . . . has standing."). *But see Farmworker Ass'n of Fla.*, 734 F. Supp. 3d at 1328 (finding farmworker association had organizational standing to challenge alien transportation law because the law's enforcement would impair the organization's ability to engage in its projects and divert resources to counteracting the law's effects).

### 3. Traceability & Redressability

Finally, "[w]hen traceability and redressability are at stake, the key questions are who caused the injury and how it can be remedied." *City of S. Miami v. Governor*, 65 F.4th 631, 640 (11th Cir. 2023). Here, the injury is arrest and prosecution under S.B. 4-C. Plaintiffs contend that Defendant Attorney General of Florida and the remaining Defendants are empowered to enforce S.B. 4-C. (DE 1 ¶ 30–32.) Therefore, at this juncture, Plaintiffs' threatened arrest and prosecution are traceable to Defendants based on their general authority to enforce and bring prosecutions under the criminal laws of Florida. *See Georgia Latino All. for Human Rts. v. Governor of Georgia*, 691 F.3d 1250, 1260 (11th Cir. 2012) ("**GLAHR**") (plaintiffs' risk of arrest and prosecution under criminal law was traceable to passage of the bill and redressable by an injunction).

To determine redressability, the Court focuses "on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (emphasis in original). "[I]t must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly." *Lewis v. Governor of Alabama*, 944 F.3d

1287, 1301 (11th Cir. 2019) (citations omitted). Defendants are state officials tasked with the enforcement of S.B. 4-C and empowered to prosecute individuals who do not comply with the law. As Defendants' authority to enforce S.B. 4-C causes Plaintiffs' injuries, enjoining Defendants from doing so will directly redress those injuries. Put another way, Plaintiffs' requested relief—an order declaring the entry and reentry provisions of S.B. 4-C to be unlawful and enjoining Defendants' from enforcing those provisions—will directly redress Plaintiffs' reasonable fear that the challenged law will be enforced against them or their members by Defendants. Given that Plaintiffs have standing, the Court will address the remainder of the factors governing their TRO request.

### B. Plaintiffs have fulfilled the criteria for issuance of a TRO

In order to obtain a TRO, Plaintiffs must establish the four prerequisites noted *supra* p. 3. The Court addresses each.

#### 1. Likelihood of success on the merits

Plaintiffs argue S.B. 4-C violates the Supremacy Clause by creating a statutory scheme in an area exclusively reserved for the federal government that conflicts with existing federal immigration law and its enforcement. (DE 4 at 5); *see* U.S. Const. art. VI (making federal law the "supreme Law of the Land"). Plaintiffs further contend that S.B. 4-C runs afoul of the Commerce Clause's implicit limitation on states' power to restrict the interstate movement of people. (DE 4 at 14); *see* U.S. Const. art. I, § 8, cl. 3 (giving Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes"). The Court agrees that, at this early stage, Plaintiffs have shown they are likely to succeed on the merits.

### a. Supremacy Clause

States are preempted under the Supremacy Clause "from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (holding the field of alien registration is field preempted). In 1952, Congress passed the Immigration and Nationality Act ("**INA**"), 8 U.S.C. § 1101, *et seq.*, a comprehensive framework regulating the entry, presence, and removal of noncitizens. *See Patel v. Garland*, 596 U.S. 328, 331 (2022) ("Congress has comprehensively detailed the rules by which noncitizens may enter and live in the United States. When noncitizens violate those rules, Congress has provided procedures for their removal."); *GLAHR*, 691 F.3d at 1263–64 ("[T]he federal government has clearly expressed more than a 'peripheral concern' with the entry, movement, and residence of aliens within the United States . . . and the breadth of [the INA] illustrates an overwhelmingly dominant federal interest in the field.") (holding Georgia's statutes criminalizing transporting, moving, harboring, or inducing an illegal alien to enter the state were field preempted); *see also* 8 U.S.C. §§ 1325, 1326 (creating a federal statutory scheme criminalizing illegal entry and reentry into the United States). Thus, the federal government has exercised its "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394. As in the areas of alien registration and transportation, the INA's comprehensive regulation over noncitizen entry and reentry likely preempts any state regulation covering the field.

Provisions within S.B. 4-C that define illegal entry and reentry through reference to federal law,[4] or create affirmative defenses where the federal government has given

---

[4] *See supra* n.2.

an individual reprieve from deportation or removal,[5] do not save the statute. "Where Congress occupies an entire field . . . even complementary state regulation is impermissible." *Arizona*, 567 U.S. at 401; *see also United States v. Texas*, 97 F.4th 268, 286 (5th Cir. 2024) (dismissing Texas's argument that illegal reentry provisions which "mirror" the federal equivalent are permissible as "ignor[ing] the basic premise of field preemption—that States may not enter, in any respect, an area the Federal Government has reserved for itself.") (internal quotations omitted).

Moreover, "state laws are preempted when they conflict with federal law." *Arizona*, 567 U.S. at 399. This includes when compliance with both laws is a "physical impossibility[,]" but also when a challenged law simply impedes "the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (first quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963) and then quoting *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941)). For example, even when Arizona imposed a state law penalty for conduct already proscribed by the federal government, willful failure to complete or carry an alien registration card, the Supreme Court concluded that "[permitting] the State to impose its own penalties for the federal offenses here would conflict with the careful framework Congress adopted." *Arizona*, 567 U.S. at 402. The state could prosecute violations even when federal officials determined they would "frustrate federal policies." *Id.*; *see also GLAHR*, 691 F.3d at 1265 ("By confining the prosecution of federal immigration crimes to federal court, Congress limited the power to pursue those cases to the appropriate United States Attorney."). Further, inconsistencies between penalties under the state and federal schemes create a conflict. *Arizona*, 567

---

[5] *See* Fla. Stat. § 811.102(4).

U.S. at 402–03 (state laws precluding a sentence of probation conflicted with federal laws allowing probation for the same conduct).

S.B. 4-C appears to suffer from the same infirmities as the alien registration law struck down in *Arizona*. First, it gives state officials authority to prosecute illegal entry or reentry in cases where federal actors may choose not to. Even when federal officials choose to commence dual prosecutions under both laws, S.B. C-4's mandatory detention provision limits federal law enforcement discretion to recommend pre-trial release and obstructs federal courts' ability to conduct proceedings requiring defendants' presence. Additionally, S.B. 4-C requires mandatory prison sentences for state law violations where the INA allows for a fine or probation for the equivalent federal crime. *Compare* Fla. Stat. § 811.102 (mandating a minimum of a nine-month prison sentence for a first illegal entry conviction), *with* 8 U.S.C. § 1325(a) (authorizing a maximum prison sentence of six months but not mandating any incarceration upon a first improper entry).

Finally, across the country, courts have concluded that nearly identical illegal entry and reentry laws are likely preempted on both grounds by federal immigration law governing noncitizen entry. *See e.g., United States v. Iowa*, 126 F.4th 1334, 1346 (8th Cir. 2025) (affirming preliminary injunction against Iowa's illegal entry and reentry law, after holding the law conflicts "with federal law because it creates a parallel scheme of enforcement for immigration law."); *Texas*, 97 F.4th at 287–88 (holding Texas had not shown its illegal entry scheme was not both field and conflict preempted by federal law); *United States v. Oklahoma*, 739 F. Supp. 3d 985, 999 (W.D. Okla. 2024) ("[T]here is strong support for the conclusion that Congress has legislated so comprehensively in the field of noncitizen entry and reentry that it left no room for supplementary state

legislation.") (internal quotations omitted), *appeal filed*, No. 24-6144 (10th Cir. 2024); Ex Parte Temporary Restraining Order, *Idaho Org. of Res. Councils Inc. v. Labrador*, No. 25-cv-00178- AKB (D. Idaho Mar. 27, 2025) (issuing TRO against similar Idaho law), ECF No. 16.

In short, "[f]or nearly 150 years, the Supreme Court has held that the power to control immigration—the entry, admission, and removal of noncitizens—is *exclusively* a federal power." *Texas*, 97 F.4th at 278–79. Plaintiffs persuasively posit that S.B. 4-C unlawfully encroaches upon that power.

### b. Commerce Clause

Plaintiffs also argue S.B. 4-C violates the Commerce Clause, which gives Congress power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl 3; *see* (DE 4 at 14). That power "encompasses the movement in interstate commerce of persons as well as commodities." *United States v. Guest*, 383 U.S. 745, 758–59 (1966); *see also Edwards v. California*, 314 U.S. 160, 172 (1941) ("[I]t is settled beyond question that the transportation of persons is 'commerce', within the meaning of the" Commerce Clause). Implicit in Congress's power to regulate interstate commerce is an "implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1243 (11th Cir. 2012). When a scheme "directly regulates or discriminates against interstate commerce" it will

generally be "struck down . . . without further inquiry." *Bainbridge v. Turner*, 311 F.3d 1104, 1109 (11th Cir. 2002).[6]

Here, Plaintiffs assert that S.B. C-4 facially discriminates against interstate commerce by criminalizing entry across Florida's border only by certain noncitizens. (DE 4 at 14–15.) Although the Court has determined that a TRO is appropriate based on Plaintiffs' preemption argument, it should be noted that courts nationwide have determined similar statutes violate the dormant Commerce Clause on this basis. *E.g.*, *Edwards,* 314 U.S. at 174, 177 (striking down California's ban on transportation of indigent nonresidents into the state because it had the "plain and sole function" of restricting interstate commerce); *United States v. Texas*, 719 F. Supp. 3d 640, 679 (W.D. Tex. 2024) (holding "[o]n its face, [Texas' illegal entry law] discriminates against foreign commerce," so violates the dormant Commerce Clause). Therefore, at this juncture, Plaintiffs' Commerce Clause analysis also supports their request for a TRO.

**2. Irreparable injury**

Plaintiffs argue that, absent an immediate pause to enforcement of S.B. 4-C, they will suffer irreparable harm by being placed at risk of arrest, prosecution, and detention under an unconstitutional state statute. (DE 4 at 16.) In their Supplemental Response, Plaintiffs note several reports documenting recent arrests pursuant to S.B. 4-C. (DE 23 at 2.) One news source quotes the Brevard County Sheriff Wayne Ivey stating his office was "seeing cases like this six to seven times a week." Space Coast Daily, First Arrest Made Under

---

[6] A law may be excepted from this nearly per se rule if it is shown to "advance a local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* (quoting *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 278 (1988)). But given that S.B. 4-C basically duplicates existing federal law, it is unlikely Florida can make a showing that its state law version is necessary.

Florida's New Immigration Law Happens in Brevard County (Mar. 13, 2025), https://perma.cc/D3DQ-UNKA. As discussed, *supra* pp. 5–6, the individual Plaintiffs' declarations confirm they are at risk of arrest and prosecution given ongoing enforcement of the S.B. 4-C. Likewise, the Organizational Plaintiffs' declarations support the conclusion that a subset of their members may be susceptible to the law's enforcement. (DE 4-2 at 3–4; DE 4-3 at 3–4) (attesting to the many FWAF and FLIC members without documentation who regularly travel between Florida and other states). Because "Plaintiffs are under the threat of state prosecution for crimes that conflict with federal law," a TRO is necessary to mitigate the risk of irreparable harm from S.B. 4-C. *GLAHR*, 691 F.3d at 1269.

### 3. Balance of equities and public interest

For similar reasons, the balance of equities and the public interest favors granting a TRO. "These two factors merge when, as here, the government is the opposing party." *Farmworker Ass'n of Fla.,* 734 F. Supp. 3d at 1342. The harm to Defendants from briefly suspending enforcement of S.B. 4-C is minimal, especially given that similar federal provisions already exist and may be enforced against appropriate persons in Florida. More importantly, the Court has already determined Plaintiffs are likely to succeed on the merits, and Defendants have "no legitimate interest in enforcing an unconstitutional law." *Honefund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024) (internal quotations omitted).

### IV. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for a Temporary Restraining Order (DE 4) is **GRANTED**.

2. The Court **ENTERS** a TRO prohibiting Defendants and their officers, agents, employees, attorneys, and any person who are in active concert or participation with them from enforcing SB 4-C, codified as Florida Statutes sections 811.102–.103. This TRO shall last **fourteen (14) days** from the date of this Order.

3. A Preliminary Injunction Hearing is **SET** for <u>**April 18, 2025 at 10:00 a.m.**</u> before the Honorable Kathleen M. Williams in Room 11-3 of the Wilkie D. Ferguson, Jr. United States Courthouse, located at 400 North Miami Avenue in Miami, Florida.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this <u>4th</u> day of April, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE