UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

FLORIDA IMMIGRANT COALITION, *et al.*,

    *Plaintiffs*,

v.

JAMES UTHMEIER, in his official capacity as Attorney General for the State of Florida, *et al.*,

    *Defendants*.

No. 1:25-cv-21524-KMW

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

Plaintiffs assert that aliens who violate federal law are constitutionally entitled to enter and remain in Florida, no matter the State's wishes. They challenge SB 4-C, Florida's law restricting certain illegal aliens from entering or being found within the State, and they seek class certification for two classes of individuals who are "potentially" subject to and "may" violate the law. DE5 at 1. Yet Plaintiffs fail to show that any proposed class representative has standing; they propose classes that are unascertainable and inadequately defined; and the many questions this Court would need to answer to assess the class's members defeat both the commonality and typicality requirements of Rule 23(a). The Court should decline to certify either class.

**STATEMENT OF FACTS**

Plaintiffs are two individuals seeking to proceed anonymously—YM and VV—and two nonprofit organizations headquartered in Florida—the Florida Immigrant Coalition (FIC) and the Farmworker Association of Florida, Inc. (Farmworker Association). DE1 ¶¶ 8–29.

YM and VV "entered [the United States] without inspection" and currently reside in Florida. DE4-5 ¶¶ 2, 5; DE4-4 ¶¶ 2, 5–6. VV has reentered the United States after deportation, and she has not sought "adjustment of status" since. DE4-4 ¶¶ 6–7. Both Plaintiffs allege some vague desire to leave Florida and return: YM "generally leave[s] Florida for family vacation approximately twice a year" and "plan[s] to continue this travel going forward," DE4-5 ¶ 7, and VV "traveled to New Jersey during harvesting season to pick blueberries, and" she wants "to do so again during the next season," DE4-4 ¶ 8.

FIC has individual and organizational members (including the Farmworker Association and YM). DE4-3 ¶¶ 3, 15. The Farmworker Association has individual members, including VV.

DE4-2 ¶¶ 4, 21. The Farmworker Association also has a member, WA, who is not a plaintiff but who claims to have "entered the United States without inspection," and "generally travels outside of Florida on occasion for holidays." DE4-2 ¶ 20. Both organizations allege that they have individual members with "diverse immigration histories." DE4-3 ¶ 14; *see also* DE4-2 ¶ 17.

On April 2, 2025, Plaintiffs sued Florida's Attorney General, the statewide prosecutor, and Florida's 20 state attorneys to enjoin any enforcement of SB 4-C. DE1.

Plaintiffs seek to certify two classes to challenge Florida's law, each comprised of "individuals":

> (1) The Entry Class: "any person not a citizen or national of the United States who may now or in the future enter or attempt to enter the [S]tate of Florida after entering the United States by eluding or avoiding examination or inspection by immigration officers."
>
> (2) The Reentry Class: "any person not a citizen or national of the United States who may enter, attempt to enter, or be found in the [S]tate of Florida after the person has been denied admission to or excluded, deported, or removed from the United States; or has departed from the United States while an order of exclusion, deportation, or removal was outstanding."

DE 5 at 1–2.

They seek to certify a class to challenge SB 4-C as preempted by federal law and violating the Dormant Commerce Clause. DE1 ¶ 68–77. Plaintiffs moved for a temporary restraining order and a preliminary injunction. DE4. In granting the restraining order on April 4, the Court noted that the motion for class certification is still "pending." DE28 at 2 n.3.

## LEGAL STANDARD

"[T]he awesome power of a district court [to certify a class action] must be 'exercised within the framework of [R]ule 23.'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co*, 553 U.S. 639 (2008). For each class seeking "injunctive relief," Plaintiffs must show that the class meets the requirements of numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). They must also show that the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole. *See* Fed. R. Civ. P. 23(b)(2). Determining whether to certify a class requires "rigorous

analysis," because, "[a]ll else being equal, the presumption is against class certification." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016). And that rigorous analysis may require courts "to probe behind the pleadings" to decide certification, and such "analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013). "Although a court should not determine the merits of a claim at the class certification stage, it is appropriate to consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009) (quotations omitted).

Moreover, "[t]he party *seeking* class certification has the burden of proof." *Electrolux*, 817 F.3d at 1233. More than "a mere pleading standard," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), Plaintiffs must provide "evidentiary proof" showing they satisfy the requirements of Rule 23, *Comcast*, 569 U.S. at 33. If a district court has doubts about whether Plaintiffs carried their burden, "the party with the burden of proof loses." *Electrolux*, 817 F.3d at 1233 (citation omitted). A district court "misstate[s] the law" if it "accepts the allegations in the complaint as true" and "draws all inferences and presents all evidence in the light most favorable to Plaintiffs[.]" *Id.* at 1234 (quotations omitted).

## ARGUMENT

I. **THE PLAINTIFFS LACK STANDING.**

1. "[A]ny analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). Plaintiffs are required to demonstrate standing for "each claim" they bring against "each defendant" and for "each form of relief" they seek. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quotations omitted). That means for class actions, a named plaintiff must have standing against a named defendant, and there must be a plaintiff with standing that can represent each class. *See Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1220 n.4 (S.D. Fla. 2018) ("[T]he law in the Eleventh Circuit requires that 'at least one named class representative has Article III standing to raise each class subclaim.'" (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000))).

A plaintiff establishes Article III standing if he demonstrates injury, traceability, and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and *actual or imminent, not conjectural or hypothetical*." *Id.* at 339 (quotations

omitted) (emphasis added). When a party seeks injunctive relief, it must show that "the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis removed). For class actions, a named plaintiff must allege that he will suffer his own injury, not an "injury [that will be] suffered by other, unidentified members of the class to which the plaintiff belongs and which he purports to represent." *Griffin*, 823 F.2d at 1483. To demonstrate traceability and redressability as to a particular defendant, a plaintiff "must show, at the very least, that the [specific] official has the authority to enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual." *Support Working Animals v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). And even after showing Article III standing, an organization must also show third-party standing, which "allows a narrow class of litigants to assert the legal rights of others." *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 393 n.5 (2024).

The Plaintiffs lack standing against all Defendants. As explained in the Defendants' response to the motion for preliminary injunction, no Plaintiff has standing. *See* DE40 at 5–11. The individual, unnamed Plaintiffs lack standing because they have failed to allege sufficient facts to know whether they are presently engaging, or will imminently engage, in conduct that violates SB 4-C. At best, they allege "conjectural or hypothetical" travel plans. *Spokeo, Inc.*, 578 U.S. at 338; *see also* DE4–5 ¶ 7 (YM giving undefined "plans" to possibly travel "going forward"); DE4-4 ¶ 8 (VV "intends" to travel to New Jersey during the next blueberry harvesting season); DE1 ¶ 15 (WA "generally travels outside of Florida on occasion for holidays"). Nor do they have any legally protected interest in vindicating illegal, unrelated conduct. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc). In addition, a plaintiff lacks injury if he has no "legally protected interest" in the conduct he seeks to vindicate. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); DE40 at 6.

As for the organizational plaintiffs, they are not members of either class because Plaintiffs' proposed classes "include" only "*individuals,*" DE5 at 1 (emphasis added), so it does not matter whether they have standing. But even if Plaintiffs could solve that problem, the organizations too lack standing. Their associational standing hinges on the individual Plaintiffs who, again, lack standing, and their organizational standing rises or falls on nothing more than their bald assertion that they will have to spend money to combat the effects of SB 4-C. DE 4-3 ¶ 20 (SB 4-C "will force [FLIC member organizations] to divert significant resources from existing programs" and

"strain already scarce resources"); *see also City of South Miami v. Governor of Fla.*, 65 F.4th 631, 639 (11th Cir. 2023) (an organization cannot "spend its way into standing"). And even if those organizations could show Article III standing, they still have not met the requirements of third-party standing to raise the rights of others—they show no hindrance to people affected by SB 4-C from raising their own rights. *See* DE40 at 8.

Because no "named class representative has Article III standing," the Court should deny certification. *Point Blank Enters.*, 347 F. Supp. 3d at 1272.

2. At the least, Plaintiffs have not shown standing as to *all* state attorneys. Recall, to represent a class against every state attorney, Plaintiffs must offer one named plaintiff with standing to sue each state attorney. *Support Working Animals*, 8 F.4th at 1201. To do so, they must show that each state attorney will have "authority to enforce" SB 4-C against a named plaintiff. *See id*. And because state attorneys may prosecute only crimes occurring within their territorial jurisdictions, Fla. Stat. § 27.02(1), Plaintiffs must offer facts showing that the SB 4-C violation will occur within each state attorney's respective "judicial circuit." *Id.* No Plaintiff has come close to meeting that heavy factual burden.

Start with YM and WA. Because they do not allege to have been "denied admission, excluded, deported, or removed," or "departed the United States during the time an order of exclusion, deportation, or removal is outstanding," they cannot violate the reentry provision, and thus may challenge only the entry provision. *See* Fla. Stat. § 811.103(1). A person violates the entry provision only in the judicial circuit in which they "enter[] or attempt[] to enter this state." Fla. Stat. § 811.102(1). Yet neither YM nor WA has offered facts identifying which judicial circuit she plans to enter Florida through. Both individuals have offered only vague allegations that they "generally travel[] outside of Florida on occasion for holidays," sometimes to Georgia. DE1 ¶ 15; *see* DE 1 ¶ 28. But those allegations leave open whether each individual will travel through, say, the First Judicial Circuit up in the Panhandle, the Fourth Judicial Circuit over on the East Coast, or even the Eleventh Judicial Circuit down in Miami-Dade. Fla. Stat. § 26.021. And without that information, it is impossible to know which state attorney could prosecute those individuals, and thus which state official would have "authority to enforce" the entry provision. *Support Working Animals*, 8 F.4th at 1201.

On to VV. Because VV alleges that she has been deported before, she is potentially subject to both the entry and reentry provisions. *See* Fla. Stat. § 811.102(1); 811.103(1); DE4-4 ¶ 5. She

5

lives in Immokalee, Florida, and states she "frequently travels outside of Florida for her work." DE5 at 4. She intends to travel to New Jersey "during the next season" to pick blueberries. DE4-4 ¶ 8. For the entry aspects of those laws, she suffers the same flaw as VM and WA: She has offered no specific facts identifying where she will enter the State. And as for the "presence" aspect of the reentry provision, the only specific location in Florida where she has alleged her "presence" is her home in Immokalee. DE5 at 4. That allegation would, at best, give jurisdiction only to State Attorney Amira Fox, who enforces the criminal laws in the Twentieth Judicial Circuit. It does not suffice to establish VV's standing to represent a class against the remaining 19 state attorneys.

And last, as to the organizational plaintiffs, they also have not established standing to bring this suit against the state attorneys. They fail to establish standing generally—either associational or organizational—as explained above. But at the least, they cannot sue *all* of the state attorneys. Indeed, FIC offers no allegations whatsoever about where it operates in the State, so it has not shown than any state attorney will have "authority to enforce" SB 4-C against it. *See Support Working Animals*, 8 F.4th at 1201. And Farmworkers Association shares only that it is headquartered in Apopka and has offices in Homestead, Fellsmere, Immokalee, and Pierson,[1] *see* DE4–2 ¶ 3, so it would at best have standing against only those five state attorneys.

## II.    THE PLAINTIFFS FAILED TO PROPOSE CLASSES THAT ARE ADEQUATELY DEFINED AND ASCERTAINABLE.

Class certification is inappropriate even if some or all Plaintiffs have standing. Before certifying a class, courts must ensure that the class "not only exist[s]" but is "susceptible of precise definition." 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997). Put another way, "[t]here can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *Id.* Thus, before even "consider[ing] whether the requirements of Rule 23(a) are satisfied," a district court must find that the proposed class is "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quotations omitted). A class definition meets this requirement where it "specif[ies] a particular group harmed during a particular time period via a particular manner," thereby permitting the court to "utilize objective

---

[1] The State Attorneys for Apopka is Monique H. Worrell (Ninth Judicial Circuit), for Homestead it is Katherine Fernandez Rundle (Eleventh Judicial Circuit), for Fellsmere it is Thomas Bakkedahl (Nineteenth Judicial Circuit), for Immokalee it is Amira Fox (Twentieth Judicial Circuit), and for Pierson it is John Durrett (Third Judicial Circuit).

indicia to determine who is and is not part of the class." *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 300 (S.D. Ala. 2006).

Here, the Plaintiffs' proposed definitions for both classes are amorphous and imprecise. They seek to open the classes to persons who are merely "potentially" subject to SB 4-C and who "may" enter, attempt to enter, or be found in the State. DE5 at 1–2. They do not even attempt to define a "particular time period" during which harms will occur. *Fisher*, 238 F.R.D. at 301. Nor do they account for the reality that many class members may have different immigration histories, which may qualify them for affirmative defenses under SB 4-C and eliminate the possibility of injury in fact. *See generally* DE5 at 1–2. Thus, the proposed class's very definition ensures that "many [class members], even a majority, [will] not have Article III standing." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).

Even more, a "class definition" is too broad when it does not "match Plaintiffs' theory of liability." *Point Blank Enters.*, 481 F. Supp. 3d at 1274; *see also, e.g.*, *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (district court correctly determined legal standard that plaintiff need not prove class members relied on defendant's deceptive or unfair trade practice, but incorrectly defined class too broadly as "all persons" in the state who "individually relied" on defendant's false claims); *Cordoba*, 942 F.3d at 1276–77 (vacating district court's certification order because it defined class to include persons who never asked to be placed on do-not-call list and who therefore could have never suffered an injury under plaintiff's legal theory that defendant failed to comply with telemarketing laws).

Plaintiffs' proposed class definitions fail that metric. A class that covers the massive group of individuals who are potentially subject to SB 4-C would not "match" their claim that Florida is harming the smaller group of individuals who are actually subject to SB 4-C. *Point Blank Enters.*, 481 F. Supp. 3d at 1274; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. The Judiciary's role is limited to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will immediately suffer, actual harm.") (quotation omitted).

Another tell-tale sign of an overbroad class definition is when the facts of a case require a court to conduct individualized inquiries to determine who is or is not part of that class. When this happens, the court should not certify the class. *See Perez v. Metabolic Intern. Inc.*, 218 F.R.D. 262,

7

269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where *the number of individualized determinations* required to determine class membership becomes too administratively difficult.") (emphasis added); *Cordoba*, 942 F.3d at 1264 ("Determining whether each class member asked [the company] to stop [telemarketing] call[s] requires an individualized inquiry[.]"); *Sunshine Children's Learning Ctr., LLC v. Waste Connections of Fla., Inc.*, 671 F. Supp. 3d 1366, 1377–78 (S.D. Fla. 2023) (plaintiff's proposed class was not clearly defined because the question of material breach of contract must be determined individually for each class member).

Similarly, Plaintiffs would require the Court to perform the individualized inquiry of whether each class member is actually subject to SB 4-C. To determine who is and is not in the various classes, the Court will have to look to at whether the person is over the age of 18, whether a specific individual has "elud[ed] or avoid[ed] examination or inspection by immigration officers," whether "an order of exclusion, deportation, or removal was outstanding" at the time of the individual's reentry into the country, DE5 at 1–2, whether the Attorney General consented to an individual's reapplication for admission, or if such consent was not required, *see* Fla. Stat. § 811.103(1), and any other of the various affirmative defenses covered by SB 4-C. That level of individualized inquiry makes class certification an ill fit.

**III.   THE PLAINTIFFS FAIL TO SHOW COMMONALITY AND TYPICALITY IN THE CLASSES.**

The foregoing definitional problem leads to yet another class problem: commonality. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) "[A]ny competently crafted class complaint literally raises common questions." *Dukes*, 564 U.S. at 349 (quotations omitted). But "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

Plaintiffs cannot meet that standard. They seek to certify classes that include a variety of persons who are "potentially" subject to SB 4-C and who "may" violate the law. Yet to resolve whether any class member comes within SB 4-C, this Court would need to answer a myriad of questions:

- Has the federal government granted the individual lawful presence or discretionary relief that authorizes the person to remain in the United States temporarily or permanently?

- Is the individual the beneficiary of an approved I-130 petition (for alien relative) or I-140 petition (for alien worker)?[2]
- Is the individual a victim of battery or extreme cruelty by a spouse or family member under the Violence Against Women Act?[3]
- Can the individual demonstrate extreme hardship to themselves or their family such that they qualify for an Extreme Hardship Waiver?[4]
- Is the individual subject to relief under the Cuban Adjustment Act of 1966?
- Does the individual's entry into the United States constitute a violation of 8 U.S.C. § 1325(a)?
- Is the individual's release required by any provision of the Florida Constitution?
- Is the individual's release required by any provision of the U.S. Constitution?
- Is the class member over the age of 18?

*See* Fla. Stat. § 811.102(4), (5).

Those discretionary determinations—relating to all sorts of complex federal law questions—make it impossible to know which people this Court will benefit from any "common answers" it may provide. *Sunshine*, 671 F. Supp. 3d at 1378. Put differently, because this class is so diverse, no common answer will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

For similar reasons, Plaintiffs also have not established typicality. "Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus. Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). Plaintiffs, however, cannot show that any representative is typical of all individuals in the class when so many class members "may" "potentially" qualify for one or more of the numerous affirmative defenses the statute makes available to them.

## CONCLUSION

The Court should deny class certification.

---

[2] *See* 8 U.S.C. § 1151(a)(1), (2).

[3] *See* 8 U.S.C. § 1255(a).

[4] *See* 8 U.S.C. § 1182(i).

9

Respectfully submitted on April 16, 2025.

JAMES UTHMEIER
  *Attorney General*

/s/ *Christine Pratt*_____
JEFFREY P. DESOUSA (FBN 110951)
  *Acting Solicitor General*
DAVID M. COSTELLO (FBN 1004952)
  *Chief Deputy Solicitor General*
ROBERT S. SCHENCK (FBN 1044532)
CHRISTINE PRATT (FBN 100351)
  *Assistant Solicitors General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*david.costello@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on April 16, 2025, to all counsel of record.

/s/ *Christine Pratt*
Assistant Solicitor General