UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| FLORIDA IMMIGRANT COALITION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JAMES UTHMEIER, in his official capacity as the Attorney General of the State of Florida, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-21524-KMW |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

S.B. 4C's illegal entry and reentry provisions are clearly unconstitutional. Defendants attempt to sidestep the merits through threshold arguments that this Court and others have squarely rejected. *See* Dkt. 40 ("Opp."). On the merits, Defendants rely on dissenting opinions and long-superseded historical practices while disregarding the overwhelmingly dominant federal interest and comprehensive federal immigration framework now in place. And though they argue that S.B. 4C mirrors federal criminal law, Defendants ignore the mismatches between S.B. 4C and its federal counterparts. Throughout the opposition, Defendants insist on limiting every precedent to its facts so narrowly that virtually no application to a new context would ever be permitted. None of these arguments withstand scrutiny. This Court should provisionally certify the classes and preliminarily enjoin S.B. 4C's illegal entry and reentry provisions. *See Idaho Org. of Res. Councils Inc. v. Labrador*, No. 25-cv-00178 (D. Idaho Apr. 10, 2025) (Dkt. 43) (extending TRO and provisional class certification while court resolves preliminary injunction) (hereinafter "*Idaho*").

## I. DEFENDANTS' THRESHOLD ARGUMENTS FAIL

### A. All Plaintiffs Have Standing

All of the individual and organizational plaintiffs have clear standing. *See* Order 4-5 (Dkt. 28); *Farmworker Ass'n of Florida v. Moody*, 734 F. Supp. 3d 1311, 1332 (S.D. Fla. 2024) (similar plaintiffs had preenforcement standing) (hereinafter "*FWAF*").

The Individual Plaintiffs (1) have "an intention to engage in a course of conduct arguably affected with a constitutional interest," but (2) "proscribed by the statute," and (3) face a substantial "threat of future enforcement." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160-64 (2014). Defendants argue that Plaintiffs lack standing because they have not alleged "concrete plans" to travel in violation of S.B. 4C. Opp. 6. But the preenforcement standard "sets a low threshold and is quite forgiving to plaintiffs seeking . . . preenforcement review." *Cayuga Nation v. Tanner*, 824 F.3d 321, 323 (2d Cir. 2016); *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) ("forgiving standard"). This Court already recognized that Individual Plaintiffs' intent to leave and return to Florida is not hypothetical. *See* Order 5. Other courts have come to the same conclusion as to similarly situated plaintiffs. *FWAF*, 734 F. Supp. 3d at 1321-23 (finding standing based on declarations outlining travel plans). Y.M., who entered the United States without inspection, leaves Florida twice a year and "plan[s] to continue this travel." Y.M. Decl. ¶¶ 5-7 (Dkt. 4-5). Indeed, entering and leaving a state is a routine part of daily life for millions of people—not speculative conduct. And the illegal reentry provision of S.B. 4C does not require travel at all,

1

so V.V.—who was previously deported and now resides in Florida, V.V. Decl. ¶¶ 5-6 (Dkt. 4-4)—can be arrested merely for being "found in" Florida. Fla. Stat. 811.103(1). Finally, Defendants cite no case holding that a plaintiff must affirmatively disprove the applicability of every statutory defense to establish standing. Opp. 6. In any event, Plaintiffs do not satisfy any affirmative defense under S.B. 4C, and even if they did, Plaintiffs may still be arrested and detained under S.B. 4C.

Defendants' next argument—that Plaintiffs seek to vindicate their right to engage in unlawful conduct—is plainly wrong. Opp. 6 (citing *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) (en banc); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018)).[1] *Walker* involved a plaintiff seeking to engage in future criminal activity and had no claim of federal preemption. And *East Bay* denied standing only because plaintiffs invoked a right to cross the border unlawfully—not, as here, a right not to be detained and prosecuted under an unconstitutional law. Indeed, just like in all preemption cases and others, Plaintiffs are vindicating their own "constitutional interest" in the Constitution's principles of federalism. *Bond v. United States*, 564 U.S. 211, 220, 225-26 (2011); *see also Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) ("federalism principles" provided arguable constitutional interest for preenforcement standing). The Eleventh Circuit and courts in this district have found standing where plaintiffs challenge state immigration laws under the Supremacy Clause because they are subject to the statute. *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1257-62 (11th Cir. 2012) (hereinafter "*GLAHR*"); *FWAF*, 734 F. Supp. 3d at 1321-29.[2]

Defendants are also wrong to argue that Plaintiffs lack standing to sue all the state attorneys. Opp. 7. First, Plaintiffs seek to represent statewide classes, which provide the basis for uniform relief across Florida. *See* Dkt. 5 ("Class Mot."); *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring).[3] Second, Plaintiffs need not predict the precise county of future

---

[1] To the extent Defendants gesture at an unclean hands defense, Opp. 6, *FWAF* squarely rejected a nearly identical argument. 734 F. Supp. 3d at 1343; *see also infra*.
[2] Defendants also do not—and cannot—dispute that Plaintiffs face a credible threat of enforcement. As this Court has recognized, "law enforcement agencies in Florida have already made several arrests." Order 5. Defendants' continued and vigorous defense of S.B. 4C in this litigation also confirms that enforcement is likely. *See Wollschlaeger v. Governor*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc). These actions establish a credible threat of enforcement.
[3] Even if the Court does not make a final determination on class certification, it should grant provisional class certification and issue a preliminary injunction, as courts regularly do in these circumstances. *See* Class Mot. 18 (citing cases).

2

arrest. FLIC and FWAF have members throughout Florida.[4] V.V. is subject to arrest anywhere in the State under the reentry provision, Fla. Stat. § 811.103(1), and Individual Plaintiff Y.M.'s routine out-of-state travel and return triggers the entry provision in any county she reenters or travels through, *id.* § 811.102(1). Because Plaintiffs assert a facial preemption challenge, and each state attorney is charged with enforcing S.B. 4C within their jurisdictions, each is a proper defendant. *See GLAHR*, 691 F.3d at 1257-58 (plaintiffs subject to enforcement had standing to sue all state officials charged with applying the law); *FWAF*, 734 F. Supp. 3d at 1319, 1321-29 (same).

FLIC and FWAF both have clear standing as well.[5] Defendants contest the organizations' associational standing only by attacking the standing of its members. Opp. 7. Those arguments fail for the same reasons explained above, and both FLIC and FWAF satisfy the remaining requirements for associational standing—none of which Defendants dispute. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).[6]

### B. Plaintiffs Have a Cause of Action in Equity

Plaintiffs have a clear equitable cause of action. Defendants misread controlling law and advocate a radical departure from settled preemption doctrine that no court has adopted. Opp. 8-10. The Eleventh Circuit has confirmed that private plaintiffs may seek injunctive relief against preempted state immigration laws. *GLAHR*, 691 F.3d at 1262. Defendants argue that *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320 (2015), abrogated that holding, Opp. 9 n.9, but the Eleventh Circuit has since reaffirmed it. *See Newton v. Duke Energy Fla.*, 895 F.3d 1270, 1275-76 (11th Cir. 2018). And *Armstrong* itself recognized that courts may enjoin preempted state laws unless Congress has created an alternative enforcement scheme or the asserted duty is too vague for judicial administration. 575 U.S. at 326-29; *see Seminole Tribe v. Florida*, 517 U.S. 44, 74-75

---

[4] FLIC refers to Fla. Immigration Coalition, and FWAF refers to Farmworkers Association of Fla.
[5] While all Plaintiffs have standing, as this Court recognized, Order 5-6, it need not address all of them. *Glassroth v. Moore*, 335 F.3d 1282, 1293 (11th Cir. 2003) (addressing just one plaintiff's standing). In any event, as Defendants never dispute, FLIC's member organizations also have organizational standing because S.B. 4C subjects the member organizations' clients to arrest, detention, and prosecution, directly upending the organizations' "core business activities" by forcing them to divert substantial resources from existing programs. *See* Petit Decl. ¶ 20; *cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) (injury was not to "core business activities").
[6] Defendants' remaining arguments regarding organizational and third-party standing miss the mark. Opp. 7-8. FWAF does not assert organizational standing based on diversion of resources, and neither FLIC nor FWAF seek to assert the rights of third parties.

(1996). Neither condition is satisfied here.[7]

Congress has done nothing to displace equitable enforcement of the rule that states may not regulate entry into the United States. Indeed, there is no alternative enforcement scheme of any kind. If states are to be enjoined from violating this rule, it must be through equity. That is precisely how the United States has proceeded in suits challenging nearly identical state immigration crimes like S.B. 4C—seeking injunctive relief through an equitable cause of action. Nor is the rule here judicially unadministrable like in *Armstrong*; it is simple: States may not regulate entry or reentry. Contrary to Defendants' arguments, Opp. 9-10, Plaintiffs are not seeking to enforce 8 U.S.C. §§ 1325, 1326, related statutes, or criminal laws, which regulate private actors, not states. *GLAHR*, 691 F.3d at 1263-64; *Murphy v. NCAA*, 584 U.S. 453, 479 (2018). Instead, Plaintiffs invoke the Supremacy Clause's "rule of decision" that federal law takes precedence over conflicting state law. *Murphy*, 584 U.S. at 477, 479 (quoting *Armstrong*, 575 U.S. at 324). Congress has done nothing to alter how that rule is enforced. *See Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 146 (2d Cir. 2016).

Defendants next mischaracterize *Va. Off. for Prot. & Advoc. v. Stewart*, Opp. 10, which reaffirmed that equitable relief is available to enforce federal rights. 563 U.S. 247, 255, 256 n.3 (2011). The footnote that Defendants cite does not remotely suggest that relief against preempted state laws is barred in the criminal or immigration context. *See id.* at 261 n.8. Defendants also cite several out-of-circuit cases, but none of them speak to the question here. Some involve regulatory schemes with much stronger indications than Defendants can offer that Congress did intend to preclude equitable enforcement of the rule at issue. *See Corey v. Rockdale Cnty.*, 689 F. Supp. 3d 1251, 1262 (N.D. Ga. 2023) (case was "on all fours with *Armstrong*," with statute providing for agency enforcement of a "broad and unspecific" substantive rule); *Coal. for Competitive Elec., Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 565-66 (S.D.N.Y. 2017) (Congress had provided "a limited private cause of action" to enforce the rule at issue, in order to "allow[] private lawsuits

---

[7] Defendants also argue that Plaintiffs have no statutory private right of action, Opp. 8-11, but Plaintiffs have never claimed that cause of action. *See Armstrong*, 575 U.S. at 331-32 (separately analyzing whether the Medicaid Act provided a "private right of action," and only after concluding that Congress had affirmatively displaced the normally-available equitable cause of action); *see also Crown Castle Fiber, L.L.C. v. City of Pasadena*, 76 F.4th 425, 434-35 (5th Cir. 2023) (plaintiffs have "a cause of action . . . at equity" to seek "relief on preemption grounds" even where the relevant federal statute "does not confer a private right") (internal quotation marks omitted); *United States v. Texas*, 97 F.4th 268, 277 (5th Cir. 2024) (same).

4

in some but not most cases"). In other cases, unlike here, courts rejected the idea that plaintiffs could police violations of federal criminal laws. *See Isr. Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*, 16 F.3d 198, 200-01 (7th Cir. 1994); *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 902-05 (10th Cir. 2017); *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1292-93 (D. Colo. 2016). None of these cases involves the situation here, where Plaintiffs seek to enforce a straightforward preemption rule that Congress has neither displaced nor channeled into an enforcement scheme.

Moreover, Defendants' argument that organizational Plaintiffs cannot sue in equity lacks merit. Opp. 11. FLIC and FWAF are membership organizations with associational standing stepping into the shoes of their members. Even the narrowest conceptions of *Ex parte Young* permit individuals facing prosecution to assert a preemption defense through equity. *See Texas*, 97 F.4th at 309 (Oldham, J., dissenting). Thus, FLIC and FWAF can sue under *Ex parte Young* based on associational standing. *See Dream Defs. v. Governor of Fla.*, 57 F.4th 879, 887 n.4 (11th Cir. 2023) (holding organization had associational standing and satisfied *Ex parte Young*).[8] Defendants do not explain why FLIC and FWAF would lack a cause of action if they have associational standing.

## II. S.B. 4C IS UNLAWFUL

### A. S.B. 4C's Illegal Entry and Reentry Crimes Are Field Preempted

As Plaintiffs demonstrated and as this Court has recognized, S.B. 4C is field preempted. Mot. 5-10 (Dkt. 4); Order 8-11. Ever since Congress began systematically regulating immigration, the Supreme Court has been crystal clear: Regulation of entry into the United States is an exclusively federal matter from which the States are excluded. Defendants rely heavily on a dissent rejected in *Arizona v. United States*, 567 U.S. 387 (2012), and digress into a historical account that has no bearing on the federal framework Congress has since enacted and courts all over the country have recognized. *See* Opp. 12-14 (citing historical statutes and articles). Indeed, Defendants barely grapple with Eleventh Circuit precedent finding preempted the field of "*entry*, movement, and

---

[8] Defendants are also wrong to suggest that organizations fall outside the *Ex parte Young* framework. Opp. 11. The Supreme Court has made clear that the inquiry is "straightforward": a plaintiff need only allege an ongoing violation of federal law and seek prospective relief. *Stewart*, 563 U.S. at 255 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Indeed, the Supreme Court has expressly rejected any rule tying the availability of relief to the plaintiff's identity. *Stewart*, 563 U.S. at 255–56. And the Eleventh Circuit regularly permits *Ex parte Young* claims by organizations and individuals alike. *See, e.g.*, *Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763, 774 (11th Cir. 2020); *Lane v. Cent. Alabama Cmty. Coll.*, 772 F.3d 1349 (11th Cir. 2014); *Grizzle v. Kemp*, 634 F.3d 1314 (11th Cir. 2011).

5

residence of [noncitizens] within the United States." *GLAHR*, 691 F.3d at 1264 (emphasis added); *United States v. Alabama*, 691 F.3d 1269, 1286-87 (11th Cir. 2012); *FWAF*, 734 F. Supp. 3d at 1337-38. And Defendants do not contest that S.B. 4C intrudes into that field. That alone is enough to resolve Plaintiffs' field preemption claim. Defendants also have no response to the long line of Supreme Court precedent recognizing an overwhelmingly dominant interest in the field of entry, or the pervasiveness of the federal framework—either of which is sufficient for field preemption. Mot. 5-10 (citing cases).

Instead, Defendants misstate both the field that Plaintiffs identify and the governing legal standard. Opp. 14.[9] Plaintiffs do not argue that field preemption arises merely because Congress criminalized entry and reentry. Rather, field preemption is established by the INA's comprehensive regulation of entry, movement, and residence of noncitizens, combined with the dominant federal interest in controlling those matters—all of which confirm that Congress left no room for parallel state schemes. *Arizona*, 567 U.S. at 399-403; *GLAHR*, 691 F.3d at 1264-66; *Alabama*, 691 F.3d at 1286. And Plaintiffs do not rest field preemption on the Constitution's text alone, but also on Congress's enactment of the INA under its enumerated powers, which occupies the field through a comprehensive regulatory scheme. *Arizona*, 567 U.S. at 401-03.

Moreover, contrary to Defendants' arguments, Opp. 14, *Arizona*'s holding never said or implied that the federal government has occupied *only* the field of alien registration. 567 U.S. at 401. Indeed, other courts have held that everything *Arizona* said about registration applies with even greater force to the "sensitive topic of noncitizens entering the country," which implicates sovereignty and foreign affairs at least as much registration, if not significantly more so. *Texas*, 97 F.4th at 279-80 (rejecting Defendants' argument); *Iowa*, 737 F. Supp. 3d at 747 (same); *United States v. Oklahoma*, 739 F. Supp. 3d 985, 998-99 (W.D. Okla. 2024) (same); *See Idaho*, No. 25-cv-00178 (D. Idaho Mar. 27, 2025) (Dkt. 16). If a state cannot punish noncitizens for failing to fill out registration papers, it certainly cannot regulate entry directly. *See* Mot. 5-10. Nor did Section 3 apply only to lawfully present noncitizens. Opp. 15. In fact, it expressly exempted "persons lawfully authorized to be in the United States." Pet. Br. 17, *Arizona*, No. 11-182; Ariz. Rev. Stat. § 13-1509(F) (statutory exception).

---

[9] Defendants gesture at the presumption against preemption. Opp. 12. But no such presumption applies where, as here, Defendants seek to regulate in a field "where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000).

Defendants' reliance on *Kansas v. Garcia*, 589 U.S. 191 (2020), and *De Canas v. Bica*, 424 U.S. 351 (1976), is misplaced. Both cases involved traditional areas of state concern that fall outside the core of federal immigration control. *Kansas* addressed generally-applicable identity fraud prosecutions and distinguished cases involving federal immigration enforcement. 589 U.S. at 208-10. And *De Canas* involved a narrow law regulating employment of unauthorized workers—not a state attempt to criminalize immigration conduct itself. 424 U.S. at 354-55.

Moreover, S.B. 4C is not a law with merely "some indirect effect" on a preempted field, Opp 15-16; it criminalizes conduct Congress has comprehensively addressed and expressly reserved for the federal government. Every application of S.B. 4C would penalize conduct within a field Congress has occupied. Defendants attempt to reframe the law as targeting entry into Florida, Opp. 15-16, but S.B. 4C's substance concerns immigration status and entry into the United States. And even if the law only addressed movement between states, it would still violate the Dormant Commerce Clause as explained below.

Finally, Defendants overstate the *Salerno* standard. Opp. 12 (citing *United States v. Salerno*, 481 U.S. 739 (1987)). Courts do not uphold preempted laws merely because a defendant can "conjure up" a "hypothetical factual scenario" in which the statute might be valid. *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022) (citing *Lozano v. City of Hazleton*, 724 F.3d 297, 313 n.22 (3d Cir. 2013)). In *Arizona*, for example, the Supreme Court held Section 6 facially preempted despite Arizona's argument that some applications might involve cooperation with federal officials. 567 U.S. at 410; *see* Reply Br. for Petitioners at 18, *Arizona v. United States*, 2012 WL 1332574 (Apr. 17, 2012). Indeed, in a preempted field like this one, "any state regulation in the area" is impermissible. *Murphy*, 584 U.S. at 479 (quoting *Arizona*, 567 U.S. at 401); *GLAHR*, 691 F.3d at 1264; *Alabama*, 691 F.3d at 1286.

### B. S.B. 4C's Illegal Entry and Reentry Crimes Are Conflict Preempted

Defendants are silent on the unanimous line of decisions by every court to have considered a similar law concluding that these laws are conflict preempted. *See Texas*, 97 F.4th at 293-94; *Iowa*, 126 F.4th at 1346-49, *vacated as moot*; *Oklahoma*, 739 F. Supp. 3d at 997-1004; *Idaho*, No. 25-cv-00178 (D. Idaho Mar. 27, 2025) (Dkt. 16). Nor do Defendants—who assert that S.B. 4C mirrors federal law, Opp. 16—ever engage with the mismatches between federal law and S.B. 4C, including significantly harsher penalties, Mot. 9, or the fact that S.B. 4C imposes penalties upon entering Florida, which federal law does not. *GLAHR*, 691 F.3d at 1266 (conflict "exacerbated by

7

the inconsistency" between state and federal law, including a "new crime unparalleled in the federal scheme"); *Alabama*, 691 F.3d at 1287 (similar).

Instead, Defendants try to pick apart the binding *Arizona*, *GLAHR*, and *Alabama* decisions, but their efforts rest on a misreading of *Arizona*'s Section 6. Contrary to Defendants' contention, Opp. 16, Section 6 did not criminalize removability—it merely authorized arrests by state officers on a belief that a person was removable. *Arizona*, 567 U.S. at 407. Defendants also argue that *Arizona* is inapplicable here because S.B. 4C is a criminal law that does not regulate removal. Opp. 16. But the Eleventh Circuit rejected that narrow reading, applying *Arizona* to criminal statutes that duplicate federal immigration offenses. *See GLAHR*, 691 F.3d at 1264-66; *Alabama*, 691 F.3d at 1287 (same). And while Defendants claim that *Arizona* involved only a statute that "regulate[d] removal," Section 6 was preempted because it authorized "unilateral state action to detain." *Arizona*, 567 U.S. at 410. S.B. 4C suffers from the same flaw—except it goes further by authorizing unilateral state prosecutions.

Defendants next contend that S.B. 4C "borrows from federal standards to verify lawful presence." Opp. 17 (quoting *Estrada v. Becker*, 917 F.3d 1298, 1304 (11th Cir. 2019)). Even if that were true, S.B. 4C still lets state officers unilaterally decide to arrest, prosecute, and detain. But the premise is wrong too, *see* Mot. 13, because as Defendants concede, S.B. 4C never defines "lawful presence" anywhere, and the term has no general meaning in immigration law that applies to the question of whether a noncitizen should be permitted to enter or remain in the United States. *See Estrada*, 917 F.3d at 1304 ("'lawfully present' is not a standalone immigration classification, and it is not defined anywhere in the [Immigration and Nationality] Act") (cited by Defendants).[10]

Defendants finally argue that *GLAHR* and *Alabama* do not apply to S.B. 4C. Opp. 17. But *GLAHR* and *Alabama*—both of which involved state criminal immigration laws that, like S.B. 4C, purported to track federal criminal immigration laws—are squarely on point. And the Eleventh Circuit's concern about "threaten[ing] the uniform application of the INA" and implicating foreign policy interests applies equally here. Nor are *GLAHR* or *Alabama*—which involved state "parallel[s] to the INA," 691 F.3d at 1266—inconsistent with *Kansas*, as explained above, *supra*. Thus, S.B. 4C is conflict-preempted.

---

[10] The policy in *Estrada* treated certain noncitizens as lawfully present based on visa status or eligibility for aid, as verified by the Systematic Alien Verification for Entitlements Program. 917 F.3d at 1302 n.3. Here, by contrast, S.B. 4C never defines lawful presence. Opp. 17.

### C. S.B. 4C Violates the Dormant Commerce Clause

Defendants misread *Edwards v. California*, 314 U.S. 160 (1941)—the leading case prohibiting states from erecting barriers to the interstate movement of people. Opp. 18-20. Neither *Edwards* nor the Commerce Clause is limited to economic protectionism; the Commerce Clause also prohibits laws that burden "the interstate flow of people," a form of commerce long recognized by the courts. *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 992-93 (9th Cir. 2002). The Supreme Court struck down the law in *Edwards* precisely because it sought to isolate California from perceived social burdens by restricting the cross-border movement of people—not goods— based on their indigent status. 314 U.S. at 173-74. S.B. 4C does the same: it criminalizes noncitizens for entering or reentering Florida, erecting a legal barrier at the state's borders for a disfavored group. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) (striking down law that "overtly blocks the flow of interstate commerce at a State's borders"). Defendants' claim that the law is nondiscriminatory because it applies equally to residents and non-residents, Opp. 19-20, misses the point: the Commerce Clause prohibits barriers to interstate movement, regardless of residency status. Nor can Defendants rely on *Maine v. Taylor*, 477 U.S. 131 (1986), which upheld a narrowly tailored environmental protection law. S.B. 4C is no such law—it is a state immigration measure targeting cross-border movement, which the Constitution prohibits and the federal government alone may regulate.[11]

Finally, though a state may justify its law by showing it serves a legitimate local purpose with no adequate nondiscriminatory alternatives, Opp. 19-20, this Court has recognized that such justification is unlikely because "S.B. 4C basically duplicates existing federal law." Order 12 n.6.

### III.  THE EQUITIES STRONGLY FAVOR PLAINTIFFS

Plaintiffs are likely to suffer irreparable harm because they face "the threat of state prosecution for crimes that conflict with federal law." *GLAHR*, 691 F.3d at 1268-69; *Alabama*, 691 F.3d at 1301; *FWAF*, 734 F. Supp. 3d at 1343. Moreover, those arrested under the law will be separated from their families. *See, e.g.*, Y.M. Decl. ¶ 8; V.V. Decl. ¶ 9. S.B. 4C would also erode public trust in law enforcement, which is important for public safety. *See Texas*, 719 F. Supp 3d. at 698. Defendants point to the public's interest in enforcement of the State's laws, Opp. 20, but

---

[11] Defendants wrongly suggest that *Edwards* rests solely on the Privileges and Immunities Clauses. Opp. 19 n.13. While *Saenz v. Roe*, 26 U.S. 489 (1999), later recognized related rights for citizens, that did not displace the Commerce Clause's separate protection of interstate movement. *See Conservation Force*, 301 F.3d at 992-93.

9

enforcement of preempted legislation is not in the public interest. *GLAHR*, 691 F.3d at 1268-69; *Alabama*, 691 F.3d at 1301. And while Defendants emphasize the effects of illegal immigration, Opp. 20, Florida's "frustrations with the problems caused by illegal immigration" do not allow it to "pursue policies that undermine federal law." *Arizona*, 567 U.S. at 416.

Defendants' unclean hands argument fails at every step. Opp. 20. They identify no "unconscionable act," as the doctrine demands. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)); *FWAF*, 734 F. Supp. 3d at 1343. Nor do they address the other elements: a direct connection to Plaintiffs' claims and personal injury to Defendants. *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (reciting elements of doctrine). Plaintiffs' alleged decades-old immigration violations have no bearing on their constitutional and preemption claims, and Defendants show no harm. *See FWAF*, 734 F. Supp. 3d at 1343. At bottom, their theory would bar noncitizens from challenging unlawful state laws, a result courts have rightly rejected. *See Lozano v. City of Hazleton*, 620 F.3d 170, 193-94 (3d Cir. 2010).

## IV.   RELIEF SHOULD BE STATEWIDE

There is no dispute that statewide classes merit statewide relief, so, should the Court grant provisional class certification, it should enjoin all enforcement of S.B. 4C. Defendants offer no arguments on this point. A statewide injunction is proper on this basis alone.

But even without provisional class certification, statewide relief is proper because it is necessary to fully redress Plaintiffs' injuries. *See* Mot. 18-19; *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1282 (11th Cir. 2021). FWAF has thousands of members statewide, and FLIC not only has dozens of individual members but also 85 member organizations located across the state that will be affected by S.B. 4C, who in turn have thousands of individual members of their own. *See* Petit Decl. ¶ 4; Gomez Decl. ¶ 4. Unlike the narrower statute in *FWAF*, 734 F. Supp. 3d 1311, S.B. 4C criminalizes mere entry and presence statewide. The Eleventh Circuit has further recognized that universal relief is especially appropriate where, as here, "immigration law is implicated" or the constitutional violation is systemic. *Florida*, 19 F.4th at 1282; *see also GLAHR*, 691 F.3d at 1269. And because the Individual Plaintiffs proceed pseudonymously, tailored relief would undermine their anonymity. *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1362 (N.D. Ga. 2023).

## CONCLUSION

This Court should provisionally certify the classes and enjoin S.B. 4C's illegal entry and reentry provisions.

Date: April 17, 2025

Cody Wofsy*
Spencer Amdur*
Hannah Steinberg*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org


*  *Admitted pro hac vice*

*Counsel for Plaintiffs*

Respectfully submitted,

*/s/ Amien Kacou*
Amien Kacou (FL Bar No. 44302)
Amy Godshall (FL Bar No. 1049803)
Daniel B. Tilley (FL Bar No. 102882)
ACLU FOUNDATION OF FLORIDA, INC.
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2700
akacou@aclufl.org
agodshall@aclufl.org
dtilley@aclufl.org

Paul R. Chavez (FL Bar No. 1021395)
Evelyn Wiese (CA Bar No. 338419)*
Christina Isabel LaRocca (FL Bar No. 1025528)
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 309
Miami, FL 33166
(305) 576-6273
pchavez@aijustice.org
ewiese@aijustice.org
clarocca@aijustice.org

Miriam Haskell (FL Bar No. 69033)
Alana Greer (FL Bar No. 92423)
Will Mann (FL Bar No. 1058086)
COMMUNITY JUSTICE PROJECT, INC.
3000 Biscayne Blvd., Suite 106
Miami, Florida 33137
T: (305) 907-7697
miriam@communityjusticeproject.com
alana@communityjusticeproject.com
will@communityjusticeproject.com

11

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on April 17, 2025, to all counsel of record.

/s/ *Amien Kacou*
Amien Kacou