## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

FLORIDA IMMIGRANT COALITION, *et al.*,

> *Plaintiffs*,

> v.

JAMES UTHMEIER, in his official capacity as
Attorney General for the State of Florida, *et al.*,

> *Defendants*.

No. 1:25-cv-21524-KMW

## DEFENDANTS' SUPPLEMENTAL BRIEF
## ON THE SCOPE OF TEMPORARY RESTRAINING ORDER

A "deep-rooted historic tradition" in American law is that "everyone should have his own day in court." *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 847 (7th Cir. 2010). When they do, "[a] court's injunction may require a person to do or refrain from doing a particular act." *United States v. Robinson*, 83 F.4th 868, 873 (11th Cir. 2023) (Rosenbaum, J.).  But a court's order is not like a legislature's enactment, "which can apply to everyone." *Id.* "A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011). A plaintiff's choice of whom to sue thus has real consequences that the plaintiff cannot casually evade.

This Court has enjoined Defendants—Florida's Attorney General, statewide prosecutor, and state attorneys—from enforcing the criminal prohibitions in Florida's SB 4-C. DE28 at 14; DE1 ¶¶ 30–32. But at the preliminary-injunction hearing on April 18, 2025, this Court ordered supplemental briefing on whether its injunction may flow beyond the parties. DE49 at 2. More specifically, the Court asked whether, in enjoining the named Defendants, it may also bind all

Florida law-enforcement officials "tasked with enforcing SB 4-C," even if they are not parties, are separately elected, and not subject to Defendants' control. Tr. 63:20–25.

It cannot. Those law-enforcement officers do not fit into the "traditional understanding of whom a federal injunction binds." *Robinson*, 83 F.4th at 878. They are not parties. Nor are they Defendants' "officers or agents," for Defendants have no power to control or direct their behavior. Fed. R. Civ. P. 65(d)(2)(B). And they are not invariably "in active concert or participation" with the Defendants, *Robinson*, 83 F.4th at 878, because independent law-enforcement officers are not "in privity" with Defendants, *id.* at 881. While the Attorney General communicated the Court's view that law enforcement should not make arrests under SB 4-C, he did so solely to comply with this Court's order—which Defendants maintain is unlawful.

At most, this Court's injunction may extend only to non-party law-enforcement officers that "aid and abet" Defendants in violating the injunction, *id.* at 879—a vanishingly narrow group, seeing that Defendants have committed to abide by this Court's orders. The Court's injunction is overbroad to the extent it declares otherwise.

## BACKGROUND

### I.    Florida's Governmental Structure

Florida's Constitution divides the State's executive power across independent offices, some of which are endowed with shares of the State's litigation power. At the statewide level, the Attorney General serves as Florida's "chief state legal officer." Fla. Const. art. IV § 4(b). His job is to "attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party" in state appellate and federal courts. Fla. Stat. § 16.01(4). He also appoints and oversees the Office of the Statewide Prosecutor, which prosecutes certain crimes of statewide interest. Fla. Const. art. IV § 4(b). By contrast, at the local level, state attorneys prosecute

crime in Florida courts. *See* Fla. Const. art. V, § 17; Fla. Stat. § 27.02(1). They are elected by local constituents within the State's 20 judicial circuits. *Id.*; Fla. Stat. § 27.01.

Separate from those prosecuting offices are various law-enforcement officials with the power to "make arrests" and "whose primary responsibility is the prevention and detection of crime." Fla. Stat. § 943.10(1). Those offices mainly include:

- Florida's sheriffs, who are constitutional officers elected at the county level in Florida's 67 counties. Fla. Const. art. VIII, § 1(d).

- Municipal police departments, which the municipality typically appoints. *See City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1243 (Fla. 2006); *see also, e.g.*, City of Miami Charter, § 24 (establishing a police department).

- The Florida Highway Patrol—a state agency headed by the Governor and his Cabinet, Fla. Stat. § 20.24(1)—which "enforce[s] all laws regulating and governing traffic, travel, and public safety" on "the state highways." Fla. Stat. § 321.05(1).

- The Florida Department of Law Enforcement (FDLE)—a state agency headed by the Governor and his Cabinet, Fla. Stat. § 20.201(1)—authorized to "investigate violations of any of the criminal laws of the state" if it receives a "written order of the Governor" and "the direction of [FDLE's] executive director." Fla. Stat. § 943.04(2)(a).

## II.   Procedural History

Florida's SB 4-C creates two new crimes for unlawfully present aliens for entering the State (absent some federal permission to remain in the country). Fla. Stat. §§ 811.102(1), (4), 811.103(1). Plaintiffs have sued to enjoin that law. DE1. As Defendants, Plaintiffs named the

Attorney General of Florida, the statewide prosecutor, and all of Florida's 20 state attorneys. DE1 ¶¶ 30–32. Defendants are all prosecutors; Plaintiffs have not sued any law-enforcement officers.

Plaintiffs moved for a temporary restraining order and a preliminary injunction the same day that they filed their complaint. DE4. This Court granted that order *ex parte* two days later. DE28. Tracking Federal Rule of Civil Procedure 65, the Court stated that its order "prohibit[ed] Defendants and their officers, agents, employees, attorneys, and any person who [is] in active concert or participation with them from enforcing SB 4-C." DE28 at 14.

At the hearing on Plaintiffs' motion for a preliminary injunction, Plaintiffs raised questions about the scope of the restraining order because of alleged arrests made by law-enforcement officers in Florida. Tr. 7:3–14. The Court requested supplemental briefing to determine whether its order could lawfully reach Florida's law-enforcement officers under Rule 65. DE49 at 2. The Court also clarified that, for purposes of its current injunction, Defendant's officers, agents, and those "who are in active concert or participation with" Defendants include "any officer or other personnel within any municipal or county police department within Florida, the Florida Department of Law Enforcement, or the Florida Highway Patrol, and any other law enforcement officer with power to enforce SB 4-C." DE49 at 1.

## ARGUMENT

Courts may not "erase a duly enacted law from the statute books." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020). Rather, they may enjoin only specific "officials from taking steps to enforce a statute." *Id.*

Like Article III, Federal Rule of Civil Procedure 65 governs the scope of that injunctive power. Under Rule 65, a court's order may "bind[] only" those who receive "actual notice" and fall into one of three categories: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with" the

parties or their officers or agents. Fed. R. Civ. P. 65(d)(2). Injunctive relief may not extend beyond those individuals. *See Robinson*, 83 F.4th at 878.

That list tracks the historic limits of equity. In Rule 65, Congress "embod[ied]" the traditional limits of equitable power and codified the background principles that had long guided equity courts. *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017). Fundamental to those principles was the idea that a litigant is generally "not bound by a judgment to which she was not a party." *Taylor v. Sturgell*, 553 U.S. 880, 884, 892, 898 (2008); *see also Smith*, 564 U.S. at 312. Rule 65 honors those traditional principles by generally limiting a court's injunctive power to parties, those acting on behalf of parties, or those helping parties avoid the court's order. *See Robinson*, 83 F.4th at 878, 881.

Because most (if not all) law-enforcement officers fall outside of those criteria, the Court should narrow its injunction to cover only Defendants and those who aid or abet any effort by Defendants to violate the Court's injunction.

## I. Florida's law-enforcement officers are not parties.

The first criterion is easy: Florida's law-enforcement officers are not parties. Plaintiffs did not "name" them "as defendant[s]" in their complaint or "serv[e] [them with] process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969) (similar); Fed. R. Civ. P. 4(a). Plaintiffs conceded as much at the hearing, acknowledging that they could "amend" their complaint to add "all of the law enforcement agencies" as parties. Tr. 8:7–16. Nor have Plaintiffs attempted to show standing to sue those entities—another requisite for establishing

the Court's jurisdiction over those individuals. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("[P]laintiffs must demonstrate standing for each claim that they press against each defendant[.]").

## II.  Florida's law-enforcement officers are not Defendants' officers, agents, servants, employees, or attorneys.

Nor are law-enforcement officers Defendants' "officers, agents, servants, employees, [or] attorneys." Fed. R. Civ. P. 65(d)(2). Though Rule 65 does not define those terms, "where Congress uses terms that have accumulated settled meaning under the common law," it "incorporate[s] the established meaning of these terms." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989); *see also Robinson*, 83 F.4th at 880 (defining "employee" in Rule 65 according to the common law). To fall within the common-law definition of all the categories listed in Rule 65(d)(2), law-enforcement officers must be subject to Defendants' control and wield authority to act on Defendants' behalf.[1] Yet Plaintiffs have offered nothing to suggest that Defendants control Florida's law-enforcement officials or have authorized them to act for Defendants. To the contrary, law-enforcement agencies are independent and distinct from prosecutorial agencies under Florida's constitutional scheme.[2]

---

[1] *See, e.g.*, Restatement (Third) of Agency §§ 2.01, 2.03 (Am. L. Inst. 2006) (establishing those principles for agency); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992) (stating that "when Congress has used the term 'employee' without defining it," the Court looks to a multi-factor test related to the "hiring party's right to control the manner and means by which the product is accomplished"); *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." (quoting Restatement (Second) of Agency § 220(1) (1957)); *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 557 n.9 (11th Cir. 1998) ("At common law, senior officers of a corporation normally are agents and servants of the corporation."); Restatement (Second) of Agency § 2 cmt. c (1958) ("[T]he officers of a corporation or a ship, . . . all of whom give their time to their employers, are servants equally with the janitor[.]").

[2] Nor does it matter that the Attorney General sits on the board governing the Highway Patrol and FDLE. The Eleventh Circuit has rejected an argument that the Attorney General and

The constitutional and statutory provisions governing law enforcement and prosecutors make that division clear. *See Peppers v. Cobb County*, 835 F.3d 1289, 1294 (11th Cir. 2016) (finding a district attorney under Georgia law to be "a legal entity separate from the County" because both entities were created by distinct constitutional provisions). In Florida, law-enforcement and prosecutorial agencies derive their respective powers from separate constitutional[3] and statutory[4] sections. None of those sections grant prosecutorial entities like Defendants control over law-enforcement officials. Florida law is typically explicit when it grants one state actor control over another and drapes the latter with the former's authority. *See, e.g.*, Fla. Const. art. IV § 2 (lieutenant governor "perform[s] such duties" that are "assigned by the governor"); *id.* § 4(b) (creating statewide prosecutor under the Attorney General's office); Fla. Stat. § 27.18 (permitting state attorneys to hire subordinates); *id.* § 30.07 (sheriffs appoint sheriff deputies).

A host of other factors underscore the divide between Defendants and law enforcement. For one, although the power to control typically accompanies the power to discipline, *Free Enterprise Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010) ("[E]xecutive power without the Executive's oversight . . . subverts the President's ability to ensure that the laws are faithfully executed—as well as the public's ability to pass judgment on his efforts."), Plaintiffs have identified no legal authority empowering Defendants to discipline law-enforcement officers in a

---

FDLE were fungible by nature of that relationship. *Support Working Animals v. Governor of Fla.*, 8 F.4th 1198, 1204 & n.4 (11th Cir. 2021).

[3] *Compare* Fla. Const. art. IV § 4(b) (creating the Attorney General and statewide prosecutor); *id.* art. V, § 17 (creating state attorneys), *with id.* art. VIII § 1(d) (creating sheriffs).

[4] *See, e.g.*, Fla. Stat. § 16.01 (creating powers and duties of the Attorney General); Fla. Stat. §§ 27.02–.13, 27.18–.25 (creating powers and duties of the state attorney); Fla. Stat. § 30.15 (creating powers and duties of the sheriffs); Fla. Stat. § 943.04(2)(a) (giving the FDLE power of investigation in certain circumstances); Fla. Stat. § 321.05 (creating powers and duties of the Florida Highway Patrol); City of Miami Charter § 24 (creating the Miami Police Department).

managerial capacity. For another, law-enforcement offices do not receive their funding from Defendants' coffers, but from state, county, and municipal budget appropriations. *See, e.g.*, Fla. Stat. § 30.49 (sheriffs' offices budgets); *FY 2023-24 FTE and Funding Summary*, Florida Department of Law Enforcement, https://tinyurl.com/yfawt83a.[5] Finally, many law-enforcement officials are either directly elected by local constituencies, *e.g.*, Fla. Const. art VIII § 1(d) (country sheriffs), or are appointed by local governments, *e.g.*, City of Miami Charter § 42-2 (police chief appointed by city manager). They are thus accountable to political constituencies distinct from the Attorney General and state attorneys. *Morris v. Bd. of Estimate*, 831 F.2d 384, 392 (2d Cir. 1987) (Different elected officials "primarily represent the interests of the different constituencies that elect them."); *see also Jacobson*, 974 F.3d at 1253 (order against the Secretary of State would not govern local-government officials who were "not appointed" by the Secretary).

The Eleventh Circuit has recognized the separation between law-enforcement and prosecutorial entities in Florida. *See City of South Miami v. Governor*, 65 F.4th 631, 641 (11th Cir. 2023). In *City of South Miami*, plaintiffs argued that their alleged injury—discriminatory arrest by law-enforcement officers—was "traceable to the . . . attorney general . . . because [he has] sufficient control over local law enforcement." *Id.* The Eleventh Circuit rejected the claim. Because the plaintiffs "offered nothing to prove" that the attorney general could "control" law enforcement or "curtail" injuries committed by "local officials who [were] not parties to th[e] action," their injuries were not traceable to the Attorney General. *Id.* at 641–42; *see also Jacobson*, 974 F.3d at 1253 (voting injuries caused by local Supervisors of Elections were not traceable to Secretary of State

---

[5] While the Attorney General may give grants to sheriffs under its crime stoppers program, that money is not from his coffers but flows from other sources. *See* Fla. Stat. § 16.555.

because "Supervisors are independent officials under Florida law who are not subject to the Secretary's control").

That analysis governs here. Plaintiffs have not shown that Defendants "control" the many local law-enforcement officials "who are not parties to this action," *City of South Miami*, 65 F.4th at 642, nor do Defendants understand their offices to have such power. Plaintiffs therefore cannot establish that those law-enforcement officials are Defendants' "officers, agents, servants, employees, [or] attorneys." Fed. R. Civ. P. 65(d)(2)(B).

### III. Florida's law-enforcement officers are not invariably in active concert or participation with Defendants.

Because law-enforcement officers are neither parties nor agents of the parties, this Court's injunction may reach them only when they are in "active concert or participation" with Defendants. Fed. R. Civ. P. 65(d)(2)(C). That is a narrow circumstance. *See ADT*, 853 F.3d at 1352. After all, "a court of equity . . . cannot lawfully enjoin the world at large," and basic notions of due process entitle each person to "have their day in court." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832–33 (2d Cir. 1930) (Hand, J.). For that reason, courts generally may bind only parties, *Smith*, 564 U.S. at 312, and usually may bind non-parties under the "active concert or participation" exception only when a party is attempting to avoid the injunction through "craftiness" with the non-party, *Robinson*, 83 F.4th at 885. Non-parties thus fall within the "active concert or participation" exception in two "limited" circumstances: when they are in "privity" with a party, or when they "aid and abet the party bound by the injunction in carrying out prohibited acts." *Id.* at 881–82.

Plaintiffs have not shown that all "law enforcement officer[s] with power to enforce SB 4-C" fit within those limited categories. DE49 at 1.

1. To begin, law-enforcement officers lack privity with Defendants. "[P]rivity" is a "legal conclusion" about the relationship between two individuals. *ADT*, 853 F.3d at 1352. It exists only

when a non-party "can be legally identified with an enjoined party," such that enjoining the non-party comports with due process. *Robinson*, 83 F.4th at 884. To satisfy due process, there must be "extremely close identification between the enjoined party and the nonparty legally identified with it," so "that it is fair to say that the nonparty had his day in court" and that their rights were adjudicated "when the injunction was issued." *Id.* That standard mirrors the privity standard in claim preclusion, which also determines when a person's rights are litigated by another party in another forum. *See ADT*, 853 F.3d at 1352; *Nat'l Spiritual Assembly of Baha'is*, 628 F.3d at 856–57.

The Eleventh Circuit has identified just two instances of privity under Rule 65. A defendant has privity with its "successors and assigns"—a circumstance inapplicable here. *Robinson*, 83 F.4th at 884. Next, a defendant has privity with a non-party who shares the same "legal identity." *Robinson*, 83 F.4th at 884. To share a legal identity, the non-party must have both (1) "a very close identity of interest" with the party, and (2) exercise "such significant control over the [party] *and* the underlying litigation that it is fair to say that the nonparty had his day in court when the injunction was issued." *Id.* (quoting *Nat'l Spiritual Assembly*, 628 F.3d at 853). That "limited class of [enjoinable] nonparties" prevents a party from "circumvent[ing] a valid court order merely by making superficial changes" in form. *Id.* at 884–85; *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998) ("[U]nless a formal kind of successor interest is involved . . . , there should be some indication . . . that the second party either had participated or had a legal duty to participate."). At the same time, strict adherence to the elements of legal identity is necessary to "keep the scope of contempt liability within the limits of due process." *Robinson*, 83 F.4th at 884.

Try as they might, Plaintiffs cannot squeeze law-enforcement officers into the "very limited [legal-identity] category." *Nat'l Spiritual Assembly*, 628 F.3d at 856.

First, the law-enforcement officers do not exercise "significant control over the [Defendants]," nor have they exercised any control over "[this] litigation." *Robinson*, 83 F.4th at 884. As explained, the Attorney General, state attorneys, and law enforcement are all separate legal entities, with Defendants and law-enforcement agencies exercising no control over each other. *See supra* 6–9. Nor have law-enforcement agencies participated in or directed any part of Defendants' litigation strategy.

Second, even if the lack of control were not dispositive, that lack of control at minimum magnifies Plaintiffs' need to show a substantial parity of interests. *See Taylor*, 553 U.S. at 894, 901 (something more than "identity of interests and some kind of relationship between parties and nonparties" is needed for privity); *see also* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2956 & n.27 (Westlaw 3d ed. April 2025) ("Privity is not established merely because persons are interested in the same question or desirous of proving the same set of facts[.]").

Plaintiffs have not met that great burden. The interests for law-enforcement officers are to arrest in the pursuit of "prevention and detection of crime." Fla. Stat. § 943.10(1); *see also* Fla. Stat. § 30.15 (noting that sheriffs are tasked with "be[ing] conservators of the peace in their counties"); Fla. Op. Att'y Gen. 83-94 (1983) (state attorneys are not "law enforcement officers"). By contrast, state attorneys and Attorneys General are concerned with prosecution and legal process. State attorneys in Florida represent the state in the state trial courts, Fla. Stat. § 27.02(1), and the Attorney General is the "chief state legal officer," Fla. Const. art. IV, § 4(b), tasked with representing the state in state appellate and federal courts, Fla. Stat. § 16.01(4)–(5). Thus, state attorneys and the Attorney General "fulfill a unique role, which is both quasi-judicial and quasi-executive." *Valdes v. State*, 728 So. 2d 736, 739 (Fla. 1999); *State ex rel. Landis v. S.H. Kress & Co.*, 155 So.

823, 828 (Fla. 1934) ("The office of Attorney-General is, in many respects, judicial in its character[.]"). That role implicates "their status as officers of the court," *Valdes*, 728 So. 2d at 739, in which they "represent the interests of the people of the State of Florida, not the interests of [an] arresting police officer." *Gentile v. Bauder*, 718 So. 2d 781, 783 (Fla. 1998); *cf. Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1580 (11th Cir. 1985) (finding two separately created state agencies to not be in privity based on their "different functions," "responsibilit[ies]," and interests involved).

That divergence of interests is reflected in a legion of cases holding that prosecutors are not in privity with arresting officers.[6] Even when those matters involve the same arrest that resulted in criminal prosecutions, the "interests and incentives of the individual police or officials" are not aligned with the prosecution. *Bilida*, 211 F.3d at 170. The prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935). That sovereign goal—put simply—is broader: "not that it shall win a case, but that justice shall be done." *Id.*; *see also Standefer v. United States*, 447 U.S. 10, 25 (1980) (The goal of criminal prosecution includes the "safeguarding the rights of the individual defendant."). A prosecutor's job is thus not to "demonstrate that the officers had performed their functions properly." *McCoy*, 203 F.3d at 375. On the other side of the coin, officers have little if any direct interest in prosecution, and they cannot "call witnesses, . . . direct the examination of the State's witnesses, . . . [or] choose

---

[6] *See, e.g.*, *Wilson v. Attaway*, 757 F.2d 1227, 1236–37 (11th Cir. 1985); *Hargis v. City of Orlando*, 586 F. App'x 493, 498 (11th Cir. 2014); *see also, e.g.*, *Bilida v. McCleod*, 211 F.3d 166, 170 (1st Cir. 2000); *McCoy v. Hernandez*, 203 F.3d 371, 374–75 (5th Cir. 2000); *Morgan v. Gertz*, 166 F.3d 1307, 1309 (10th Cir. 1999); *Tierney v. Davidson*, 133 F.3d 189, 195–96 (2d Cir. 1998); *Duncan v. Clements*, 744 F.2d 48, 51–52 (8th Cir. 1984); *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971); *Washington v. Dewey*, 433 F. Supp. 3d 334, 346 (D. Conn. 2020).

the counsel who represented the State." *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105–06 (10th Cir. 1998). Though police have a "working relationship" with prosecutors, "it is not 'sufficiently close' to establish privity." *Dewey*, 433 F. Supp. 3d at 346.

Where officers are separately elected, as several types of officers are here, they serve even more fundamentally different interests—those of different electorates. "Government officials are expected as a part of the democratic process to represent and to espouse the views of a majority of their constituents." *Keller v. State Bar of Cal.*, 496 U.S. 1, 12 (1990). But the law-enforcement officers here are elected by different jurisdictions with different constituencies. *Supra* 2–3. Even in the same jurisdiction, those officers may feel as if the mandate from their constituencies differs from other elected officials in the same place. The unique interests of separately elected officials make the doctrine of privity ill-suited to this context.

2. Nor is there any evidence that all law-enforcement officers in Florida are "aid[ing] and abet[ting]" Defendants in violating this Court's injunction. *Robinson*, 83 F.4th at 885. To aid and abet, one must help another person commit a crime though "he has not personally carried [the crime] out." *Rosemond v. United States*, 572 U.S. 65, 70 (2014).[7] That requires three elements to be met: (1) "the commission of the underlying offense by someone" other than the abettor, (2) "a voluntary act or omission" by the abettor, and (3) "a specific intent that such act or omission promote the success of the underlying criminal offense." *Havens*, 76 F.4th at 115 n.13; *see also United States v. Roosevelt Coats*, 8 F.4th 1228, 1248 (11th Cir. 2021). In the context of Rule 65, the underlying offense is a violation of the injunction, which requires that the enjoined party or its agents take some affirmative "act[] in violation of the injunction." *Robinson*, 83 F.4th at 885. That

---

[7] "The elements of criminal aiding and abetting parallel the requirements of Rule 65(d)." *Havens v. James*, 76 F.4th 103, 115 n.13 (2d Cir. 2023); *see also Reid*, 490 U.S. at 739.

requirement flows from the proposition that one cannot aid and abet their own actions alone. *See Nigro v. United States*, 117 F.2d 624, 630 (8th Cir. 1941) ("[H]e may not be convicted for aiding and abetting another in the commission of a crime *unless the other has actually committed the crime*." (emphasis added)).

At the outset, it is unlikely that any law-enforcement officer will ever aid and abet a violation of this Court's injunction, as Defendants have not taken, and will not take, any "act[] in violation of the injunction." *Robinson*, 83 F.4th at 885. Defendants are fully committed to abiding by this Court's orders. So long as they do so, there will be no "underlying crime" for officers to aid or abet. *Rosemond*, 572 U.S. at 70.

But even if Defendants were to violate the injunction, it's not true that *every* law-enforcement officer aids and abets a violation of the injunction *every* time they arrest under SB 4-C. Rather, officers will aid and abet only when their arrest "promote[s] or facilitates the commission" the Defendants' own violation. *Id.* at 71. For example, if an officer arrested a migrant under SB 4-C in coordination with Defendants, they would aid and abet a violation of this Court's injunction. In that instance, the Defendants and those officers would certainly be at the mercy of the "court's awesome civil and criminal contempt powers." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991). But in the many cases where officers arrest without any connection to or involvement from Defendants, those officers aid and abet nothing, and thus fall beyond this Court's equitable reach. Anything more would empower this Court to "enjoin the world at large" and "to declare conduct unlawful," *Alemite*, 42 F.2d at 832–33—an act forbidden by circuit precedent. *See Jacobson*, 974 F.3d at 1255 ("[F]ederal courts have no authority to erase a duly enacted law[.]").

*     *     *

It is worth pausing to consider how Plaintiffs' vision of equity would upend other areas of law. As they see it, once the Court holds a state law unconstitutional, it may enjoin *any person*

14

from enforcing the law, even non-parties removed from the named defendants. *See* Tr. 7:3–14. Even worse, it would hold the Attorney General and state attorneys liable for the actions of those who they cannot control and have not encouraged in any way. That would open the door to a harrowing possibility: elected officials of a sovereign state, acting in full accordance with court orders, could be made criminals "against [their] consent, and by the mere rashness or precipitancy or overheated zeal of another." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023).

Plaintiffs' interpretation of court power makes a mockery of due process, standing, and equitable limits. Their theory permits the court to enjoin law-enforcement agencies that will never "have their day in court." *Alemite*, 42 F.2d at 833. And while the Supreme Court has explained that "standing is not dispensed in gross" and so "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek," *Murthy*, 603 U.S. at 61 (cleaned up), Plaintiffs' proposal would allow them to enjoin every state executive officer by showing standing to sue just one of them. Not only that, their theory tramples the equitable limits of the federal courts, which are bounded by "historical practice and traditional remedial principles," *Georgia v. President of the United States*, 46 F.4th 1283, 1303, (11th Cir. 2022), including the limit that "injunctive relief operates on specific parties," *Id.* at 1307; *see also Scott v. Donald*, 165 U.S. 107, 117 (1897) (finding an injunction "objectionable because it enjoin[ed] persons not parties" and who were not "represent[ed]" by or in a "conspiracy" with the defendants).

## CONCLUSION

To sum up, this Court lacks equitable authority to enjoin all non-party "law enforcement officer[s] with power to enforce SB 4-C." DE49 at 1. Rather, this Court's injunction may reach only law-enforcement officers who aid and abet Defendants in violating the injunction; it may not enjoin law-enforcement officers acting without Defendants' involvement or coordination. The Court should clarify its injunction accordingly.

Respectfully submitted on April 23, 2025.

JAMES UTHMEIER
  *Attorney General*

/s/ *Robert S. Schenck*
JEFFREY P. DESOUSA (FBN 110951)
  *Acting Solicitor General*
NATHAN A. FORRESTER (FBN 1045107)
DAVID M. COSTELLO (FBN 1004952)
  *Chief Deputy Solicitors General*
ROBERT S. SCHENCK (FBN 1044532)
CHRISTINE PRATT (FBN 100351)
  *Assistant Solicitors General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*nathan.forrester@myfloridalegal.com*
*david.costello@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on April 23, 2025, to all counsel of record.

/s/ *Robert S. Schenck*
Assistant Solicitor General