**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FLORIDA IMMIGRANT COALITION, *et al.*,

        *Plaintiffs*,

        v.

JAMES UTHMEIER, in his official capacity as the Attorney General of the State of Florida, *et al.*,

        *Defendants*.

Case No. 1:25-cv-21524-KMW

**<u>PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF
ON THE SCOPE OF TEMPORARY RESTRAINING ORDER</u>**

**INTRODUCTION**

Defendants' supplemental brief makes a radical argument: Despite this Court's Temporary Restraining Order finding S.B. 4C unconstitutional and halting its enforcement, law enforcement officers across the state may make hundreds or even thousands of arrests under the unconstitutional law. Indeed, in their view, this Court is *powerless* to enjoin any arrests under this illegal law, no matter how clear the Court makes its order, and instead each and every law enforcement agency must be formally joined to this litigation—and every other challenge to unconstitutional state laws.

Yet more troublingly, Defendants appear to have *encouraged* future arrests despite the Court's clear directive. The Attorney General sent a letter to all law enforcement officers in the state expressing "[his] view that no lawful, legitimate order currently impedes your agencies from continuing to enforce" S.B. 4C. Ex. A. Of course, this Court's Order extending the TRO could not have been clearer that all law enforcement officers are barred from conducting arrests under S.B. 4C. And neither the Attorney General nor any other person may decline to comply with a court order even if they believe (wrongly) that it is not "lawful [or] legitimate." *Id.* After all, "it is firmly settled that a court order 'must be obeyed' until it is 'reversed for error' by the issuing court or a 'higher' one. *J.G.G. v. Trump*, No. 25-766, 2025 WL 1119481, at *8 (D.D.C. Apr. 16, 2025) (quoting *Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967)).

Even setting aside this apparent effort to undermine the Court's order, Defendants' position is baseless. Courts have long held that law enforcement officers who participate in enforcing an enjoined law are bound where, as here, they act in concert with the enjoined parties to carry out prohibited conduct and are provided with notice of the injunction. Additionally, privity exists because, in a lawsuit challenging the validity of a state law, the interests of law enforcement and prosecutors are identical: enforcing state law and defending it against facial constitutional challenge. Law enforcement officers have also aided and abetted violations of this Court's injunction by arresting individuals under the enjoined provisions. And, contrary to Defendants' position, Florida law gives the Attorney General control over law enforcement when it comes to immigration issues. Defendants' arguments to the contrary misunderstand the scope of Federal Rule of Civil Procedure 65(d)(2), misapply settled law, and, if accepted, would invite evasion of judicial authority. "[A]n injunction is not a game of whack-a-mole where the Court must repeatedly issue new injunctions to address the Defendants' post-injunction craftiness."

1

*United States v. Robinson*, 83 F.4th 868, 885 (11th Cir. 2023) (citation omitted). This Court should confirm the scope of its orders.

## BACKGROUND

This suit challenges the legality of S.B. 4C, a criminal law that purports to authorize law enforcement officers to arrest, prosecutors to prosecute, and judges to convict noncitizens for state law immigration crimes. Plaintiffs sought a preliminary injunction and temporary restraining order, emphasizing the threat of arrest both as a reason the law is preempted and as an imminent harm requiring rapid relief. *See, e.g.*, Dkt. 4 at 1, 4, 8, 10-11 ("if unilateral *arrests* alone were enough for preemption in *Arizona*, then unilateral arrests, prosecutions, and detention under S.B. 4C must be preempted as well"); *id.* at 16 ("Since enacting S.B. 4C, law enforcement agencies in Florida have already made several arrests pursuant to these laws. Plaintiffs are at risk of being next.") (footnote omitted); *id.* at 17 (noting harm to public trust if state officers make arrests); Dkt. 23 at 2 (urging speed given "increasing reports that state officials have already begun arresting noncitizens under the statute").

On April 4, 2025, this Court issued a TRO enjoining enforcement of S.B. 4C's illegal entry and reentry provisions, finding that Plaintiffs demonstrated a strong likelihood of success on the merits and that enforcement of the law would cause irreparable harm. Dkt. 28. On the questions of standing and irreparable injury, the Court emphasized the "risk of arrest" that Plaintiffs had established. *Id*. at 5-6; 12-13. Pursuant to Fed. R. Civ. P. 65(d)(2), the Court barred any enforcement by Defendants; "their officers, agents, employees, attorneys," *and* "any person who are in active concert or participation with them." *Id*. at 14. Defendants subsequently filed an opposition to a preliminary injunction and sought clarification on the scope of the upcoming hearing, *see* Dkt. 32, 40, but never sought any clarification of the clear sweep of the TRO. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (noting parties could have sought "clarification or construction of the order").

Instead, Florida law enforcement officers proceeded to make an unknown number of arrests under the enjoined provisions. For example, on April 16, 2025, Juan Carlos Lopez-Gomez, a U.S. citizen, was arrested by the Florida Highway Patrol under S.B. 4C's illegal entry provision during a traffic stop, despite presenting valid identification. *See, e.g.*, Ex. F. Plaintiffs became aware of two other specific arrested individuals, and received information about as many as 13 arrests in just one judicial district—almost all performed by the Florida Highway Patrol.

Tr. 12:3-7, Dkt. 50. That number is likely a dramatic undercount, as FHP operates throughout Florida's 67 counties.

Plaintiffs raised these arrests with the Court during the preliminary injunction hearing on April 18, 2025, and Defendants took the position that the TRO does not bind any law enforcement agents in Florida. The Court extended the TRO, making explicit that it binds all law enforcement officers in the State. Dkt. 49 at 1. It also required the State to provide notice to all such officers. *Id.* at 2. The Attorney General issued two seemingly contradictory letters to law enforcement, the second of which appears to invite officers to ignore the Court's Order. Ex. A ("I cannot prevent you from enforcing [S.B. 4C,] where there remains no judicial order that properly restrains you from doing so . . . it is my view that no lawful, legitimate order currently impedes your agencies from continuing to enforce" S.B. 4C).

The Court ordered supplemental briefing regarding the proper scope of the preliminary injunction should the Court order one. Dkt. 49 at 2. Defendants filed a brief contending that the Court is powerless to enjoin law enforcement officers under Fed. R. Civ. P. 65(d)(2). Dkt. 56 ("Supp. Br.").

## ARGUMENT

Federal Rule of Civil Procedure 65(d)(2) provides that a court's injunction may bind not only "the parties" but also "the parties' officers, agents, servants, employees, and attorneys" as well as "other persons who are in active concert or participation with" the parties or their agents. This provision codifies the common law rule that courts may prevent enjoined parties from circumventing injunctions. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). The Eleventh Circuit has explained that Rule 65(d) "embodies, rather than limits the common law powers of the district court." *Robinson*, 83 F.4th at 878 (citation omitted); *see also United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972) (similar). A court's jurisdiction over nonparties who violate its injunctive order is "necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *see also* Fed. R. Civ. P. 71 (procedure for enforcing an order "against a nonparty" subject to it "is the same as for a party").

The Eleventh Circuit has accordingly recognized that under Rule 65(d), injunctions may apply to five categories of people and organizations: (1) the parties; (2) the parties' officers, agents, servants, employees, and attorneys; (3) other persons who are in active concert or

3

participation with the parties or their officers, agents, servants, employees, and attorneys; (4) others in "privity" with the parties, including "nonparties otherwise legally identifiable with the enjoined party"; and (5) "those who aid and abet those in privity with an enjoined party." *Robinson*, 83 F.4th at 878-79 (cleaned up).

In the context of this case—a challenge to the validity of a state statute brought against the Attorney General and prosecutors across the state—law enforcement agencies easily fit within several of these categories, any one of which is sufficient for an injunction in this case to bind them. First, law enforcement agencies are in active concert and participation with Defendants because the arrests they make are a condition precedent to, and can only be justified by reference to, prosecutions under S.B. 4C. Indeed, if prosecutors may not prosecute purported violations of S.B. 4C, the arrests are unlawful. Second, they are in privity with Defendants because, in this challenge to the validity of a state statute, law enforcement agencies and prosecutors have identical interests: enforcing and defending the facial validity of state law. Third, for similar reasons law enforcement's arrests aid and abet prosecutions under S.B. 4C. And fourth, at least in the context of this case, law enforcement officers are Defendants' agents because Attorney General Uthmeier has exercised control over their immigration-related activities. Thus, an injunction in this case properly covers law enforcement agencies.

Indeed, in comparable cases across the country, federal courts have enjoined criminal statutes without naming law enforcement. *See, e.g., Farmworker Ass'n of Fla. v. Moody*, 734 F. Supp. 3d 1311, 1344 (S.D. Fla. 2024) (enjoining "Defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with them."); *Idaho Org. of Res. Councils Inc. v. Labrador*, No. 25-cv-00178, ECF No. 16 at 9 (D. Idaho Mar. 27, 2025) ("Court enters a TRO preserving the status quo by prohibiting Defendants and their officers, agents, employees, attorneys, and any person who are in active concert or participation with them from enforcing the [challenged statute]."); *United States v. Iowa*, 737 F. Supp. 3d 725, 751 (S.D. Iowa 2024) ("Defendants are hereby ENJOINED from enforcing Senate File 2340 pending further proceedings."), *vacated as moot*, No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025); *United States v. Oklahoma*, 739 F. Supp. 3d 985, 1007 (W.D. Okla. 2024) ("Oklahoma is hereby ENJOINED from enforcing H.B. 4156 pending further proceedings."); *Valle del Sol Inc. v. Whiting*, No. 10-cv-1061, 2012 WL 8021265, at *7 (D. Az Sept. 5, 2012) ("preliminarily enjoining the enforcement of" challenged statute), *aff'd*, 732 F.3d 1006 (9th Cir. 2013). On

Defendants' view, those orders—each of which was (like this Court's TRO) predicated in part on the harms *of arrests*—were nullities as to any future arrests. That cannot be and is not correct.

The implications of Defendants' argument are dramatic—threatening to render scores of injunctions toothless. In cases challenging the validity of state criminal laws, courts routinely extend injunctions to law enforcements officers who are not parties to the suit. *See, e.g., Am. Booksellers Ass'n, Inc. v. Webb*, 590 F. Supp. 677, 693 (N.D. Ga. 1984) ("Likewise, the Attorney General's appearance in this case clearly served to represent the rights and interests of other subordinate state law enforcement officials, not named as parties to this action, who might seek to enforce the challenged Act. Accordingly, these state law enforcement officials also will be bound by the Court's injunction, and plaintiffs will thus enjoy state-wide interim relief from enforcement of the Act's display provisions."); *Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 909 n.9 (S.D. Ind. 2020) ("The Court finds that all law enforcement agencies and prosecutors in Indiana are acting in concert with the parties in the enforcement of [the invalid statute], and that this Order and the preliminary injunction applies to those entities as well."); *Rhode v. Bonta*, 713 F. Supp. 3d 865, 888 (S.D. Cal. 2024) (enjoining from implementing a law "Attorney General . . . and those duly sworn state peace officers and federal law enforcement officers who gain knowledge of this injunction order or know of the existence of this injunction order"); *Doe #1 v. Lee*, No. 16-cv-02862, 2021 WL 1264433, at *2 n.1 (M.D. Tenn. Apr. 5, 2021) (noting that "other agencies and law enforcement officers will need to abide by this injunction once they are provided notice"); *Doe v. Harris*, No. C12-5713, 2013 WL 144048, at *2 (N.D. Cal. Nov. 7, 2012) (noting that order applies "to all California state and local law enforcement officers") (citation omitted). Such orders reflect the settled principle that courts may enjoin those necessary to prevent ongoing enforcement of unconstitutional laws, even if they are not formally named as parties.

I.   **LAW ENFORCEMENT OFFICERS ARE IN ACTIVE CONCERT AND PARTICIPATION WITH DEFENDANTS.**

The Supreme Court has long made clear that Rule 65's "in active concert or participation" provision is essential to prevent enjoined parties from nullifying judicial orders by acting through others. *Regal Knitwear Co.*, 324 U.S. at 14. Without this safeguard, injunctions would be rendered hollow, courts would be powerless to enforce compliance, and equitable authority would collapse into an empty formality. Rule 65(d)(2) ensures that injunctions bind not only the named parties but also, with notice, those who are in active concert or participate in the

5

enjoined conduct. Courts have repeatedly recognized that binding nonparties in this way is not an exception to due process but a necessary feature of effective judicial relief. *Robinson*, 83 F.4th at 884.

There can be no doubt that under the plain text of the Rule, law enforcement acts in both active concert and participation with the defendant prosecutors and Attorney General. "Concert" means "agreement in a design or plan*." Jeffers v. United States*, 432 U.S. 137, 149 (1977). "Participation" means "taking part in something." *Participation*, Merriam Webster's Dictionary. Importantly, these terms do not require that an enjoined party exercise direct control over the third party. *See Blackard v. Memphis Area Med. Ctr. for Women, Inc.,* 262 F.3d 568, 576 (6th Cir. 2001) ("It is not necessary that the enjoined party control the third party in order for the third party to be bound by the injunction."); *Harris*, 2013 WL 144048, at *12 ("Even if the Attorney General does not have absolute control and direction over local law enforcement, it cannot be disputed that, as to the [challenged conduct], local law enforcement at least acts 'in active concert or participation with' the Attorney General, if not as her agent.").

Florida law enforcement's arrests under S.B. 4C are textbook examples of active concert and participation. Arrests and prosecutions are not separate, independent events—they are linked stages in the enforcement of criminal statutes. Indeed, "[a]n arrest is the initial stage of a criminal prosecution." *Terry v. Ohio*, 392 U.S. 1, 26 (1968). Without an arrest, there can be no prosecution; without prosecution, the statute cannot be enforced. Arresting individuals under S.B. 4C directly advances the common goal of enforcement of an unconstitutional law, and thus is in clear violation of the order under Rule 65. Likewise, an arrest for a violation of S.B. 4C can only be justified by reference to a future prosecution; police have no free-floating power to arrest for crimes independent of criminal prosecutions. *See Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020) ("It is axiomatic that seizures have purposes. When those purposes are spent, further seizure is unreasonable . . . [a]t the time of the founding and still today, the primary purpose of an arrest is to ensure the arrestee appears to answer charges."). And this Court has already recognized that arrests and prosecutions under S.B. 4C are coordinated harms. Dkt. 28 at 5 ("[T]here is a realistic probability that Individual Plaintiffs could be subject to arrest and prosecution under S.B. 4-C.").

Florida's institutional design eliminates any doubt. Florida's Constitution and statutes create an integrated framework in which arrests by law enforcement lead to prosecution by state

attorneys to achieve the State's objective of enforcing statutes like S.B. 4C. *See* Fla. Const. art. V, § 17 (State Attorneys prosecuting officers of trial courts); Fla. Stat. § 27.02(1) (State Attorneys prosecute criminal cases on behalf of the state); *id.* § 16.56(1)(a) (Attorney General and Statewide Prosecutor prosecute state crimes). Law enforcement officers making arrests under S.B. 4C are not acting independently; they are integral stages in the State's enforcement machinery.

The specific statutory authorities applicable to immigration arrests only sharpen the point. The Florida Department of Law Enforcement ("FDLE")—an agency overseen by the Governor and Cabinet, including the Attorney General—"shall *coordinate* and *direct* the law enforcement . . . responses . . . to immigration enforcement incidents within or affecting this state." *Id.* § 943.03(14) (emphasis added); Fla. Const. art. IV, § 4(a) (Cabinet composed of the Attorney General, among others); Fla. Stat. § 20.201(1) (establishing the Governor and Cabinet as head of FDLE). S.B. 4C is precisely the type of immigration enforcement initiative contemplated by this mandate, and the Attorney General—through his role in jointly overseeing FDLE—exercises direct authority over law enforcement's implementation of such immigration statutes.[1]

A similar structure governs the Florida Highway Patrol ("FHP"), which is within the Department of Highway Safety and Motor Vehicles ("DHSMV")—an agency overseen by the Governor and Cabinet, including the Attorney General. *See* Fla. Const. art. IV, § 4(a) (Cabinet composed of the Attorney General, among others); Fla. Stat. § 20.24(1) (establishing the Governor and Cabinet as head of DHSMV); *id.* § 20.24(2)(a) (establishing FHP within DHSMV). FHP's arrests under S.B. 4C are thus not the product of independent plans, but rather reflects coordinated steps within a unified enforcement apparatus.

Defendants do not grapple with the obvious application of the Rule's terms. Instead, they try to narrow the meaning of the Rule to cover only those in privity and who aid and abet named parties. Supp. Br. 9. As explained below, the Court's Order is proper under those standards. But, regardless, Defendants cite no case that has ever so held, particularly in the context of a suit against governmental defendants and seeking to bind other governmental defendants.

---

[1] Defendants rely on *Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198, 1204 & n.4 (11th Cir. 2021), Supp. Br. 6 n.2, but that case confirmed that the Attorney General was "*one of several heads* of the FDLE," and merely held that the Attorney General had neither enforced nor threatened to enforce the challenged gambling statute. *Support Working Animals, Inc.*, 8 F.4th at 1204 & n.4. That reasoning has no application here.

7

Rather, the language Defendants cite in cases like *Robinson* address the idea that Rule 65(d)(2) may have more limited application when it comes to *private* persons being bound by an order to which they are not a party and who might raise questions of due process. *See Robinson*, 83 F.4th at 881, 884 (discussing whether private persons have had their "day in court"); Supp. Br. 15 (Plaintiffs' interpretation "makes a mockery of due process"); *id*. at 9-10. But here, the injunction binds only state and local governmental officials in their *official* capacities. And as the Supreme Court has long held, a suit against a government official in their official capacity "is not a suit against the official but rather is a suit against the official's office," and thus "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because Plaintiffs here sued numerous state officers to bar enforcement of a state statute, there is no due process problem with enjoining *other* state officers from doing so as well. This Court's orders against nonparty state officers are likewise ultimately orders against the State itself. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). And the State, of course, has had and will continue to have full procedural opportunities to contest this Court's rulings. In any event, the State has no constitutional right to due process. *See South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966) (rejecting state's Due Process argument).

The Tenth Circuit's decision in *American Civil Liberties Union v. Johnson* illustrates this point. 194 F.3d 1149 (10th Cir. 1999). In that suit against the Governor and Attorney General, nonparty district attorneys challenged their inclusion in an injunction, urging that they "received no notice of, nor have they participated in, this action." *Id*. at 1163. The Court easily rejected the idea that those government officers had a separate right to a day in court, noting that "[t]his action is a facial challenge to a New Mexico statute, brought against the governor and attorney general of New Mexico in their official capacities," and thus "is an action against the State of New Mexico." *Id*. The court had no need to look beyond the plain language of the Rule when it came to binding official-capacity state officers in a facial challenge to a state law. So too here: Florida law enforcement officers arresting under S.B. 4C are acting in active concert and participation with Defendants and are properly bound by the Court's Order. *See also Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (indicating, in context of governmental defendant and nonparties, that a district court may enjoin "nonparties 'who are in active concert' with a defendant"); *Harris*, 2013 WL 144048, at *12 (applying plain text of rule to government nonparties); *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, No. 1:11-CV-99 JGM, 2013 WL

8

121016, at *2 (D. Vt. Jan. 9, 2013) (distinguishing between application of Rule 65 to private and governmental nonparties).

In short, law enforcement arrests under the enjoined provisions of S.B. 4C are not isolated or discretionary acts. They are indispensable acts that form part of a coordinated state policy—a common design and plan with Defendants—to enforce an unconstitutional statute. Law enforcement agencies and officers fall squarely within Rule 65's "in active concert or participation" provision, and they are bound by this Court's injunction.

## II.   LAW ENFORCEMENT OFFICERS ARE IN PRIVITY WITH THE ENJOINED DEFENDANTS AND ACTED TO ADVANCE THEIR INTERESTS.

Even if privity were required, it is satisfied here. Defendants argue otherwise, contending that law enforcement agencies are "separate legal entities" over which Defendants have no control. Supp. Br. 11. But even if that were true—which it is not, *see infra*—privity does not require formal agency or control. It simply requires that law enforcement agencies be represented, which is clearly the case here given that this lawsuit challenges the constitutionality of a state law. The challenge is really against the State and is defended by the State's Attorney General. *See Regal Knitwear Co.*, 324 U.S. at 14 (injunction "not only binds the [] defendant[s] but also those . . . represented by them").

"'Privity' is a flexible legal term, comprising several different types of relationships." *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004) (explaining that privity "can arise in a number of circumstances"). For the purposes of determining whether an injunction binds a nonparty, privity exists where it "would be reasonable to conclude that [the party's] rights and interests have been represented and adjudicated in the original injunction proceeding." *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017).

That standard is easily satisfied in this case: a challenge to the constitutionality of a state statute. As explained above, this suit against Defendants in their official capacities is effectively a suit against the State itself. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (*Ex parte Young* "doctrine has, . . . . been described as a legal "fiction" because it creates an imaginary distinction between the state and its officers"). Law enforcement officers in their official capacities are likewise representatives of the State exercising the powers of the State; they have no "rights and interests" in the enforcement of the challenged law apart from those already represented here. *ADT*, 853 F.3d at 1352. Moreover, Plaintiffs' claims are that the

9

state statute is facially unconstitutional. So law enforcement officers would have no arguments to make that would be any different from those advanced by Defendants. Indeed, Defendants *are* representing those officers in seeking to limit the Court's injunction. And they notably offer no actual arguments or interests that diverge from those of the State already advanced in this litigation—that is, the interest in enforcing S.B. 4C as much as possible.[2]

Defendants instead argue that prosecutors are generally not in privity with arresting officers because the prosecutor's interest is "that justice shall be done," while "officers have little if any direct interest in prosecution." Supp. Br. 12 & n.6 (internal quotation marks omitted). But Defendants' cited cases involve a very different context: lawsuits against arresting officers in their *personal capacity* for damages under § 1983. *See, e.g., Wilson v. Attaway*, 757 F.2d 1227, 1236-37 (11th Cir. 1985); *Hargis v. City of Orlando*, 586 F. App'x 493, 498 (11th Cir. 2014) (both cited by Defendants). In these cases, the arresting officer (as an individual human, rather than as an official representative of the state) has a uniquely *personal* interest in a damages case against them in their personal capacity. And the arresting officer does not stand in privity with the prosecutor in the criminal prosecution because "[p]rosecutors represent the interests of the people . . . not the interests of the arresting police officer," and police officers have no greater interest in the outcome of criminal proceedings "than any other citizen of [the] state." *Hargis*, 586 F. App'x at 498 (citation omitted). Thus, Defendants' cases are inapposite.

In sum, Defendants provide no reason why, under the circumstances of this challenge to the validity of a state law, law enforcement's interests would not be represented. Nor could they—indeed, surely the State's Attorney General is an adequate representative of the state itself, which is the true defendant of interest here. Accordingly, the injunction binds law enforcement agencies and officers. *Regal Knitwear Co.*, 324 U.S. at 14 (injunction not only binds defendants but also those represented by them).

### III.   LAW ENFORCEMENT AID AND ABET ENFORCEMENT OF S.B. 4C.

Rule 65(d)(2) also includes those who aid, abet, cooperate with, or facilitate the enjoined conduct. *Regal Knitwear Co.*, 324 U.S. at 14; *Robinson*, 83 F.4th at 885; *ADT*, 853 F.3d at 1352. Defendants attempt to cabin this rule by importing rigid notions of criminal accomplice liability into civil injunction proceedings. Supp. Br. 13-14. But this approach misapprehends fundamental

---

[2] To the extent any law enforcement agencies and officers had additional or different arguments, they could always file an amicus brief.

principles of civil aiding and abetting law.

Indeed, as the Supreme Court recently reaffirmed in *Twitter, Inc. v. Taamneh*, civil aiding and abetting does not import all the immutable components of its criminal counterpart. 598 U.S. 471, 486 (2023) (citing *Halberstam v. Welch*, 705 F.2d 472, 489 (D.C. Cir. 1983)). Rather, civil liability turns not on rigid criminal frameworks but on whether the nonparty "consciously, voluntarily, and culpably participate in or support the relevant wrongdoing." *Id.* at 505.

Florida law enforcement officers here plainly participated in violating this Court's injunction by arresting individuals under the enjoined provisions of S.B. 4C. Each arrest could only be justified as a predicate to prosecution under the enjoined law—but such prosecution would, of course, require a party defendant to directly violate the Court's injunction, *supra*. By initiating the enforcement chain, law enforcement sought to induce and further violations of the Court's injunction by the party Defendants. *See Twitter*, 598 U.S. at 506 (explaining that aiding and abetting attaches when assistance materially furthers wrongful acts); *Goya Foods, Inc v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002) ("the challenged action must be taken for the benefit of, or to assist").

Moreover, the Attorney General, through his joint role overseeing the FDLE, has clear authority to direct the law enforcement response to S.B. 4C. Yet he has failed to exercise that authority to bring state law enforcement into compliance. To the contrary, the Attorney General has seemingly encouraged continued enforcement of the enjoined provisions, issuing a letter to law enforcement agencies declaring his "view that no lawful, legitimate order currently impedes your agencies from continuing to enforce Florida's new illegal entry and reentry laws." Ex. A.

Finally, Defendants' reliance on *Alemite Mfg. Corporation v. Staff* is misplaced. Supp. Br. 14. That case stands for the proposition that an injunction may not "enjoin the world at large" absent aiding and abetting. 42 F.2d 832, 832-33 (2d Cir. 1930). But the Court has not sought to do so; rather, it has barred the State's officers from enforcing an unconstitutional statute. Where, as here, law enforcement officers assist in the enforcement of an invalidated statute, they fall well within Rule 65(d)(2).[3] *See Waffenschmidt*, 763 F.2d at 714 (holding nonparties aided and

---

[3] *Jacobson* is of no help to Defendants. It confirmed that "a district court may bind nonparties 'who are in active concert' with a defendant" so long as "a plaintiff validly invokes federal jurisdiction by satisfying the traceability and redressability requirements of standing against a defendant." 974 F.3d at 1255. There, the Court found a lack of standing against the named official. *Id*. Here, as the Court already held, Plaintiffs have standing.

abetted enjoined parties); *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 377 (10th Cir. 1996) (similar).

### IV.    LAW ENFORCEMENT OFFICERS ARE DEFENDANTS' AGENTS AND SERVANTS.

Finally, in the context of this case, law enforcement officers are Defendants' agents and servants because Defendants exercise control over their conduct. *See Regal Knitwear Co.*, 324 U.S. at 14 (injunction binds "those . . . subject to [Defendants'] control").

Florida law requires that "any official responsible for directing or supervising [state and local law enforcement agencies] shall use best efforts to support the enforcement of federal immigration law." Fla. Stat. § 908.104(1). In Defendants' view, S.B. 4C constitutes an effort to assist in the enforcement of federal immigration law. Dkt. 40 at 1 (asserting S.B. 4C "aid[s] the United States in curbing illegal immigration"). And contrary to Defendants' contention that they lack "the power to discipline" local law enforcement, Supp. Br. 7, Florida law allows the Attorney General to suspend and to file suit against a local law enforcement agency officers for declaratory or injunctive relief for a violation of these provisions. Fla. Stat. § 908.107(2).

Relying on these laws, the Attorney General has repeatedly threatened local officials who fail to fully embrace immigration enforcement, even threatening to remove these officials from office. *See, e.g.*, Ex. C (claiming mayor had violated Florida laws described above and threatening that "[f]ailure to abide by state law may result in the enforcement of applicable penalties, including but not limited to being held in contempt, declaratory or injunctive relief, and removal from office . . . ."); Ex. D (claiming city council had violated Florida laws described above and making same threats of being held in contempt, declaratory or injunctive relief, and removal from office); Ex. G (threatening that if a local official "takes action to impede or prevent law enforcement from . . . get[ting] these people back where they came from, then I do believe the law is violated and that there will be penalties for that").

Additionally, Defendant Uthmeier exercises control over whether law enforcement enforces an invalid law because, as Florida's "chief state legal officer," Fla. Const. art. IV § 4, the Attorney General "[g]ives an official opinion and legal advice in writing on any question of law[,]" Fla. Stat. § 16.01. Indeed, in this very case, the Attorney General wrote to all law enforcement agencies on April 18, 2025 requesting that they "please instruct [their] officers and

agents to comply with [this Court's] directives." Ex. B.[4] Just days later, on April 23, 2025—and prior to this Court issuing any ruling on these issues—the Attorney General sent a follow-up letter expressing his "view that no lawful, legitimate order currently impedes . . . agencies from continuing to enforce Florida's new illegal entry and reentry laws." Ex. A. These letters only underscore Defendants' authority and control over law enforcement agencies and their enforcement of the statute at issue here. Thus, Defendants exercise control over law enforcement.

## V.    LAW ENFORCEMENT OFFICERS ARE LIABLE FOR ARRESTING UNDER AN ENJOINED LAW.

Finally, it is worth noting the implication of Defendants' position for law enforcement officers themselves. Law enforcement may detain or arrest individuals only when supported by reasonable suspicion or probable cause of a *crime*. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (stating reasonable suspicion and probable cause require "belief that the suspect had committed or was committing a crime"). But this Court enjoined S.B. 4C's illegal entry and reentry provisions because they were preempted and thus are now "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("It is basic to this constitutional command that all conflicting state provisions be without effect."); *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998) ("state law that conflicts with federal law is without effect." (citation omitted)). Arrests under those enjoined provisions are therefore not just properly barred by this Court's orders under Fed. R. Civ. P. 65(d)(2); they are also unconstitutional. Courts have long recognized that arrests made pursuant to enjoined or invalidated statutes violate the Fourth Amendment because such statutes cannot furnish probable cause. *See Michigan v DeFilippo*, 443 U.S. 31, 38 (1979) ("Police are charged to enforce laws until and unless they are declared unconstitutional."); *Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005) (enforcing an unconstitutional state statute "caused the deprivation of [plaintiff's] constitutional rights").

Furthermore, arrests on probable cause of a crime are only reasonable if the officer can expect that a prosecution for that crime may follow. After all, the entire point of criminal arrests are for criminal prosecutions. If the police know that no prosecution will follow, because all such prosecutions statewide are barred by this Court's order, then the basis for arrest disappears and it becomes a Fourth Amendment violation. *See Williams*, 967 F.3d at 634.

---

[4] States attorneys named as Defendants in this case have similarly instructed law enforcement to refrain from enforcing S.B. 4C. *See* Ex. E.

Law enforcement officers executing arrests under S.B. 4C are therefore acting without legal authority and in direct violation of the Fourth Amendment. Yet Defendants seemingly encouraged law enforcement to proceed with such arrests by asserting that nothing "impedes [law enforcement] agencies from continuing to enforce Florida's new illegal entry and reentry laws." Ex. A. Defendants' irresponsible conduct appears to invite a wave of unlawful arrests, civil rights violations, and inevitable litigation. The Court should put an end to this once and for all.

## CONCLUSION

The Court should conclude that all orders it has issued and may issue can properly apply to all law enforcement officers in Florida.

Date: April 26, 2025

Respectfully submitted,

/s/ Amien Kacou
Amien Kacou (FL Bar No. 44302)
Amy Godshall (FL Bar No. 1049803)
Daniel B. Tilley (FL Bar No. 102882)
ACLU FOUNDATION OF FLORIDA, INC.
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2700
akacou@aclufl.org
agodshall@aclufl.org
dtilley@aclufl.org

Cody Wofsy*
Spencer Amdur*
Hannah Steinberg*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

Paul R. Chavez (FL Bar No. 1021395)
Evelyn Wiese (CA Bar No. 338419)*
Christina Isabel LaRocca (FL Bar No. 1025528)
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 309
Miami, FL 33166
(305) 576-6273
pchavez@aijustice.org
ewiese@aijustice.org
clarocca@aijustice.org

Miriam Haskell (FL Bar No. 69033)
Alana Greer (FL Bar No. 92423)

14

15

*\* Admitted pro hac vice*

*Counsel for Plaintiffs*

Will Mann (FL Bar No. 1058086)
COMMUNITY JUSTICE PROJECT, INC.
3000 Biscayne Blvd., Suite 106
Miami, Florida 33137
T: (305) 907-7697
miriam@communityjusticeproject.com
alana@communityjusticeproject.com
will@communityjusticeproject.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished by

electronic service through the CM/ECF Portal on April 26, 2025, to all counsel of record.

/s/ / *Amien Kacou*
Amien Kacou
