UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FLORIDA IMMIGRANT COALITION, *et al.*, <br> *Plaintiffs*, <br> v. <br> JAMES UTHMEIER, in his official capacity as Attorney General for the State of Florida, *et al.*, <br> *Defendants*. | No. 1:25-cv-21524-KMW |

**DEFENDANTS' MOTION FOR A STAY
PENDING APPEAL OF PRELIMINARY INJUNCTION**

In 2025, Florida enacted SB 4-C. To aid the United States in curbing illegal immigration (and to quell the rush of fentanyl trafficking and gang violence that accompanies it), SB 4-C criminalizes the entry into Florida of those who have illegally entered the United States by evading federal inspection. Fla. Stat. §§ 811.102, 811.103. That law tracks federal law to a tee. *See* 8 U.S.C. §§ 1325(a), 1326(a)(2). It also retains common federal-law defenses and says nothing of who should be admitted or removed from the country. That law does nothing more than exercise Florida's inherent sovereign authority to protect its citizens by aiding the enforcement of federal immigration law. That is, SB 4-C "follow[s] the federal direction" about the "appropriate standards for the treatment of [aliens]." *Plyler v. Doe*, 457 U.S. 202, 219 n.19 (1982).

On April 29, 2025, this Court granted a preliminary injunction. DE67. This Court accepted Plaintiffs' arguments that the Plaintiffs have standing and a cause of action to challenge that law, *id.* at 5-12 & n.8, that federal law facially preempts SB 4-C, *id.* at 13-25, and that SB 4-C is facially unconstitutional under the Dormant Commerce Clause doctrine, *id.* at 25-26. The Court also granted provisional class certification, certifying a class for everyone who would ever be subject to SB 4-C. *Id.* at 28-37. The Court thus preliminarily enjoined enforcement of the statute, and did

so for every person by finding that every single possible application of SB 4-C was unlawful. *Id.* at 47–48. The defendant-side of who the injunction bound was also broad—this Court ruled that beyond the named Defendants in the case, all law enforcement in the State were also bound to adhere to this Court's order because it "found that there is a substantial likelihood that S.B. 4-C is unconstitutional." *Id.* at 46, 48. All Defendants—the Florida Attorney General, Florida Statewide Prosecutor, and all Florida State Attorneys—have appealed. DE68.

Defendants respectfully requests that the Court stay that injunction pending that appeal. As Defendants explained in their response to the motion for a preliminary injunction, Plaintiffs lack standing, lack a cause of action, federal law does not facially preempt SB 4-C, and the Dormant Commerce Clause does not condemn that law on its face either. *See* DE40 at 5-20. And even if the Court disagrees that a stay is warranted because of the merits, it should at least stay its injunction pending appeal to the extent it binds Florida's law-enforcement officers, who are neither parties nor the agents of Defendants, and who are not currently acting in concert with Defendants to enforce SB 4-C. Such expansive relief contravenes both Federal Rule of Civil Procedure 65 and established remedial limits on the Court's authority. DE56.

## ARGUMENT

The Court may stay its own injunction order pending appeal. Fed. R. Civ. P. 62(d); *see* Fed. R. App. P. 8(a)(1)(A) (requiring parties "ordinarily" to "move first in the district court" for such relief). Whether to grant a stay pending appeal turns on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *League of Women Voters of Fla. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (citation omitted). Where "the balance of equities . . . weighs heavily in favor of granting the stay," a

stay may be "granted upon a lesser showing of a 'substantial case on the merits.'" *Id.* (citation omitted) (omission in original). Each of the stay factors weighs toward granting a stay.

Scope of relief aside, Defendants are likely to succeed because no Plaintiff has standing, no Plaintiff has a cause of action to enforce federal law, because SB 4-C is fully consistent with federal law, and because SB 4-C does not violate the Dormant Commerce Clause. Though this Court disagreed with those arguments in granting a preliminary injunction, the issues are at the very least close enough to warrant a stay.

Start with standing. The individual, unnamed Plaintiffs lack standing because they have failed to allege sufficient facts to know whether they are presently engaging, or will imminently engage, in conduct that violates SB 4-C. At best, they allege speculative travel plans. DE40 at 6. Nor do they have any legally protected interest in vindicating illegal, unrelated conduct. *Id.* And their standing to sue the state attorneys is far from clear, as those individual Plaintiffs could be prosecuted only by the state attorney from the jurisdiction where their crimes were committed. *Id.* at 7. As for the organizational plaintiffs, their associational standing hinges on the individual Plaintiffs who, again, lack standing, and their organizational standing based on a diversion of resources lives or dies on nothing more than their bald assertion that they will have to spend money to combat the effects of SB 4-C. *Id.* at 7-8; *see also City of South Miami v. Governor*, 65 F.4th 631, 639 (11th Cir. 2023) (an organization cannot "spend its way into standing"). Even if those organizations could show Article III standing, they still have not met the requirements of third-party standing to raise the rights of others—namely they show no hindrance to people affected by SB 4-C from raising their own rights. DE40 at 8.

Next, a cause of action. Plaintiffs need a cause of action to bring their preemption claim— but they lack an express, implied, or equitable cause of action to enforce the INA. As explained in

Defendants' response, the INA forecloses all of those theories by assigning the enforcement of the INA to the Secretary of Homeland Security or other identified federal officials. *Id.* at 8-11. That detailed enforcement regime reveals a congressional intent not to bestow a private right of action. The background of criminal and immigration enforcement, where private rights are at their lowest, only serves to reinforce that conclusion. *Id.* at 10. Nor does the INA give personal rights necessary to create a cause of action. *Id.* at 10-11. At the very least, the organizational Plaintiffs lack a cause of action because their claim departs drastically from the historic moorings of equitable causes of action that plaintiffs traditionally used to preemptively raise defenses to enforcement proceedings at law. *Id.* at 11.

On the merits, Plaintiffs have also failed on their burden to show that SB 4-C is facially preempted by federal immigration law, either by field or conflict preemption. *Id.* at 12-18. That facial theory requires that SB 4-C have no valid applications. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). On field preemption, their arguments for constitutional and statutory preemption depart from history. DE40 at 13-14. And all they identify as evidence of statutory preemption is the fact that Congress also criminalized illegal entry into the country and vague federal interests in immigration and foreign affairs. *Id.* at 14-15. But neither argument is viable after the Supreme Court decision in *Kansas v. Garcia*, 589 U.S. 191 (2020); and their analogies to *Arizona v. United States*, 567 U.S. 387 (2012), and *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012), that discussed different fields are inapt. DE40 at 14-16. As for conflict preemption, Plaintiffs have not come close to establishing the high burden of demonstrating facial preemption. Florida has not regulated immigration, created immigration classifications, or interfered with federal enforcement discretion inconsistent with congressional purposes. *Id.* at 16-18.

SB 4-C is also not facially violative of the Dormant Commerce Clause. *Id.* at 18-20. The theory is inferred from congressional silence and, at its "very core," is concerned with preventing economic discrimination between sister states. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023). But Florida's law does not accomplish economic protectionism—it is a criminal provision premised on the moral, social, and criminal effects of illegal immigration. Nor does it discriminate between in- and out-of-state economic interests: Both Florida and non-Florida residents are equally subject to the law's strictures. DE40 at 18-19. Plaintiffs' lead case for their Dormant Commerce Clause argument, *Edwards v. California*, 314 U.S. 160 (1941), confirms that point, as the law there barred the transportation of "indigent *non-residents*," and thus expressly discriminated against out-of-state economic interests. *Id.* at 174 (emphasis added). And Plaintiffs cannot possibly make out a Dormant Commerce Clause claim based on conduct that Congress itself made illegal. DE40 at 19. Even if all that were wrong, Florida's law is still justified by legitimate local purposes that no adequate alternative regulation could serve. *Id.* at 19-20.

Should the Court reject those arguments on the merits, the Defendants have a strong likelihood of succeeding in their contention that any injunction must be limited to the parties. This Court's injunction binding nonparty law enforcement officers in Florida sweeps too broadly. As explained in Defendants' supplemental brief, Rule 65 limits the scope of injunctive relief to the parties, individuals who are subject to their control and authority, and those who help the parties evade an injunction. DE56 at 4-6. Law enforcement officers in Florida do not fit into any of those categories. *Id.* at 6-14. What is more, the equitable authority of the federal courts is "bounded by both historical practice and traditional remedial principles," *Georgia v. President of the United States*, 46 F.4th 1283, 1303 (11th Cir. 2022), and one of those principles is that "injunctive relief operates on specific parties," *id.* at 1307; *see also Scott v. Donald*, 165 U.S. 107, 117 (1897)

(finding an injunction "objectionable because it enjoin[ed] persons not parties" and who were not "represent[ed]" by or in a "conspiracy" with the named defendants). And historically, the most analogous equitable remedy—the injunction to stay proceedings at law—was "directed only to the parties." 2 Joseph Story, *Commentaries on Equity Jurisprudence as Administered in England and America* § 875, at 166 (2d ed. 1839).

Finally, the balance of the equities heavily favors staying the injunction. And because those factors strongly favor a stay, Defendants may succeed under the "lesser showing" of a "substantial case on the merits." *League of Women Voters*, 32 F.4th at 1370. First, Defendants will suffer irreparable harm without a stay. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration accepted) (citation omitted). Second, the "balance of harms" and the "public interest" both favor a stay as well. *Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020). If the injunction were not stayed, the State would suffer the sovereign harm of having one of its laws enjoined, while continuing to suffer from the effects of illegal immigration. Meanwhile, the individual Plaintiffs continue with their violations of federal and state law and the organizational Plaintiffs seek to further that unlawfulness. *See* DE4-4 ¶¶ 8-9 (VV seeks to work without authorization); DE4-5 ¶ 7 (YM seeks to travel out of state at an unspecified time); DE4-2 ¶ 20. While the Defendants realize the Court has rejected its arguments on the merits, the Defendants have at the very least made out a "substantial case." *League of Women Voters*, 32 F.4th at 1370. Combined with the equities, that showing warrants a stay.

## CONCLUSION

For these reasons, the Court should stay the injunction pending appeal.

## CERTIFICATE OF CONFERRAL

Defendants conferred with all parties prior to filing this motion. Plaintiffs oppose the motion.

/s/ <u>Robert S. Schenck</u><br>Assistant Solicitor General

Respectfully submitted on April 30, 2025.

JAMES UTHMEIER
  *Attorney General*

/s/ <u>Robert S. Schenck</u>
JEFFREY P. DESOUSA (FBN 110951)
  *Acting Solicitor General*
NATHAN A. FORRESTER (FBN 1045107)
DAVID M. COSTELLO (FBN 1004952)
  *Chief Deputy Solicitors General*
ROBERT S. SCHENCK (FBN 1044532)
CHRISTINE PRATT (FBN 100351)
  *Assistant Solicitors General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*nathan.forrester@myfloridalegal.com*
*david.costello@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on April 30, 2025, to all counsel of record.

/s/ *Robert S. Schenck*
Assistant Solicitor General