UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

FLORIDA IMMIGRANT COALITION, *et al.*,

    *Plaintiffs*,

v.

JAMES UTHMEIER, in his official capacity as Attorney General for the State of Florida, *et al.*,

    *Defendants*.

No. 1:25-cv-21524-KMW

**DEFENDANTS' RESPONSE OPPOSING PLAINTFFS' MOTION
FOR LEAVE TO PROCEED ANONYMOUSLY**

"A lawsuit is a public event." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1242 (11th Cir. 2020). "[T]hose using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). Those institutions exist "for the public to serve the public interest," and holding "secret court proceedings" is "anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). Part of the "constitutionally-embedded presumption of openness in judicial proceedings," *Chiquita*, 965 F.3d at 1247, includes the public's right and "legitimate interest in knowing all of the facts involved" in a case, "including the identities of the parties," *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992). If a plaintiff wishes to challenge the legislative enactments of the people's representatives, she should do so openly and publicly. Indeed, adult plaintiffs seeking to challenge Florida laws regarding controversies of all sorts—including abortion and mask mandates during a pandemic—did not seek anonymity in those cases.[1] Immigration cases should be no different. *See,*

---

[1] *See Planned Parenthood of Sw. & Cent. Fla. v. State*, 2022 CA 912, 2022 WL 2436704 (Fla. 2nd Cir. Ct. Jul. 5, 2022) (15-week abortion ban); *Health Freedom Def. Fund, Inc. v. Biden*, 572 F. Supp. 3d 1257 (M.D. Fla. 2021) (mask mandate); *Green v. Alachua Cnty.*, 323 So.3d 246 (Fla. 1st Dist. Ct. App. 2021) (same).

*e.g., Farmworker Ass'n of Fla. v. DeSantis*, 716 F. Supp. 3d 1312, 1326 (S.D. Fla. 2024) (Altman, J.); *Doe v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004) (holding that "immigration status is not 'a matter of sensitive and highly personal nature'" worthy of atypical protection).

Plaintiffs nevertheless maintain that they can bypass the Federal Rules of Civil Procedure, this District's local rules, and the longstanding presumption of openness in court proceedings that require parties to name themselves. *See* Fed. R. Civ. P. 10(a); S.D. Fla. R. 5.1(d); *Chiquita*, 965 F.3d at 1247.

They are wrong. Because (1) there isn't *more* reason to grant a plaintiff's request for anonymity when they sue the government; (2) they would not be forced to disclose information of the "utmost intimacy" if they use their names; and (3) they fail to allege specific facts to establish that they face a real threat of physical harm, Plaintiffs should proceed under their names. This Court should deny Plaintiffs' motion to proceed anonymously, deny their request to file their declarations under seal, and strike their complaint.[2]

## BACKGROUND

Plaintiffs challenge Florida's SB 4-C. That law criminalizes the entry of aliens into the State who have illegally entered the country under federal law. Fla. Stat. §§ 811.102, 811.103. Plaintiffs challenge that law on two grounds. DE1 ¶¶ 68–77. They say federal immigration preempts SB 4-C. DE1 ¶ 68–73. They also claim that SB 4-C is violative of the Dormant Commerce Clause doctrine. DE1 ¶ 74–77.

Two Plaintiffs seek to proceed anonymously: YM and VV. DE33 at 2–3. Both Plaintiffs allege to have "entered the United States without inspection" some years ago and currently reside

---

[2] Plaintiffs treat their request to file declarations under seal as "necessary for the same reasons" as proceeding anonymously. DE33 at 11. As such, Defendants do not separately address the issue of filing under seal.

in Florida. DE4-5 ¶¶ 2, 5; DE4-4 ¶¶ 2, 5–6. YM has "applied for a U visa,"—that is, a visa for being a witness to a crime—but the federal government has not yet resolved her application. DE4-5 ¶ 6.

YM lives in Gainesville, Florida, with her minor son. DE4-5 ¶¶ 2–3. She has "applied for a U visa,"—that is, a visa for being a witness to a crime—but the federal government has not yet resolved her application. DE4-5 ¶ 6. YM "generally leave[s] Florida for family vacation approximately twice a year" and "plan[s] to continue this travel going forward." DE4-5 ¶ 7. She does not wish to disclose her name because she fears being separated from her child if she is detained by authorities; retaliation by her son's father if he "learns the details" of her U visa application; retaliation by federal, state, or local law enforcement; and members of the public directing "social stigma and harassment" at both her and her son if their identities become public. DE4-5 ¶ 8–9.

VV has reentered the United States after deportation, and she has not sought "to adjust [her] status" since. DE4-4 ¶¶ 5–7. She lives in Immokalee, Florida, and "frequently travels outside of Florida for her work." DE5 at 4. VV does not wish to disclose her name because she fears retaliation by federal, state, or local law enforcement, as well as members of the public directing "social stigma and harassment" at both her and her children if her identity becomes public. DE4-4 ¶ 10–11.

## LEGAL STANDARD

In codifying the constitutional presumption of openness in judicial proceedings, Federal Rule of Civil Procedure 10 requires "[e]very pleading" to "name all the parties." Fed. R. Civ. P. 10(a). Rule 10 reflects more than administrative convenience; it embodies the nation's tradition that "[l]awsuits are public events" and the public's "legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 322, 324 (11th Cir.

1992). That interest is protected by "strong presumption" against anonymity. *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011).

Thus, only an "exceptional case" warrants anonymity. *Frank*, 951 F.2d at 323. Whether a situation is "extraordinary" depends on whether a plaintiff can demonstrate that the totality of circumstances reveals "a substantial privacy right [that] outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020). Courts consider whether the plaintiff "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Id*. The presence of any one factor isn't dispositive, the factors are not exclusive, and a court should "carefully review *all* the circumstances of a given case" to see whether a plaintiff's privacy interests outweigh the constitutional presumption of openness. *See Frank*, 951 F.2d at 323. Other factors include whether the plaintiff is a minor, whether he faces a real threat of physical harm absent anonymity, and whether anonymity would pose a "unique threat of fundamental unfairness to the defendant." *Plaintiff B*, 631 F.3d at 1316.

For their part, Plaintiffs must set forth specific evidence to merit anonymous treatment. It is not sufficient for them to allege merely "[g]eneral evidence." *Chiquita*, 965 F.3d at 1248.

## ARGUMENT

Plaintiffs failed to demonstrated that the totality of the circumstances weigh in favor of proceeding anonymously. At best, Plaintiffs perhaps allege an intention to engage in illegal activity, but given the other factors—including "the most important factor" of the intimacy of the information involved—Plaintiffs have failed to rebut the constitutional presumption of openness in judicial proceedings. *Farmworker Ass'n of Fla. v. DeSantis*, 716 F. Supp. 3d 1312, 1317 (S.D. Fla. 2024).

I. **THE GOVERNMENT-ACTIVITY PRONG WEIGHS NEUTRALLY IN THE ANALYSIS.**

Plaintiffs take for granted that the first *Chiquita* factor supports anonymity merely because they challenge government activity in this action. DE33 at 4. They claim that this factor favors them "because governments, unlike private individuals, do not suffer reputational or economic harm from defending a civil action." *Id.*

Not so. Suing the government "does not" in itself "weigh in favor of granting [their] request for anonymity." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). Rather, this factor simply means that there is "*more* reason *not* to grant [a plaintiff's] request for anonymity" when that plaintiff is "suing private individuals rather than a government agency." *Id.* That one-way ratchet does not mean that there is automatically "more reason" to grant a plaintiff's request for anonymity when the plaintiff is suing the government. *Id.* Far from it, as "[n]o published opinion that . . . has ever permitted a plaintiff to proceed anonymously merely because the complaint challenged government activity." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 686 (11th Cir. 2001).

Thus, the first factor in this case "doesn't tilt to either side." *Farmworker*, 716 F. Supp. 3d at 1317 (finding that illegal immigrants challenging a state law failed to justify anonymous treatment under the *Chiquita* factors).

II. **USING THEIR REAL NAMES WOULD NOT COMPEL PLAINTIFFS TO DISCLOSE INFORMATION OF UTMOST INTIMACY.**

Turning to "the most important factor," *id.* at 1318, Plaintiffs insist that their immigration statuses and histories, as well as the relief they seek, are "sensitive personal information of 'utmost intimacy.'" DE33 at 5. They are wrong for three reasons.

First, "immigration status is *not* 'information of the utmost intimacy.'" *Farmworker*, 716 F. Supp. 3d at 1320. In this context, "'information of the utmost intimacy' is a limited category." *Id.* at 1318. Immigration status is historically not within that category. *Id.* at 1320. Other courts

5

have reached the same conclusion. *Doe I v. City of Alabaster*, 2012 WL 13088882, at *5 (N.D. Ala. Apr. 26, 2012) ("[U]ndocumented status . . . is not highly sensitive nor personal[.]"); *Doe v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004) ("[U]nlawful or problematic immigration status is simply not the type of 'personal information of the utmost intimacy' that warrants abandoning the presumption of openness in judicial proceedings."); *Day v. Sebelius*, 227 F.R.D. 668, 679 (D. Kan. 2005) ("The court . . . appreciates the fact that undocumented alien status is a sensitive matter. However, particularly in this day and age . . . this sort of information strikes the court as fundamentally distinguishable from the type of highly personal information that has led other courts to grant leave to proceed anonymously[.]").

Rather, information of the "utmost intimacy" has been "confined" to a few, repeatedly recognized categories, typically about a person's sexuality or medical information. *Farmworker*, 716 F. Supp. 3d at 1318–19 (quotation omitted). Courts tend to find information to be of "utmost intimacy" only in cases adjudicating sexual crimes, involving personal details about sexuality, or involving *Griswold*-and-*Roe-v.-Wade*-type privacy questions. *See Frank*, 951 F.2d at 324 (concluding that courts tend to permit anonymous treatment in cases involving "mental illness," "homosexuality," and "transsexuality"); *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (utmost intimacy is found in cases involving "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families"); [3] *Plaintiff B*, 631 F.3d at 1316–17; *Farmworker*, 716 F. Supp. 3d at 1319 (Courts are "reluctant to grant anonymity in cases (like ours) that *don't* involve abortion, the use of birth control, homosexuality, sexually-exploited minor children, or personal religious beliefs[.]") (citing *Doe #1 v. Austin*,

---

[3] *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (decisions of the old Fifth Circuit on or before September 30, 1981, are binding).

6

2022 WL 2116797, at *3 (M.D. Fla. June 10, 2022); *NRA v. Bondi*, 2018 WL 11014101, at *5 (N.D. Fla. May 13, 2018) (Walker, C.J.) (opining that "[o]ne would think the standard covers more, but apparently it doesn't"). It is not enough, therefore, that a type of information "be 'intimate' in the colloquial sense." *Farmworker*, 716 F. Supp. 3d at 1318. Because Plaintiffs' personal information does not fall into any of the categories above, using their real names would not force them to disclose information of "utmost intimacy," as the law understands that phrase.

Seeking to avoid that conclusion, Plaintiffs cite cases brought by anonymous illegal aliens. DE33 at 5–6. They claim that those cases establish that courts "regularly recognize" the ability to proceed anonymously based on immigration status. *Id.* But not one of those cases controls whether this Court should grant anonymity: (1) none are binding because they are either district-court or out-of-circuit cases;[4] (2) defendants did not oppose anonymity;[5] (3) the court did not address anonymity;[6] and (5) one of those cases involved minors and implicated other information in the limited categories courts view as "intimate," so immigration status had significantly less relevance.[7] *See Farmworker*, 716 F. Supp. 3d at 1319–20 (distinguishing many of the same cases discussed by Plaintiffs).

---

[4] *See, e.g.*, *Lozano v. City of Hazelton*, 620 F.3d 170, 194–95 (3d Cir. 2010), *vacated on other grounds*, 563 U.S. 1030 (2011).

[5] *See Doe v. Hobson*, 300 F.R.D. 576, 578 (M.D. Ala. 2014) ("Defendants do not firmly oppose or support Plaintiffs' request to withhold their identities from the public . . . .").

[6] *Cent. Ala. Fair Hous. Ctr. v. Magee*, 835 F. Supp. 2d 1165, 1169 (M.D. Ala. 2011); *Ga. Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317, 1321–22 (N.D. Ga. 2011), *aff'd in part, rev'd in part on other grounds sub nom. Ga. Latino All. for Hum. Rts. v. Gov. of Ga.*, 691 F.3d 1250 (11th Cir. 2012); *Plyler v. Doe*, 457 U.S. 202 (1982).

[7] *See R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 370–72 (S.D.N.Y. 2019) (involving immigrants under the age of 21 who were "victims of abuse, neglect, or abandonment" and who could not be reunited with their parents); *see also id.* at 363 (noting that the named plaintiff was a sexually exploited minor child).

Second, Plaintiffs seek to double-count their arguments on another *Chiquita* factor—the one dedicated to challenging criminal prohibitions. Though relying on cases that supposedly "recognize that revealing someone's immigration status could lead to criminal prosecution, harassment, and intimidation," DE33 at 5 (quotation omitted), a risk of prosecution should not be conflated with information of utmost intimacy. *See Farmworker*, 716 F. Supp. 3d at 1319. Risk of prosecution as a result of one's immigration status does not fit into any of the established limited categories of intimate information. Facts are not per se intimate because their disclosure might risk prosecution—otherwise a person's choice to engage in drug trafficking or conspiracy to commit murder is "intimate." That cannot be right. Plaintiffs should not be permitted to recycle their argument from the third *Chiquita* prong about the risk of criminal prosecution, and crediting these arguments "a second time" for this argument "inappropriately" "lessen[s]" their legal burden under *Chiquita*. *Id.*

Third, the utmost intimacy prong does not weigh in Plaintiffs' favor simply because a plaintiff applied for relief on the basis of certain humanitarian grounds. DE33 at 6–7. Disclosing that a plaintiff applied for a U visa may be intimate "in the colloquial sense," *Farmworker* 716 F. Supp. 3d at 1318, but it does not weigh in Plaintiffs' favor here because (1) the mere fact that a Plaintiff is seeking a special visa as a victim of a sexual crime does not convert this case into one adjudicating issues of sexuality or privacy, and (2) a Plaintiff need not include the fact that she has sought such a visa in this case. Thus, until their immigration status changes, Plaintiffs should not be allowed to "freely volunteer[]" information just so they can "bypass the requirements of Fed. R. Civ. P. 10." *Vicente v. Barnett*, 2005 WL 8160475, at *2 (D. Ariz. Oct. 3, 2005) (finding that the plaintiffs' claims did not require them to disclose their immigration status, and they should not be allowed to "freely volunteer[]" such information to ensure they can proceed anonymously).

8

Moreover, the plaintiffs in *Farmworker* similarly wished to proceed anonymously to avoid revealing the identity of a child who had suffered "child maltreatment" and applied for a special visa on that basis, but that fact was insufficient to persuade the court there to grant anonymity, *Farmworker* 716 F. Supp. 3d at 1320 (quotation omitted), and its insufficient to grant it here as well.

### III. PLAINTIFFS FAIL TO ALLEGE SPECIFIC FACTS TO ESTABLISH THAT THEY FACE A REAL THREAT OF PHYSICAL HARM OR THAT THEY ARE MINORS.

Two other factors courts consider are whether "the party seeking anonymity is a minor or faces a real threat of physical harm absent anonymity." *Chiquita*, 965 F.3d at 1247. Plaintiffs have shown neither.

1. Plaintiffs do not really quibble with that first consideration. At best, they attempt to sneak in considerations related to minors by claiming that "revealing Plaintiffs' identities could also expose the identities of their minor children, whose immigration statuses are also directly implicated by" Florida's law. DE33 at 7. Any backdooring of minor status falters because this factor focuses on "*the party* seeking anonymity," not their children. *Chiquita*, 965 F.3d at 1247 (emphasis added). And they were not required to bring their children into this litigation as it is irrelevant to their legal challenge, and minors are exempted from SB 4-C's scope. Fla. Stat. § 811.102(1). Even if their children were relevant, "Plaintiffs will be free to negotiate a protective or confidentiality order with the Defendants" to protect those identities. *Farmworker*, 716 F. Supp. 3d at 1323.

2. Plaintiffs also failed to allege specific facts to establish that they face a real threat of physical harm absent anonymity. *See Plaintiff B*, 631 F.3d at 1316. Their burden is to "produce[] particularized evidence demonstrating that [they will] be subjected to violence." *Fla. Action Comm., Inc. v. Seminole Cnty.*, 2016 WL 6080988, at *3 (M.D. Fla. Oct. 18, 2016) (Byron, J.). And that evidence must be connected to "their role in this lawsuit." *Chiquita*, 965 F.3d at 1248 (quotation omitted) (concluding that a plaintiff offered only "shaky support" for her claim that

9

"paramilitaries assaulted her and her family for her role" in the lawsuit, because all she showed was "temporal proximity" between the attacks and her deposition.).

Plaintiffs' evidence can be lumped into two groups. First, Plaintiffs give lists of non-case-specific news reports of hate crimes generally in Florida and the United States, some of which occurred as far back as ten years ago. DE33 at 8–9. They tell the Court that "'[a] Florida man pleaded guilty to assaulting a postal worker wearing a hijab[,]' yelling 'go back to your country' while 'attacking her, spitting on her, and removing her hijab.'" *Id.* They also state that, in 2015, a "Guatemalan immigrant was murdered by three men who claimed to be targeting immigrants." *Id.* at 9. Finally, they claim that "harassment against immigrants is unfortunately widespread and routine across the United States." *Id.*

Second, Plaintiffs allege general fears about future harm to them largely because of distain toward illegal immigrants. Both YM and VV fears harm by federal, state, or local law enforcement (through enforcement of state and federal laws); and members of the public directing "social stigma and harassment" at YM and VV as well as their family members if their identities become public. *Id.* at 2–3. YM also fears retaliation by her son's father if he "learns" the details of her U-visa application. *Id.* at 9.

Plaintiffs' generalized worries are neither particularized nor connected to their role in this litigation.

For starters, neither group provides "specific evidence" showing that Plaintiffs will face harm absent anonymity. *Chiquita*, 965 F.3d at 1248. Their evidence, at best, establishes an insufficient "generalized" and "subjective . . . fear" of harm. *Id.* at 1251. Many of their allegations—both from news articles and Plaintiffs' declarations—reflect "generalized fear of hostility in the community." *Farmworker*, 716 F. Supp. 3d at 1323. But the "threat of hostile public reaction to a

lawsuit, standing alone, will only with great rarity warrant public anonymity." *Id.* (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). "This is especially true where," as here, "the targets of such threats and harassment are not minors and where the subject at issue does not involve matters of utmost intimacy." *Hisp. Fed'n v. Byrd*, 2023 WL 11760524, at *2 (N.D. Fla. July 17, 2023) (Walker, C.J.). And their concerns of "social stigma and harassment," however valid, are insufficient proof of the risk of *physical* harm. *Doe v. Spring Hill Coll.*, 2023 WL 8553481, at *2 (S.D. Ala. Dec. 11, 2023) ("Humiliation or embarrassment are not the types of harm this Court contemplates when evaluating real physical harm.").

Plaintiffs' concerns about law enforcement do not establish a threat of physical harm either. Plaintiffs claim that they will be "targeted, threatened, and fac[ed with] potential violence by law enforcement." DE33 at 9. That assertion is akin to the "general evidence showing that those who oppose paramilitary groups or paramilitary-affiliated entities face risks of paramilitary violence," which was "not enough" to justify anonymity in *Chiquita*. 965 F.3d at 1248 & n.7. At a deeper level, comparing enforcement of laws by lawful authorities to illegal paramilitary violence mixes apples and oranges. Their argument either assumes (improperly) that law enforcement will use excessive force against them, or double-counts another *Chiquita* factor, analyzed below, about the risk of enforcement from a case about challenging criminal laws. But that "is a separate *Chiquita* factor," and "[t]o balance this factor in the Plaintiffs' favor a second time would inappropriately conjoin two distinct factors—thereby lessening the burden [on] plaintiffs." *Farmworker*, 716 F. Supp. 3d at 1319. It is even more inappropriate to justify anonymity based on the enforcement of federal laws that Plaintiffs do not challenge, such as the federal bars on illegal entry and reentry. Seeking court assistance in hiding these crimes from federal authorities—especially since the crimes are unrelated to the challenged statute—is an egregious misuse of the federal courts. *See*

11

*Nat'l Coal. of Latino Clergy, Inc. v. Henry*, 2007 WL 4390650, at *9 (N.D. Okla. Dec. 12, 2007) (rejecting anonymous treatment for illegal aliens based on "unclean hands").

Nor do YM's allegations about her U-visa status reveal an imminent risk of harm. She claims that the father of her child "may retaliate against" her seeking a U-visa "based on the abuse that [her] son's father perpetrated against" her. DE4-5 ¶¶ 6, 9. For starters, YM need not include any allegations about her U-visa application in this action, because her claims of preemption do not turn on that application.[8] In that way, her visa application is not "a central allegation in [this] case," and nothing shows that she would be "compelled, absent anonymity, to reveal any information" about that application. *Farmworker*, 716 F. Supp. 3d at 1321. So she should not be permitted to "freely volunteer[]" such information to circumvent Rule 10(a). *Vicente*, 2005 WL 8160475, at *2.

Even if that application were relevant, her thin evidence of retaliation is still not specific enough. YM claims that there "may" be retaliation from her son's father, but she doesn't explain why or how she came to the conclusion that violence is imminent absent anonymity. DE4-4 ¶ 9. The keyword here is "*may*." *Id.* (emphasis added); see also *Farmworker*, 716 F. Supp. 3d at 1324 (discounting speculative fears that individuals "*could* target and harass [a plaintiff] more, or even do something violent"). She gives the Court no other details to enable it to evaluate the likelihood of physical harm. She does not tell us how long ago or where the abuse occurred, whether she has had any contact with the father since, or even where the father lives. And a U visa is granted to

---

[8] It is also irrelevant to determining YM's standing to challenge SB 4-C. Defendants agree that merely submitting a U-visa application, without more, does not represent the federal government "grant[ing her] lawful presence in the United States or discretionary relief that authorizes [her] to remain in the United States temporarily or permanently." Fla. Stat. § 811.102(4)(a). In other words, whether she has submitted a U-visa application or not is irrelevant to a violation of SB 4-C.

individuals for helping law enforcement or prosecutors "investigat[e] or prosecut[e] criminal activity," yet she says nothing about whether the father is in custody for those serious criminal accusations. 8 U.S.C. § 1101(a)(15)(U)(i)(III). At least in *Chiquita*, the plaintiffs attempted to show that some prior violence was connected to the litigation to show that the lawsuit could potentially provoke further attacks. 965 F.3d at 1248. Even then, when the Court rejected that the prior violence was causally related to the suit (because the "temporal proximity" of four months between a deposition and that attack was "shaky"), it found that the plaintiffs "[l]ack[ed] specific evidence" of the risk of physical harm. *Id.* So too here. Without sufficient evidence to sus out whether YM's fear is "credible," *id.*, her fear that the father may find out about litigation and may act on it is a "generalized, subjective assertion[] of fear," *id.* at 1251. While any violence is serious, YM has not provided the Court "particularized evidence demonstrating that [she] would be subjected to violence." *Farmworker*, 716 F. Supp. 3d at 1323 (citing *Fla. Action Comm., Inc. v. Seminole Cnty.*, 2016 WL 6080988, at *3 (M.D. Fla. Oct. 18, 2016)).

Most of this evidence also fails to connect any potential retribution to Plaintiffs' participation in the lawsuit. Citing news reports about individuals attacking Muslims in a form of religious persecution, though detestable as it may be, is not even in the ballpark in a case about illegal immigrants in lawsuits. *See* DE33 at 8–9. Plaintiffs' fear is primarily based on the community's alleged disdain of immigrants generally, disconnected from "their role in this case." *Farmworker*, 716 F. Supp. 3d at 1324 (emphasis omitted). Similarly, it does no good to claim that Plaintiffs fear that federal and state law enforcement will "retaliat[e]" against them because of their involvement in this action, DE33 at 3, as the best support they offer is a handful of news articles noting that law enforcement has generally increased immigration enforcement efforts in recent months, *see id.* at 9–10. And those allegations fail to explain how that increased enforcement is a harm that will

occur for Plaintiffs *because of their role in this lawsuit*. *See Chiquita*, 965 F.3d at 1248. If the plaintiff in *Chiquita* failed to provide "credible evidence" of harm because of her role in that lawsuit after showing actual attacks by paramilitary organizations during the pendency of her action, then surely Plaintiffs here have failed. *See id.* (noting that though "no one seem[ed] to dispute that someone threatened and attacked the bellwether plaintiff and her family," there was insufficient evidence of a risk of physical harm).

## IV. PLAINTIFFS' SUPPOSED INTENTION TO ENGAGE IN ILLEGAL CONDUCT IS NOT DISPOSITIVE.

Finally, Plaintiffs claim that their desire to engage in illegal activity supports anonymity. They say "that they engage in and, in the future, intend to engage in activity that Florida has newly criminalized." DE33 at 8.

But that admission of criminality should not be dispositive. Though Plaintiffs "admit an intent to engage in illegal conduct," *Chiquita*, 965 F.3d at 1247, the same could be said of virtually any plaintiff challenging a criminal law, *see Merten*, 219 F.R.D. at 394. To approve of anonymity on this factor alone would "grant this factor dispositive effect," which in turn "would lead, inappropriately, to granting anonymity to any plaintiff suing the government to challenge a law or regulation." *Id.* But as the Eleventh Circuit has made clear, no "one factor [was] meant to be dispositive." *Frank*, 951 F.2d at 323. And for good reason. That type of categorical treatment of this factor would belie the constitutional presumption of openness in the courts and that only the "exceptional case[]" warrants anonymity, not the average case. *Chiquita*, 965 F.3d at 1247 (citation omitted).

This factor is also due less weight because Plaintiffs largely seek to avoid punishment for their admitted violations of federal law. It is axiomatic that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814

14

(1945). But Plaintiffs here come bearing "unclean hands." *Henry*, 2007 WL 4390650, at *9 (citation omitted). "These illegal alien Plaintiffs seek nothing more than to use this Court as a vehicle for their continued unlawful presence in this country," by allowing them to "avoid detection by the federal law enforcement agencies tasked with investigating immigration violations." *Id*. That proposition of abetting inequity is "simply unpalatable" and should be rejected. *Id.*

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' motion to proceed anonymously, deny their request to file their declarations under seal, and strike their complaint.

Respectfully submitted on May 9, 2025.

JAMES UTHMEIER
  *Attorney General*

/s/ *Christine Pratt*
JEFFREY P. DESOUSA (FBN 110951)
  *Acting Solicitor General*
NATHAN A. FORRESTER (FBN 1045107)
DAVID M. COSTELLO (FBN 1004952)
  *Chief Deputy Solicitors General*
ROBERT S. SCHENCK (FBN 1044532)
CHRISTINE PRATT (FBN 100351)
  *Assistant Solicitors General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*nathan.forrester@myfloridalegal.com*
*david.costello@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on May 9, 2025, to all counsel of record.

/s/ *Christine Pratt*
Assistant Solicitor General
